```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3    _____
                                     )
 4    UNITED STATES OF AMERICA,      )
                                     ) No. 3:12-CR-238 (JBA)
 5                   Plaintiff,      )
                                     ) November 5, 2019
 6                                   )
      v.                             ) 11:10 a.m.
 7                                   )
                                     ) 141 Church Street
 8                                   ) New Haven, Connecticut
      LAWRENCE HOSKINS,              )
 9                                   )
                     Defendant.      )
10    _____)

11

12

13                    CHARGE CONFERENCE

14

15

16

17    B E F O R E:

18          THE HONORABLE JANET BOND ARTERTON, U.S.D.J.

19

20

21

22

23

24              Official Court Reporter:
                Melissa J. Cianciullo, RMR, CRR, CRC
25              (203) 606-1794
```

```
 1   A P P E A R A N C E S:

 2   For the Government:

 3        DAVID E. NOVICK, AUSA
          U.S. Attorney's Office - NH
 4        157 Church Street, 23rd Floor
          New Haven, CT 06510
 5        (203) 821-3700
          E-mail: david.novick@usdoj.gov

 6
          DANIEL S. KAHN, ESQ.
 7        LORINDA LARYEA, ESQ.
          U.S. Department of Justice
 8        Fraud Section, Criminal Division
          1400 New York Avenue, N.W.
 9        Room 11308
          Washington, D.C., 20005
10        Email: daniel.kahn@usdoj.gov
                  lorinda.laryea@usdoj.gov
11
     For the Defendant:
12
          CHRISTOPHER J. MORVILLO, ESQ.
13        DANIEL SILVER, ESQ.
          BENJAMIN K. PEACOCK, ESQ.
14        Clifford Chance US LLP - NY
          New York, NY 10019-6131
15        (212) 878-8000
          E-mail: christopher.morvillo@cliffordchance.com
16                daniel.silver@cliffordchance.com
                  benjamin.peacock@cliffordchance.com
17
          BRIAN E. SPEARS, ESQ.
18        Spears Manning & Martini LLC
          2425 Post Road, Suite 203
19        Southport, CT 06890
          (203) 292-9766
20        E-mail: bspears@spearsmanning.com

21

22

23

24

25
```

1          THE COURT:  Good morning, Counsel.  Please be          11:10

2     seated.          11:10

3          All right.  We have our draft for discussion          11:10

4     that's been sent to you yesterday.  I think the most          11:10

5     orderly way to proceed will be to just go page by          11:10

6     page and see if there are changes, corrections, et          11:10

7     cetera.          11:10

8          Perhaps we could start with the easy part.          11:10

9     We circulated a verdict form.  Is there any problem          11:10

10    with the verdict form?          11:10

11         MR. NOVICK:  No, Your Honor.          11:10

12         MR. SILVER:  No, Your Honor.          11:10

13         THE COURT:  All right.  Tell me, what is the          11:10

14    first page anyone has dispute with respect to the          11:10

15    substance, or I'm happy to receive your editing          11:11

16    and --          11:11

17         MR. NOVICK:  First page for us, Your Honor,          11:11

18    is page 14.  I think it's 14.  Now I have the red          11:11

19    line here.          11:11

20         MS. LARYEA:  It's page 14.          11:11

21         MR. NOVICK:  The definition of agent.          11:11

22         MR. SILVER:  I think I may have something          11:11

23    earlier, Your Honor.          11:11

24         And just for the record, obviously we don't          11:11

25    intend to relitigate every issue we've filed          11:11

1    previously.  But just so the record is clear, we          11:11

2    don't intend to waive our prior request or objections     11:11

3    either.                                                    11:11

4            THE COURT:  That's fine.                           11:11

5            MR. SILVER:  So on page 5 I think is the          11:11

6    first page where I noted something.  We would just        11:11

7    request that under Subsection D, it read "presumption     11:11

8    of innocence" and "government's burden of proof."         11:11

9    And we request -- this kind of relates to page 6 as       11:11

10   well.  We request that the discussion of the              11:11

11   preponderance standard that relates to withdrawal not     11:11

12   be included here on the bottom of page 6, but rather      11:12

13   just discussed in the withdrawal charge itself so         11:12

14   that the first time the jury hears about the burden       11:12

15   of proof would just simply be about the government's      11:12

16   burden.                                                    11:12

17           MR. NOVICK:  We obviously disagree with that.     11:12

18           THE COURT:  Let me just -- page 6.  I'm           11:12

19   sorry.  I don't see that it references the --             11:12

20           MR. SILVER:  The very bottom of page 6, the       11:12

21   paragraph that starts with, "The defendant has argued     11:12

22   that he withdrew."  Then it's essentially that            11:12

23   paragraph which was discussed as preponderance of the     11:12

24   evidence.                                                  11:12

25           MR. NOVICK:  I have it on page 7.                 11:12

1          MR. SILVER:  It's on my page 6.  I'm sorry.          11:12
2   But ...                                                      11:12
3          THE COURT:  All right.  Other than stylistic,         11:13
4   are there substantive objections to the way it's            11:13
5   currently formulated?                                        11:13
6          MR. SILVER:  The only objection, Your Honor,          11:13
7   is just that we think it would be clearer for the           11:13
8   jury to hear at the outset about the reasonable doubt       11:13
9   standard and that it's the government's standard and        11:13
10  that it may be a bit confusing for them to hear at          11:13
11  this stage about the preponderance of the evidence         11:13
12  standard that applies to withdrawal.  So it's --           11:13
13         MR. NOVICK:  Your Honor, I think it's an             11:13
14  accurate statement of law.  I mean, the burden --          11:13
15         THE COURT:  I don't think he's disputing            11:13
16  that.                                                        11:13
17         MR. SILVER:  Yeah, I'm not.                          11:13
18         MR. NOVICK:  I understand.  There are two           11:13
19  different burdens in the case.  I don't think it's         11:13
20  confusing.                                                   11:14
21         THE COURT:  If we moved the withdrawal burden       11:14
22  to the withdrawal section, I would find that.              11:14
23         MS. LARYEA:  Page 17.                                11:14
24         MR. NOVICK:  Your Honor, I think that even on       11:14
25  the bottom of page 5 where it says, "The law presumes       11:14

1    the defendant to be innocent of these charges against    11:14

2    him," which obviously we have no issue with, "the    11:14

3    burden is on the government to prove the guilt of the    11:14

4    defendant beyond a reasonable doubt," which as a    11:14

5    general proposition obviously is a true thing;    11:15

6    however, in this case there is an exception to that.    11:15

7    And then it says, "This burden never shifts to the    11:15

8    defendant for the simple reason that the law never    11:15

9    imposes upon a defendant," et cetera.    11:15

10         I think it's important within this section to    11:15

11    make clear that that's not entirely true in this    11:15

12    particular circumstance.    11:15

13         THE COURT:  How so?    11:15

14         MR. NOVICK:  I think it does that right now.    11:15

15    I think it makes clear that -- at least as long as    11:15

16    it's in the last paragraph there, that -- I think you    11:15

17    could add a clause that says except as I'm going to    11:15

18    describe to you with regard to withdrawal and then    11:15

19    explain that additional paragraph there.  I think it    11:15

20    ought to acknowledge that there is a shift in the    11:15

21    burden on that one issue.    11:15

22         MR. SILVER:  I don't think it's really burden    11:15

23    shifting, Your Honor.  The government still has the    11:15

24    burden to prove all the elements beyond a reasonable    11:15

25    doubt.  It's just that if they have done so, we have    11:15

1    the preponderance burden for the withdrawal defense.                11:16

2    So I don't think it's inaccurate to say the burden                  11:16

3    never shifts.                                                        11:16

4        Venue is also a preponderance standard but we                   11:16

5    don't mention that here in this initial section, nor                11:16

6    do I think we should.  I think it just makes more                   11:16

7    sense to discuss those issues when they come up.                    11:16

8        MR. NOVICK:  Venue is not an element of the                     11:16

9    crime.                                                              11:16

10        THE COURT:  The reason I think that it has an                  11:17

11    appropriate place here is to juxtapose not only the                11:17

12    burden of proof on the government, but that that must              11:17

13    be established first before we even get to the                     11:17

14    withdrawal defense.                                                11:17

15        Let me consider your suggestion and whether                    11:17

16    it would make better sense from the jury standpoint                11:18

17    of comprehension to move it.  Okay?                                11:18

18        What's next?                                                   11:18

19        MR. SILVER:  I think I may have one other                      11:18

20    point before we get to Mr. Novick's first point which              11:18

21    is Your Honor has the 404(b) instruction much later               11:18

22    in the charge, and we would request that it be                     11:18

23    inserted on what appears on my page 8 just before we               11:18

24    get to a description of the charges in the                         11:18

25    indictment.  So perhaps it could go at the end of                  11:18

1    what's Section 2 just before the beginning of    11:18
2    Section 3.    11:18
3         And we would -- we actually prepared a short    11:18
4    proposal on 404(b) which is really just modeled off    11:18
5    the charge that Your Honor gave on the record during    11:18
6    trial which is a little bit more expanded from the    11:18
7    version that appears in the Court's proposed charge    11:19
8    which I think is now towards the end.  It's on page    11:19
9    43 currently.    11:19
10        MR. NOVICK:  You're saying it's on page 43.    11:19
11   I don't see it.    11:19
12        MR. SILVER:  Sorry.  It's my 43.  It's just    11:19
13   before what says Number 2, "What is not evidence."    11:19
14   So it's at the end of what is evidence.    11:19
15        MR. NOVICK:  It strikes the government that    11:19
16   that's the exact appropriate place to be discussing    11:19
17   issues of what is and what is not evidence, and    11:20
18   that's exactly what is at issue in dealing with    11:20
19   404(b) on top of the fact that it has already been    11:20
20   instructed.  I have no issue with -- the government    11:20
21   has no issue with instructing them again on this.    11:20
22   But I don't think that it is necessary to advance it    11:20
23   among all other evidentiary issues to an area where    11:20
24   it is essentially the discussion of the substantive    11:20
25   crimes.    11:20

| | |
|---|---|
| 1 | THE COURT:  So the defense wants an expanded | 11:20 |
| 2 | charge and move it to where? | 11:20 |
| 3 | MR. SILVER:  We would propose, Your Honor, at | 11:20 |
| 4 | the end of what's II, "Overview of crimes charged." | 11:20 |
| 5 | So it appears to me, at least, the top of page 8. | 11:20 |
| 6 | It's just after the discussion of what each count is | 11:21 |
| 7 | basically. | 11:21 |
| 8 | THE COURT:  Before "overview of crimes | 11:21 |
| 9 | charged," did you say? | 11:21 |
| 10 | MR. SILVER:  That was my suggestion, Your | 11:21 |
| 11 | Honor, because it applies to both the FCPA counts and | 11:21 |
| 12 | the money laundering counts, and so I thought it | 11:21 |
| 13 | would just be as clear to insert it before discussing | 11:21 |
| 14 | those counts individually. | 11:21 |
| 15 | THE COURT:  All right.  I'll consider that. | 11:21 |
| 16 | I can immediately see the benefit but let me consider | 11:21 |
| 17 | it. | 11:22 |
| 18 | MR. SILVER:  Okay.  And a small point on | 11:22 |
| 19 | page -- what's my page 9, Your Honor, "Purpose of the | 11:22 |
| 20 | statute," I know that this is typically included in | 11:22 |
| 21 | conspiracy charges.  But the paragraph that reads, | 11:22 |
| 22 | "Congress has deemed it appropriate to make | 11:22 |
| 23 | conspiracy a separate crime discussing the threat to | 11:22 |
| 24 | public safety that arises from a conspiracy." | 11:22 |
| 25 | I know that's commonly given, but we would | 11:22 |

1    argue it's unnecessary to explain why, explain the                11:22

2    dangers of conspiracy.  And so we would request that              11:22

3    that paragraph be stricken.                                        11:22

4         MR. NOVICK:  We think it's an appropriate                     11:22

5    charge, Your Honor.  It's part of the pattern charge.             11:22

6    It is regularly considered to be an appropriate                   11:22

7    charge particularly in the context of conspiracy                  11:22

8    which is not unlike substantive crimes.  They're not              11:22

9    particularly well-known to the jury, understanding                11:22

10   that conspiracy is in fact a distinct evil, it's not              11:22

11   just a restatement of the substantive crime.  It is a             11:23

12   crime in and of itself.                                           11:23

13        THE COURT:  Why does the defendant think this                11:23

14   is unnecessary with respect to this conspiracy or                 11:23

15   these conspiracies?                                               11:23

16        MR. SILVER:  Your Honor, I just think it's                   11:23

17   unnecessary to explain to the jury that Congress has              11:23

18   determined that there's a grave or a greater threat              11:23

19   to public safety from conspiratorial conduct than                11:23

20   individual conduct.  And so it's really just based on             11:23

21   that objection.                                                   11:23

22        THE COURT:  I'll consider that.  I'm not                     11:23

23   currently inclined to accept it as a reason to take               11:23

24   this out.  The jury's familiarity with conspiracy,               11:23

25   what it means and why it means that is an appropriate            11:23

1  objective.                                                    11:23

2       Okay.  What's next?                                      11:24

3       MR. SILVER:  Okay.  I think last point before            11:24

4  agency would be on my page 11.  It's the -- it's in           11:24

5  the section "Membership in the conspiracy" which is           11:24

6  Section 5, the paragraph that begins, "In that regard         11:24

7  has been said that in order for the defendant to be           11:24

8  deemed a participant, he must have had a stake in the         11:24

9  venture of its outcome."                                      11:24

10      We would just request that the next sentence             11:24

11 which begins "You are instructed that," that where           11:24

12 the text says, "If you find the defendant had such an         11:24

13 interest," which is referring to a financial                  11:24

14 interest, we would ask that it say, "If you find the          11:24

15 defendant had or did not have such an interest, that          11:24

16 is a factor you may properly consider," just to make          11:24

17 it clear that either the existence or lack of a               11:24

18 financial interest could be considered by the jury.           11:24

19      THE COURT:  So we could change that to --                11:24

20      MR. NOVICK:  Your Honor, I'm sorry.  This                11:25

21 is -- first of all, this is the standard charge.  I           11:25

22 think that the whole point of this is that it is --           11:25

23 if in fact you find it, it's something you can                11:25

24 consider but it is not necessary, it is not essential         11:25

25 to find that.                                                 11:25

1    THE COURT:  It's hard to understand what is    11:25

2    the significance of a finding of no financial    11:25

3    interest other than, and it's a factor.  We say it's    11:25

4    not essential but it's a factor you may consider.    11:26

5    Doesn't that subsume the fact that they might find    11:26

6    that the defendant didn't have such an interest?  I'm    11:26

7    not sure I understand what's wrong with this.    11:26

8    MR. SILVER:  I think on a close reading, it    11:26

9    does subsume it.  But I think it just makes it more    11:26

10    clear and more balanced to explicitly say either    11:26

11    having a financial interest or not having one is --    11:26

12    either is a factor.    11:26

13    MR. NOVICK:  It's -- again, someone not    11:26

14    having financial interest does not mean that they're    11:26

15    not a member of the conspiracy which is exactly what    11:26

16    that makes it sound like.  I think that the way it's    11:26

17    written is much clearer.    11:26

18    THE COURT:  Well, I do too but let me    11:27

19    consider that when we put together the final charge.    11:27

20    MR. SILVER:  Okay.  Nothing else from us    11:27

21    until the agency element, so Mr. Novick can go first    11:27

22    if he'd like.    11:27

23    MR. NOVICK:  So under Element Three, Your    11:27

24    Honor, the first paragraph on the top of page 14    11:27

25    beginning, "Here the domestic concern at issue."    11:27

```
 1            MR. SILVER:  Sorry.  I'm having trouble        11:27
 2   finding.                                                11:27
 3            MR. NOVICK:  It is the third paragraph under   11:27
 4   Element Three.                                          11:27
 5            MR. SILVER:  Okay.                             11:27
 6            MR. NOVICK:  The government's suggestion       11:28
 7   would be at the end of that paragraph it read here      11:28
 8   the parties have stipulated that Alstom Power, Inc.,    11:28
 9   was a domestic concern.                                11:28
10            MR. SILVER:  No objection.                     11:28
11            THE COURT:  All right.                         11:28
12            MR. NOVICK:  Next, after the paragraph that    11:28
13   begins, "One may be an agent for some business         11:28
14   purposes," the government asks -- I suppose            11:28
15   reiterates its request for instruction from Cutco      11:29
16   which reads, "Joint participation in a partnership or  11:29
17   joint venture establishes control sufficient to make  11:29
18   each partner or joint venture an agent of the          11:29
19   others."                                                11:29
20            MR. SILVER:  And, Your Honor, we would object  11:29
21   to that language as we've previously set forth in our  11:29
22   papers.  I think here there's been no evidence at all  11:29
23   during the trial that Mr. Hoskins was a joint          11:29
24   venturer or a member of a partnership with Alstom      11:29
25   Power, Inc.  In fact, it actually would be confusing   11:29
```

1    because there has been evidence of a joint venture    11:29

2    which was a joint venture between Alstom Power, Inc.,    11:29

3    Marubeni and Alstom Indonesia.  But there's no    11:29

4    evidence that Mr. Hoskins was a member of that joint    11:29

5    venture, and so I think that language is in --    11:29

6    opposite here and certainly potentially misleading    11:30

7    for the jury.    11:30

8         THE COURT:  Anything further?    11:30

9         MR. NOVICK:  Your Honor, I think it's --    11:30

10   counsel is emphasizing form over substance.  I think    11:30

11   the evidence at trial, and I know the Court reserved    11:30

12   ruling on this based on depending on what the    11:30

13   evidence was.  I think the evidence here is that the    11:30

14   International Network and Alstom Power, Inc., were    11:30

15   together engaged in an effort to win the Tarahan    11:30

16   Project, and I think that is sufficient as a matter    11:30

17   of fact to support the Cutco instruction.    11:30

18        MR. SILVER:  I think there's a real risk,    11:30

19   Your Honor, that if the jury is permitted to conclude    11:30

20   that Mr. Hoskins was an agent because International    11:30

21   Network was working together with API to build the    11:30

22   Tarahan Project, that completely undermines the    11:30

23   control element and really the definition of what    11:30

24   common law agency is.    11:31

25        THE COURT:  Isn't that what the argument is    11:31

1    going to be as to what the facts show?                    11:31

2         Doesn't that, Mr. Novick, suggest that the           11:31

3    jury should decide whether the relationship between       11:31

4    International Network and API in their joint efforts       11:31

5    together made him an agent?  Because it's not a            11:31

6    formal joint partnership.  A partnership has its own       11:31

7    characteristics and its own legal consequences.  We       11:31

8    don't have such a thing here.  It seems to me this        11:31

9    should be left for your oral argument -- for your         11:31

10   summations.                                                11:31

11        MR. NOVICK:  Understood, Your Honor.                  11:31

12        THE COURT:  Okay.  What's next?                       11:31

13        MR. SILVER:  I just had a couple points on            11:31

14   that page, Your Honor.                                     11:31

15        We would request that just a little earlier          11:31

16   in the page where the Court defines undertaking, we       11:31

17   would ask that the sentence read, "The undertaking        11:32

18   consists of the acts or services which the agent          11:32

19   agrees to perform on behalf of the principal."            11:32

20        MR. NOVICK:  I disagree with that, Your               11:32

21   Honor.  You're collapsing the different elements of       11:32

22   agency into one.  Undertaking I think is accurately       11:32

23   defined there as the acts or services which the agent     11:32

24   performs on behalf of the principal.  That's what         11:32

25   the -- that's literally what the undertaking is.          11:32

```
 1          MR. SILVER:  I think our point, Your Honor,      11:32
 2   is just that the way it's currently framed            11:32
 3   includes -- means that it could also include other    11:32
 4   things and I don't think that that's correct.  I      11:32
 5   think that the undertaking consists of the services   11:32
 6   that the agent has agreed to perform.  That's the     11:32
 7   crux of the agency relationship.  It's not other      11:33
 8   aspects of what the principal intended to do.         11:33
 9          THE COURT:  What other facts are you           11:33
10   believing exist for the jury to consider other than   11:33
11   an undertaking to influence and successfully achieve  11:33
12   an award of the contract?                             11:33
13          MR. SILVER:  Well, I think this goes to the    11:33
14   point --                                              11:33
15          THE COURT:  What other evidence has there      11:33
16   been that he did anything other than that?            11:33
17          MR. SILVER:  Well, this goes to the point      11:33
18   that I think the government's theory or what they     11:33
19   will attempt to argue in summation is that because    11:33
20   API had the legal road or in a sense had control over 11:33
21   the bidding process in general, that control is       11:33
22   sufficient to create an agency relationship over      11:33
23   Mr. Hoskins with respect to the services Mr. Hoskins  11:33
24   performed.  And so what we're attempting to do is     11:33
25   clarify that the undertaking over which the principal 11:34
```

1    has -- must have control is in fact the specific

2    services that the agent has agreed to perform for the

3    principal.  And so that's what we're trying to

4    clarify.

5         MR. NOVICK:  Your Honor, counsel is

6    collapsing elements together in agency.  The

7    agreement is a separate part of this.  The

8    undertaking being defined here is literally the acts

9    or services which the agent performs on behalf of the

10   principal.

11        THE COURT:  And that --

12        MR. SILVER:  That's what I just said, I

13   think, the undertaking is the acts and services.

14        MR. NOVICK:  "Includes the acts or services

15   which the agent performs on behalf of the principal."

16   That's what it says here.

17        MR. SILVER:  Right.  But it says "includes"

18   which implies there could be other things that are

19   not listed there.  And so that's why we're saying it

20   should say "consists of," "it consists of the acts or

21   services which the agent agrees to perform on behalf

22   of the principal."

23        MR. NOVICK:  I disagree with the "agrees to

24   perform" because, again, I think we're collapsing the

25   elements together.

```
 1            THE COURT:  Well, let's start with is it            11:35
 2   better to say, "The undertaking consists of the acts         11:35
 3   or services which the agent performs"?  The defense          11:35
 4   argument being that using the word "includes" expands        11:35
 5   to non-FCPA violative conduct, the defendant's               11:35
 6   conduct.  But I don't know of any evidence of that.          11:35
 7            MR. NOVICK:  I'm not sure that that's a risk         11:35
 8   here, Your Honor.                                             11:35
 9            THE COURT:  But "undertaking consists of," is        11:35
10   there any problem with that?                                 11:35
11            MR. NOVICK:  I don't think so, Your Honor.          11:35
12            THE COURT:  And then I'm not going to put            11:35
13   what the agent agrees to perform because we have that         11:35
14   in Number 2, acceptance by the agent of the                  11:36
15   undertaking, and then we're just defining                    11:36
16   undertaking.                                                 11:36
17            Okay.  Let's move on.                                11:36
18            MR. SILVER:  Just a couple other little              11:36
19   points on that page, Your Honor.                             11:36
20            So we would request in -- I guess it's two          11:36
21   paragraphs down, "One may be an agent for some               11:36
22   business purpose and not others," that instead of            11:36
23   "specific events of this case," that we would request        11:36
24   the Court say "conduct alleged in this case," just to        11:36
25   make it clear that what we're talking about is,              11:36
```

1    again, the conduct the government alleges to be    11:36

2    violative of the FCPA.    11:36

3          MR. NOVICK:  I disagree with that, Your    11:36

4    Honor.  What we're talking about is the facts of the    11:36

5    case, what the jury finds, not what the government is    11:36

6    alleging.    11:36

7          MR. SILVER:  But I think this goes to what    11:36

8    Your Honor just was alluding to.  The sentence we're    11:36

9    talking about reads, "Here the government must prove    11:36

10   the defendant was an agent of a domestic concern in    11:36

11   connection with," and we think it should say "the    11:36

12   conduct alleged in this case."  He must be an agent    11:37

13   for that conduct, not in connection with some other    11:37

14   something else.    11:37

15         MR. NOVICK:  That would be inconsistent with    11:37

16   he can be an agent for some business purposes and not    11:37

17   others.  I think this is exactly the point, that it    11:37

18   is only the specific facts of the case and the events    11:37

19   of the case as the jury finds them.    11:37

20         MR. SILVER:  I don't think it's inconsistent.    11:37

21   That's really the whole -- of course somebody can be    11:37

22   a business agent for some purposes and not others.    11:37

23   We would agree with that.  But to be guilty of the    11:37

24   FCPA charges, he must have been an agent for the    11:37

25   purposes for which the government alleges he broke    11:37

1    the law, and so that's why we would request it say          11:37

2    "conduct alleged in."                                       11:37

3          MR. NOVICK:  The conduct here -- one moment            11:37

4    please, Your Honor.                                         11:37

5          MR. KAHN:  I apologize, Your Honor.  We're            11:38

6    trying to speak with one voice, but I'm apparently         11:38

7    not making my point, articulating well to Mr. Novick.      11:38

8    Hopefully I can do so better with the Court.               11:38

9          The conduct alleged in the indictment goes           11:38

10   far beyond the undertaking.  The conduct alleged in        11:38

11   the indictment covers a substantial amount of             11:38

12   conduct, some of which Mr. Hoskins was involved in,       11:38

13   some of which he wasn't.  That's the nature of a          11:38

14   conspiracy.  And so to change it from the specific        11:38

15   events of this case in the context of the undertaking    11:38

16   and suddenly to start talking about the conduct          11:38

17   alleged in the indictment makes it seem like he has      11:38

18   to be an agent for each and every aspect of the         11:38

19   conduct that the government has alleged.                 11:38

20         MR. SILVER:  I actually --                          11:38

21         MR. NOVICK:  Which is not accurate.               11:38

22         MR. SILVER:  I like Mr. Kahn's point.  So I       11:38

23   think it could be even clearer to say "in connection     11:38

24   with the conduct Mr. Hoskins was alleged to have        11:38

25   engaged in in this case."  That makes it even more      11:38

1    specific.                                                      11:38

2          MR. NOVICK:  It's the facts of this case.               11:38

3    It's the specific events of this case that the agency          11:38

4    concerns.  It's not general organizational charts             11:39

5    that the defense has offered.  It's not PowerPoints.          11:39

6    It's you have to look at the specific events of this          11:39

7    case.                                                          11:39

8          MR. SILVER:  I think we're kind of saying the          11:39

9    same thing but we're ...                                       11:39

10          THE COURT:  So to the extent our jurors are            11:39

11    being asked for their factual findings on what                11:39

12    happened, it seems to me that in the context of               11:39

13    clarifying that you can be an agent for one thing and         11:39

14    not for others, meaning his agency status doesn't             11:39

15    apply to everything that he did in this case -- I             11:39

16    mean, the only alternative that might work is one             11:40

17    that's just too factually specific such as "in                11:40

18    connection with efforts to obtain the Tarahan              11:40

19    contract."  I don't know whether that's what you want        11:40

20    or whether that clarifies what specific events means.        11:40

21          MR. KAHN:  That's fine with the government,            11:40

22    Your Honor.                                                   11:40

23          MR. SILVER:  I'm not sure that does the trick          11:40

24    in our view, Your Honor, because, again, it has to            11:40

25    be -- it has to be that the defendant was an agent           11:40

1    for purposes of the conduct that he is alleged to          11:41
2    have done in connection with the efforts to obtain         11:41
3    the Tarahan Project.  And so that's the point that I       11:41
4    think is important to get across, that it has to be        11:41
5    not just API's efforts to obtain the Tarahan Project       11:41
6    but what the defendant is alleged to have done in          11:41
7    that regard.                                                11:41
8            THE COURT:  But isn't that the part that it        11:41
9    was an agent?  And then the context in which he was        11:41
10   an agent of the domestic concern, in connection with.      11:41
11   And if specific events in this case you want to            11:41
12   clarify as -- let's see, specific --                       11:41
13           MR. SILVER:  Say conduct Mr. Hoskins is            11:41
14   alleged to have engaged in this case.                      11:41
15           THE COURT:  See, what I'm trying to do is not      11:41
16   bleed into 404(b) conduct.  I'm trying to keep it          11:42
17   Tarahan focused.                                           11:42
18           MR. SILVER:  I see.  I see.                        11:42
19           THE COURT:  In connection with the --              11:42
20           MR. KAHN:  Your Honor, I think defense            11:42
21   counsel's point is already captured in the above          11:42
22   undertaking and the general instruction on what an        11:42
23   agent is.  I think the purpose of this is now being       11:42
24   morphed to try to reiterate what is already stated in     11:42
25   the undertaking piece of it.                               11:42

```
 1          The purpose of this is, as Your Honor pointed      11:42

 2    out, that this is the Tarahan context.  It's not the     11:42

 3    general context.  And I think it's accurately            11:42

 4    captured here.  To the extent that defense counsel       11:42

 5    wants to clarify that it's in the context of the         11:42

 6    Tarahan Project or efforts to secure it, I think that    11:42

 7    that certainly is acceptable to the government.  But     11:42

 8    once you start narrowing it again to try to reiterate    11:42

 9    what's already in the undertaking paragraph, it loses    11:42

10    the whole purpose of why this is in here.                11:42

11          THE COURT:  So if it read, "An agent of            11:42

12    domestic concern in connection with the specific        11:43

13    events related to the Tarahan Project," that            11:43

14    captures -- that narrows it.  That focuses it and       11:43

15    that directs them to what the significance of the       11:43

16    agent is, doesn't it?                                    11:43

17          MR. NOVICK:  Yes, Your Honor.                      11:43

18          MR. SILVER:  I think maybe a different way to      11:43

19    state our concern is that we don't want there to be a    11:43

20    risk the jury concludes that by doing something         11:43

21    lawful in connection with the Tarahan Project, the      11:43

22    defendant became an agent.  It has to be in             11:43

23    connection --                                            11:43

24          THE COURT:  What did he do that was lawful in      11:43

25    connection with the Tarahan Project?                     11:43
```

```
 1            MR. SILVER:  Well, you know, simply attending          11:43
 2    a meeting where no bribery was discussed, for                  11:43
 3    example, or --                                                 11:43
 4            THE COURT:  Do we have that evidence?                   11:43
 5            MR. SILVER:  Well, I think it's -- those               11:43
 6    facts are contested.  I mean, there's been                     11:43
 7    testimony --                                                   11:44
 8            THE COURT:  Is there evidence that you claim           11:44
 9    shows he went to a meeting on the Tarahan Project in           11:44
10    which bribery was not discussed?                               11:44
11            MR. SILVER:  That certainly would be what we           11:44
12    would argue the evidence shows regarding this                  11:44
13    September meeting in Jakarta.  There was evidence              11:44
14    from some witnesses that there was no discussion of            11:44
15    bribery.  There was evidence from other witnesses              11:44
16    there was discussion of bribery.                               11:44
17            MR. KAHN:  I don't think that accurately               11:44
18    captures the evidence, Your Honor.                             11:44
19            THE COURT:  I think I'd like to make the               11:44
20    change.  I'm glad you brought up the need for the              11:44
21    change.  But I think that refining events in this              11:44
22    case to specific events related to the Tarahan                 11:44
23    Project improves it.                                           11:44
24            MR. KAHN:  We agree.                                   11:44
25            THE COURT:  All right.  Let's move on.                 11:44
```

1        What's next?                                          11:44

2        MR. SILVER:  Just final point on this agency          11:44

3    issue, Your Honor, that the next paragraph, we would       11:44

4    request that the Court end the next paragraph with         11:44

5    "what I have just given to you" and so not include         11:44

6    the language "and you should not consider other uses       11:45

7    of the term agent."                                        11:45

8        We think it's appropriate for the jury to             11:45

9    consider the way the term "agent" is used.  Obviously      11:45

10   they have to apply the definition the Court will give      11:45

11   them.                                                      11:45

12       THE COURT:  But that's exactly what I'm               11:45

13   telling them not to do.                                    11:45

14       MR. NOVICK:  Right.                                   11:45

15       MR. SILVER:  Well, I just think they have to          11:45

16   apply this definition.  But they can certainly             11:45

17   consider other agency relationships they heard about       11:45

18   in the context of the case.                                11:45

19       THE COURT:  Why?  That's not relevant.  I             11:45

20   mean, what I'm saying is this is the instruction:          11:45

21   The use of consultant and agent and so forth floats        11:45

22   through the evidence.  That's exactly not what             11:45

23   they're supposed to be considering because it doesn't      11:45

24   bear on whether Mr. Hoskins was an agent.  It may be       11:45

25   that we should say, "You should only use the               11:45

1    definition of agent which I have just given you."    11:45

2          MR. SILVER:  I think that's fine, Your Honor.    11:45

3    I think that --    11:45

4          THE COURT:  Should we just stop there?    11:45

5          MR. SILVER:  -- that would do the trick.    11:45

6          MR. NOVICK:  I think that it -- I think the    11:45

7    rest of that sentence is necessary.  Right?  So you    11:46

8    have seen and heard evidence that the term agent was    11:46

9    sometimes used to refer to third-party consultants in    11:46

10   the case.  So you're referencing other uses of the    11:46

11   word "agent" in these documents, particularly in    11:46

12   documents counsel has put into evidence.  "But in    11:46

13   determining whether Mr. Hoskins was an agent of    11:46

14   Alstom Power, Inc., you should use the definition of    11:46

15   agent which I have just given you."    11:46

16         THE COURT:  Add "only" there.    11:46

17         MR. NOVICK:  Add "only."    11:46

18         THE COURT:  Should only use the definition.    11:46

19         MR. NOVICK:  I would say, "You should not    11:46

20   consider definitions or other uses of the term    11:46

21   'agent.'"    11:46

22         THE COURT:  I don't know that we have any    11:46

23   other definitions out there.    11:46

24         MR. NOVICK:  There are, Your Honor.  There    11:46

25   are in the process documents that counsel has put    11:46

```
1   into evidence and particularly the ones I'm thinking      11:46
2   of --                                                      11:46
3          THE COURT:  In the consultancy agreements?          11:47
4          MR. NOVICK:  Not in the consultancy                 11:47
5   agreements.  But in the documents that describe the        11:47
6   process of selecting an agent and that kind of thing,      11:47
7   there are definitions of what an agent is.                 11:47
8          THE COURT:  What do they say?                       11:47
9          MR. NOVICK:  I don't have the exhibit.              11:47
10         MR. SILVER:  They say third-party consultant.       11:47
11         THE COURT:  So if we just say, "You should          11:47
12  only consider the definition I've given you.  You          11:47
13  should not consider any other uses of the term agent"      11:47
14  seems appropriate.  I think we should do it that way.      11:47
15  It cabins it and it cabins it in a way that I hope         11:47
16  that we will not hear in closing the defendant             11:47
17  arguing something contrary.  That's an important           11:47
18  objective here.                                            11:47
19         All right.  What's next?                            11:48
20         MR. NOVICK:  In the last paragraph of the           11:48
21  agent section, Your Honor, this is here and in             11:48
22  another place, you have a paragraph that calls out         11:48
23  obviously, "If you find that Mr. Hoskins acted as an       11:48
24  agent of Alstom Power, Inc.," et cetera, proceed to        11:48
25  the next element.  If not, you know, proceed to the        11:48
```

| | | |
|---|---|---|
| 1 | next count.  But that is not paralleled in any of the | 11:48 |
| 2 | other elements.  The government doesn't think that | 11:48 |
| 3 | that paragraph is necessary.  Obviously you're | 11:48 |
| 4 | telling the jury that as to each of the elements | 11:48 |
| 5 | without calling one out is more important than the | 11:48 |
| 6 | other.  They have to find all the elements beyond a | 11:48 |
| 7 | reasonable doubt.  This strikes me that it is | 11:48 |
| 8 | emphasizing unnecessarily one element. | 11:48 |
| 9 | MR. SILVER:  We would disagree, Your Honor. | 11:48 |
| 10 | I mean, we think it's obviously a very subtle point | 11:48 |
| 11 | about which there's been much testimony and will be | 11:49 |
| 12 | much argument and summation, and so I think it bears | 11:49 |
| 13 | emphasis in this portion of the charge. | 11:49 |
| 14 | THE COURT:  So in essence, the defense wants | 11:49 |
| 15 | to just delete that paragraph? | 11:49 |
| 16 | MR. NOVICK:  The government does. | 11:49 |
| 17 | THE COURT:  I mean the government does. | 11:49 |
| 18 | MR. NOVICK:  Yes, Your Honor.  We don't think | 11:49 |
| 19 | that it is necessarily -- excuse me.  We don't think | 11:49 |
| 20 | it's necessary, and it's not parallel with the way | 11:49 |
| 21 | the other elements have read. | 11:49 |
| 22 | THE COURT:  Well, that's true.  And then just | 11:49 |
| 23 | move to Element Four. | 11:49 |
| 24 | MR. NOVICK:  Yes, Your Honor. | 11:50 |
| 25 | THE COURT:  I think that works. | 11:50 |

1          Okay.  What's next?                                11:50

2          MR. NOVICK:  Under "Commission of an overt         11:50

3     act," Your Honor, so in discussions with counsel,       11:50

4     obviously for the sake of everybody, we did not          11:50

5     attempt to prove up every overt act in the              11:50

6     indictment.  And so we have redone the third            11:50

7     superseding indictment in discussion with counsel.       11:50

8          One of two ways we can do this, Your Honor.        11:50

9     We can white out the overt acts that were not proven    11:50

10    up or we can renumber the paragraphs, and we're happy   11:50

11    to do either.  We've got a renumbered indictment here   11:50

12    that I can give Your Honor and I've provided to         11:50

13    counsel.                                                 11:51

14          Alternatively, we can if it's preferable just     11:51

15    white out.  What I've given you is both the redline     11:51

16    and a clean version showing Your Honor what we did      11:51

17    not prove up.  It consists principally of e-mails       11:51

18    that we didn't --                                        11:51

19          THE COURT:  So the question here then is          11:51

20    should you redo the paragraphs?                          11:51

21          MR. NOVICK:  So in the clean edit, Your           11:51

22    Honor, yes, we've renumbered the paragraphs.  That's    11:51

23    exactly right.                                           11:51

24          THE COURT:  Any problem with giving this to       11:51

25    the jury as their --                                     11:51

```
 1          MR. SILVER:  No, Your Honor.  I think we're        11:51
 2   fine with renumbering the paragraphs.  That's fine.      11:51
 3          THE COURT:  And what we will do, Your Honor,      11:51
 4   I think this is without objection, would be summary      11:51
 5   charts have reference to the paragraphs in the           11:51
 6   indictment, so we will just redo the paragraph           11:51
 7   references accordingly and substitute the summary        11:51
 8   charts that are in evidence for the ones that are now    11:52
 9   accurately keyed to the indictment.  I assume --         11:52
10          MR. SILVER:  That's fine as long as we can        11:52
11   just get copies of those just to make sure that we --    11:52
12          MR. NOVICK:  Sure.                                11:52
13          THE COURT:  Should we, for the purposes of        11:52
14   recordkeeping, call this the amended third               11:52
15   superseding indictment?                                  11:52
16          MR. NOVICK:  That makes sense, Your Honor.        11:52
17          MS. DAVIS:  It already is.                        11:52
18          MR. NOVICK:  You can call it the second.          11:52
19          MR. SILVER:  Second amended third superseding     11:52
20   indictment.                                              11:52
21          THE COURT:  And that -- will you give me a        11:52
22   new face -- let's see.  So if there's no objection,      11:52
23   then you can use the second amended third superseding    11:52
24   indictment.  I just need a new face page.                11:52
25          MR. NOVICK:  Cover page, sure, Your Honor.        11:52
```

| | |
|---|---|
| 1 | THE COURT:  Cover page.  Because we're going | 11:52 |
| 2 | to give them copies of the indictment in their | 11:52 |
| 3 | notebooks and we need to start copying that. | 11:52 |
| 4 | MR. NOVICK:  Understood.  We will do that as | 11:52 |
| 5 | soon as we get back to the office. | 11:53 |
| 6 | THE COURT:  Okay.  You don't need -- just | 11:53 |
| 7 | that. | 11:53 |
| 8 | MR. NOVICK:  Would you like someone to drop | 11:53 |
| 9 | it off?  Would you like an e-mail? | 11:53 |
| 10 | THE COURT:  Just e-mail. | 11:53 |
| 11 | All right.  But then will we need any | 11:53 |
| 12 | change -- does this change the pages? | 11:53 |
| 13 | MR. NOVICK:  So it will change the pages, | 11:53 |
| 14 | Your Honor.  We will still make the last page the | 11:53 |
| 15 | preexisting signature page.  But we'll white out the | 11:53 |
| 16 | page number to make sure that it's in line with the | 11:53 |
| 17 | rest of the document, and it will change the page | 11:53 |
| 18 | numbers in here. | 11:53 |
| 19 | THE COURT:  "In here" meaning in the | 11:53 |
| 20 | indictment? | 11:53 |
| 21 | MR. NOVICK:  It will change the pages in the | 11:53 |
| 22 | indictment and obviously the ones you refer to in the | 11:53 |
| 23 | charge. | 11:53 |
| 24 | My other suggestion -- | 11:53 |
| 25 | THE COURT:  Let me just stop you.  There | 11:53 |

1    isn't anyplace in which I refer to specific overt                11:53

2    acts or what are you referring to?                                11:54

3           MR. NOVICK:  So under the second paragraph                 11:54

4    under Element Four, it says, "Read overt acts."                   11:54

5           THE COURT:  Yes.                                           11:54

6           MR. NOVICK:  My suggestion there, Your Honor,              11:54

7    would be an instruction that says, "The overt acts                11:54

8    are listed in the" -- "the overt acts charged in the             11:54

9    indictment are listed in the indictment which you                11:54

10   will have a copy of.  I'm going to read you ten of                11:54

11   them."  And we'll ask the Court specifically just by              11:54

12   way of not having to have the jury listen for longer             11:54

13   than is necessary.  I'm happy to have the Court read             11:54

14   all of them, but I think it is --                                 11:54

15          THE COURT:  How many did you take out?  So I               11:54

16   should just read them examples of overt acts charged,            11:54

17   but that the full text is in there?  I want to make              11:54

18   sure they hear what it is that --                                 11:55

19          MR. NOVICK:  So we have no objection to                    11:55

20   reading all of the overt acts, Your Honor.                        11:55

21          MR. KAHN:  The issue is, Your Honor, that I                11:55

22   believe there are 37 overt acts.                                  11:55

23          THE COURT:  Remaining?                                     11:55

24          MR. KAHN:  Yes.  And so we were trying to                  11:55

25   save your voice, Your Honor.                                      11:55

1          THE COURT:  Well, that's a good                    11:55

2     consideration.                                           11:55

3          MR. SILVER:  Do we have to read any of them?        11:55

4     Can't we just refer to the indictment since they'll      11:55

5     have the indictment in the deliberations room?           11:55

6          MR. NOVICK:  We think we should read some of        11:55

7     them.                                                    11:55

8          THE COURT:  I tend to want to read them to          11:55

9     the jury to make sure they know what they are.  Are      11:55

10    there ten selected overt acts you can agree I should     11:55

11    read?                                                    11:55

12         MR. NOVICK:  We'll come up with a list, Your        11:55

13    Honor.                                                   11:55

14         MR. SILVER:  Sure.                                  11:55

15         MR. NOVICK:  The alternative being, I suppose       11:55

16    if we can't agree, then the Court will read all of       11:55

17    them, I suppose.                                         11:55

18         THE COURT:  All right.  So we would do              11:56

19    something like here are ten such overt acts, the         11:56

20    remainder for you to read in your notebook.  All         11:56

21    right.  Let's do something like that.  Okay.             11:56

22         MR. NOVICK:  The last paragraph of Element          11:56

23    Four reads, "Finally, you must find that either the      11:56

24    agreement was formed or that an overt act was            11:56

25    committed in the District of Connecticut which           11:56

1    includes the entire state of Connecticut."    11:56

2         After the word "committed," the government    11:56

3    would suggest an addition that says "regardless of    11:56

4    when it was formed or committed," because the prior    11:57

5    statements are finding an overt act within the    11:57

6    statute, and obviously the one that forms the basis    11:57

7    of venue for the purposes of conspiracy does not need    11:57

8    to be one that was within the statute.    11:57

9         MR. SILVER:  I'm not sure I totally    11:57

10   understood the government saying that if there was no    11:57

11   overt act committed in the district --    11:57

12        MR. NOVICK:  Well, let me make an alternative    11:57

13   suggestion.  I don't know that -- counsel certainly    11:57

14   hasn't suggested that they are consisting venue for    11:57

15   purposes of the conspiracy.  So we could just remove    11:57

16   that last paragraph reading "finally."    11:57

17        MR. SILVER:  I think that's true, Your Honor.    11:57

18   We haven't challenged venue for Counts 1 or 8.    11:57

19        THE COURT:  I'm for simplicity.  We'll take    11:57

20   that last paragraph out.  Thank you.    11:58

21        MR. NOVICK:  I have nothing until withdrawal.    11:58

22        MR. SILVER:  Yeah, same with me.    11:58

23        THE COURT:  All right.  We'll go to    11:58

24   withdrawal.  And that starts on my 17.    11:58

25        MR. NOVICK:  Yes, Your Honor.  The only    11:58

1    paragraph the government has suggestions as to or                    11:58

2    argument as to is the "resignation from a business                  11:58

3    does not by itself" paragraph.                                      11:58

4           Your Honor, the government's position here                   11:58

5    first is that the case law is such that it's                        11:58

6    resignation from a criminal enterprise, that's                      11:58

7    Berger, does not by itself constitute withdrawal.  So               11:58

8    it's not parallel here.                                             11:58

9           In addition to that, I don't think that the                 11:58

10   counsel has put forward any evidence, not being a                   11:59

11   burden, that he severed ties from the criminal                      11:59

12   enterprise here that he disavows or defeated in this                11:59

13   way, that he resigned from the company in a way to                  11:59

14   disavow or defeat the conspiracy such that a Berger                 11:59

15   instruction would be appropriate.                                   11:59

16          MR. SILVER:  Your Honor, I think we've --                    11:59

17          MR. NOVICK:  So I would request, Your Honor,                 11:59

18   to remove that paragraph.                                           11:59

19          THE COURT:  But isn't there a difference                     11:59

20   between resignation from employment and withdrawal                  11:59

21   from a criminal enterprise?                                         11:59

22          MR. NOVICK:  Yes, Your Honor.  Yes, Your                     11:59

23   Honor, that's the point.                                           11:59

24          THE COURT:  Should this word be "resignation                11:59

25   from employment" which is what he did?                             11:59

1          MR. SILVER:  Instead of "from a business"?                12:00

2          THE COURT:  Yes.                                          12:00

3          MR. SILVER:  We're fine with that change,                12:00

4    Your Honor.                                                     12:00

5          MR. NOVICK:  But it still doesn't capture the            12:00

6    point that -- Your Honor, the case law is such that            12:00

7    it is resignation from a criminal enterprise, not              12:00

8    resignation from a business that triggers this                 12:00

9    instruction.                                                    12:00

10         MR. SILVER:  We disagree with that, Your                 12:00

11   Honor.  I mean, this was briefed prior to trial.               12:00

12         MR. KAHN:  I think the concern, Your Honor,              12:00

13   is the first sentence is certainly a correct                   12:00

14   statement, the resignation from a business or from             12:00

15   employment does not by itself necessarily constitute           12:00

16   withdrawal.  It then, however, goes on to give the             12:00

17   Berger instruction and say that "resignation may               12:00

18   constitute withdrawal if."  That is referring to               12:00

19   Berger where it's resignation from the criminal                12:00

20   enterprise.                                                     12:00

21         So that's the concern, that it's somehow                 12:00

22   suggesting that resignation from the business may in           12:00

23   fact be sufficient if he does the following things,            12:00

24   and that's not what the case law says.                         12:01

25         MR. SILVER:  And we certainly disagree, Your            12:01

1    Honor.  We don't think there's any distinction in the      12:01

2    case law between criminal enterprises and businesses.      12:01

3           And I think furthermore, Your Honor has            12:01

4    inserted language after "however" that says, "If you      12:01

5    find the defendant's resignation disavowed or            12:01

6    defeated the purpose of the conspiracy."  I assume       12:01

7    that the Court did that to make very clear that the      12:01

8    resignation must be consistent with a disavowal.  And    12:01

9    so I don't think there's any reason to go further.       12:01

10   That makes it clear that the resignation must be         12:01

11   consistent with a disavowal.                             12:01

12          THE COURT:  So you're saying that the first       12:01

13   and the second sentence could be referring to two        12:01

14   separate things?  Or are you saying that Berger          12:02

15   doesn't make that distinction?                           12:02

16          MR. SILVER:  Well, I'm saying that the            12:02

17   Court's formulation was fine.  So I'm not sure I         12:02

18   understand the Court's question.  I'm sorry.             12:02

19          THE COURT:  So if we say "resignation from a      12:02

20   business or employment does not by itself necessarily    12:02

21   constitute withdrawal," that covers noncriminal          12:02

22   business enterprises, right?                             12:02

23          MR. SILVER:  Uh-huh.                              12:02

24          THE COURT:  And you do not believe that the       12:02

25   case law makes a distinction to say that if you find     12:02

1    resignation disavows or defeated, you think that the        12:03

2    jury can consider his resignation in terms of whether       12:03

3    it brought about a disavowal or defeated the purpose        12:03

4    of the conspiracy to suffice under Berger?                  12:03

5        MR. SILVER:  Exactly.  That's exactly right            12:03

6    because that's what I think is consistent with the         12:03

7    case law and makes sense here.  I mean, there's no         12:03

8    requirement that one does more when one resigns from       12:03

9    a legitimate business than when one resigns from a         12:03

10   fraudulent enterprise.  That's just not the case.          12:03

11       I mean, there's the Nerlinger case, for               12:03

12   example, where the defendant resigned from a              12:03

13   legitimate trading company and in doing so closed the     12:03

14   account that he -- that had been used to deposit          12:04

15   proceeds of the scheme and the Court found that those     12:04

16   acts were sufficient to constitute a disavowal.           12:04

17       So there's really no distinction, I think,           12:04

18   that the government would like to make between,           12:04

19   quote/unquote, criminal enterprises and businesses.      12:04

20       MR. KAHN:  I apologize, Your Honor.  I just          12:04

21   want to clarify for the record.  Berger says the         12:04

22   quote is resignation from a criminal enterprise          12:04

23   standing alone does not constitute withdrawal as a       12:04

24   matter of law.  That's Berger.                           12:04

25       Nerlinger doesn't even talk about the               12:04

1    resignation as the key issue.  It says, "The only    12:04

2    question is whether his closing of the account    12:04

3    constitutes an affirmative action in light of the    12:04

4    rules that mere cessation of conspiratorial activity    12:04

5    is not enough."    12:04

6         So I think there's a lot of conflation going    12:04

7    on between the legitimate corporation and the    12:04

8    withdrawal from the criminal enterprise.  And I think    12:04

9    there's a lot of risk of jury confusion with this    12:05

10   paragraph.  Again, we can certainly talk about ways    12:05

11   to revise it to make clear that resignation from a    12:05

12   business alone does not constitute withdrawal, you    12:05

13   must find that the defendant took steps to disavow or    12:05

14   defeat the purpose of the conspiracy and if you have    12:05

15   found that, I think we have it.    12:05

16        MR. NOVICK:  Yeah.  So, Your Honor, what I    12:05

17   would potentially suggest here is after that first    12:05

18   sentence, rather than beginning "however," it would    12:05

19   be a standalone sentence that says "rather you    12:05

20   must" --    12:05

21        THE COURT:  What about "unless"?    12:05

22        MR. SILVER:  I think that's fine, Your Honor,    12:05

23   "unless you find the defendant's resignation."  I'm    12:05

24   sorry.  I'll let you finish before I respond.    12:05

25        MR. NOVICK:  I would suggest, Your Honor, a    12:05

1    standalone sentence.  So the first sentence,                    12:05

2    "Resignation from a business does not by itself                 12:06

3    necessarily constitute withdrawal, rather you must              12:06

4    also find the resignation disavowed or defeated the             12:06

5    purpose of the conspiracy."  And then begin, "If you            12:06

6    find the defendant's resignation disavowed or                   12:06

7    defeated, the purpose of the conspiracy" -- well,               12:06

8    sorry, Your Honor.                                              12:06

9         MR. KAHN:  It's resignation from the criminal             12:06

10   enterprise.  So that's the problem we're running                12:06

11   into.  So I think it's, as Mr. Novick started to                12:06

12   articulate, rather you must find that the defendant             12:06

13   took steps to disavow or defeat the criminal                    12:06

14   enterprise or the conspiracy.  If you have found                12:06

15   that, then you can go on to the rest of the                     12:06

16   paragraph.  But to mix and match resignation from the          12:06

17   business and resignation from the criminal enterprise          12:06

18   is what I think has the risk of confusing the law.             12:06

19        And I'm happy -- and I'm sure Your Honor has              12:06

20   the cases but I'm happy to pass them up.                        12:06

21        MR. SILVER:  Your Honor, I think I like                   12:07

22   Mr. Novick's proposal as opposed to Mr. Kahn's.  I             12:07

23   think Mr. Kahn misstates the holdings of Berger and           12:07

24   Nerlinger.  I think that Berger did refer to a                  12:07

25   criminal enterprise because that was what was at               12:07

1   issue in Berger.  And, in fact, in Berger it was the              12:07

2   Court finding that there had been no withdrawal                  12:07

3   because the resignation was essentially a                        12:07

4   fabrication.  And so -- and that's why it was using             12:07

5   the words "criminal enterprise."  There's no                     12:07

6   hard-and-fast or any kind of distinction between how             12:07

7   one resigns from a, quote/unquote, criminal                      12:07

8   enterprise and how one resigns from a business.                  12:07

9        So I don't think we want to have a charge                   12:07

10  here that implies to the jury that resignation cannot            12:07

11  be a disavowal.                                                  12:07

12       I think I agree with Mr. Novick that we want                12:07

13  to make clear that they have to find that when he                12:07

14  resigned, he disavowed.                                          12:07

15       MR. NOVICK:  He disavowed the criminal                      12:07

16  enterprise, withdrew from the criminal enterprise.              12:07

17       THE COURT:  That's what I'm saying, disavowed               12:08

18  or defeated the purpose of the conspiracy.  Isn't the           12:08

19  conspiracy the criminal enterprise?                              12:08

20       MR. KAHN:  So I think that's right, Your                    12:08

21  Honor.  So if you said, "Rather you must find that              12:08

22  the defendant took steps."  It's not that the                    12:08

23  resignation alone can somehow disavow or defeat the             12:08

24  conspiracy.  There's no --                                       12:08

25       MR. SILVER:  It absolutely can.  It                         12:08

1    absolutely can.                                    12:08

2         MR. KAHN:  Can I finish, please?            12:08

3         MR. SILVER:  Sure.                          12:08

4         THE COURT:  So let me -- I'm going to       12:08

5    interrupt you.                                     12:08

6         MR. KAHN:  Of course.                       12:08

7         THE COURT:  Why is that not like the guy who  12:08

8    closes his account and that have the effect of    12:08

9    defeating the conspiracy because his only involvement  12:08

10   was through that account?  So --                   12:08

11        MR. KAHN:  Absolutely.  So I would say that  12:08

12   if there was evidence here that Mr. Hoskins took away  12:08

13   the consultancy agreement or did something like    12:08

14   closing an account, it was the closing the account.  12:08

15   It wasn't leaving the business.  And there's no case  12:08

16   that counsel has pointed to to suggest that leaving a  12:08

17   company is the equivalent of leaving a conspiracy and  12:08

18   to inject this was the reason we suggested removing  12:09

19   it altogether to begin with.                       12:09

20        MR. SILVER:  But that's the factual question  12:09

21   the jury has to determine, right, is whether leaving  12:09

22   the business was sufficient to constitute a disavowal  12:09

23   and I think --                                     12:09

24        MR. NOVICK:  I don't think that's the        12:09

25   question.  I think the question is did he take      12:09

```
 1    actions to disavow or defeat the criminal enterprise,      12:09
 2    the criminal conspiracy.                                    12:09
 3            MR. KAHN:  Right.                                   12:09
 4            MR. SILVER:  And we certainly wouldn't want         12:09
 5    to tell the jury that they can't consider his              12:09
 6    resignation in determining whether or not he               12:09
 7    disavowed.                                                  12:09
 8            MR. NOVICK:  Just for purposes of -- this is        12:09
 9    why the original suggestion, Your Honor, was to            12:09
10    remove this.  There is not -- this is sowing              12:09
11    confusion as we speak.                                      12:09
12            THE COURT:  The purpose of the conspiracy is        12:09
13    the criminal enterprise.  So if you say, "resignation     12:09
14    from employment does not by itself constitute             12:09
15    withdrawal, rather you must also find that he took        12:09
16    action to disavow or defeat the purpose of the            12:10
17    conspiracy."                                                12:10
18            MR. KAHN:  That --                                  12:10
19            THE COURT:  "In order for his" -- I'm going        12:10
20    to just stop it there.                                      12:10
21            MR. KAHN:  Yes, Your Honor.  That would be         12:10
22    our suggestion.                                             12:10
23            THE COURT:  Should we do that?                      12:10
24            MR. NOVICK:  Yes, Your Honor.                       12:10
25            THE COURT:  Okay.  And the rest are all facts      12:10
```

| | | |
|---|---|---|
| 1 | that you argue.  Okay. | 12:10 |
| 2 | What's next? | 12:10 |
| 3 | MR. SILVER:  I guess just before we leave | 12:10 |
| 4 | withdrawal, I don't know if we have to belabor these | 12:10 |
| 5 | points.  But we had previously objected to the | 12:10 |
| 6 | sentence that reads, "Where defendant by his | 12:10 |
| 7 | conspiratorial actions sets in motion events" and | 12:10 |
| 8 | also on the following page, the paragraph "by way of | 12:10 |
| 9 | example."  We briefed this earlier.  I think Your | 12:11 |
| 10 | Honor had reserved judgment on whether either of | 12:11 |
| 11 | those two statements would make it in.  I take it | 12:11 |
| 12 | Your Honor has read our position on that. | 12:11 |
| 13 | THE COURT:  I have. | 12:11 |
| 14 | MR. SILVER:  Okay. | 12:11 |
| 15 | THE COURT:  So the first paragraph is going | 12:11 |
| 16 | to go in where the conspiratorial act sets in motion | 12:11 |
| 17 | events to have effect beyond that period.  I think | 12:11 |
| 18 | examples are helpful for a jury.  I think they also | 12:11 |
| 19 | are risky because I don't think marshaling evidence | 12:11 |
| 20 | is appropriate for the most part. | 12:11 |
| 21 | MR. KAHN:  Your Honor, the government would | 12:11 |
| 22 | suggest that this is appropriate.  It is the pattern | 12:11 |
| 23 | instruction for the exact reason that Your Honor | 12:12 |
| 24 | suggests and that includes it and is helpful for the | 12:12 |
| 25 | jury to understand what a step to disavow and defeat | 12:12 |

1    looks like.                                              12:12

2         MR. SILVER:  I think that the problem we            12:12

3    have, Your Honor, is just, right, if we give certain    12:12

4    examples, it leaves impressions that those are the      12:12

5    only ways in which withdrawal can be effectuated,       12:12

6    which I know is not Your Honor's intent, but it runs     12:12

7    that risk.                                               12:12

8         MR. NOVICK:  We wouldn't object to -- it does       12:12

9    say "by way of example."  We would not object to --     12:12

10        THE COURT:  What if we just say "for                12:12

11   example"?                                                12:12

12        MR. NOVICK:  That's fine.                           12:12

13        THE COURT:  That's pretty clear.  Okay.             12:12

14        MR. SILVER:  And the last point on                  12:12

15   withdrawal, Your Honor, is at the bottom of this page    12:12

16   you say, "However, it's important to remember the        12:12

17   fact that the defendant has raised this defense does     12:12

18   not relieve the government of its burden," and then      12:13

19   you go on to kind of list various elements.              12:13

20   There's -- we don't list every element there such as     12:13

21   agency or that an overt act was committed in             12:13

22   furtherance of the conspiracy.                           12:13

23        So I think we would either suggest that we          12:13

24   include those additional elements or maybe just          12:13

25   modify it to say it's important to remember that the     12:13

1    fact the defendant has raised this defense does not           12:13

2    relieve the government of its burden of proving               12:13

3    beyond a reasonable doubt each and every element of           12:13

4    the crime, something to that effect.                          12:13

5            MR. NOVICK:  That's fine.                             12:13

6            MR. KAHN:  That's fine.                               12:13

7            MR. NOVICK:  We can get rid of that last              12:13

8    sentence, correct?                                            12:13

9            MR. SILVER:  Yeah.                                    12:13

10           THE COURT:  Each and every element of the             12:13

11   conspiracy?                                                   12:13

12           MR. SILVER:  Of the conspiracy, yeah.                 12:13

13           MR. NOVICK:  The element of the crime of              12:14

14   conspiracy?                                                   12:14

15           MR. SILVER:  Or crime of conspiracy is fine,          12:14

16   yeah.                                                         12:14

17           THE COURT:  Okay.                                     12:14

18           MR. NOVICK:  We have nothing until --                 12:14

19           MR. SILVER:  I'm sorry.  I thought I was done         12:14

20   with withdrawal.                                              12:14

21           But the last paragraph on what looks like my          12:14

22   next page just before Section C, we say that -- it            12:14

23   currently reads, "Withdrawal as a defense to the              12:14

24   conspiracy charge in Count 1."  I think we should             12:14

25   probably just say there, for sake of clarity, "to the         12:14

```
1    conspiracies charged in Counts 1 and 8."                    12:14

2           I know that we later say that when we talk          12:14

3    about Count 8, but I think it might just be clearer        12:14

4    to say "the conspiracies charged in Counts 1 and 8."       12:14

5           MR. NOVICK:  That's not a problem.                  12:14

6           THE COURT:  "Then you must acquit him of            12:14

7    the" --                                                    12:14

8           MR. SILVER:  It's in two places.  It's in the       12:14

9    first sentence in that paragraph and then the second       12:14

10   sentence in that paragraph.                                12:14

11          THE COURT:  "The conspiracies charged in            12:15

12   Count 1 and Count 8."                                      12:15

13          MR. NOVICK:  I'm sorry, Your Honor.  I know I        12:15

14   said I didn't have objection.                              12:15

15          Does this not conflate the idea that they           12:15

16   have to separately consider withdrawal as to each of       12:15

17   the conspiracies?  Why would we want to do this?  I        12:15

18   think that we haven't even talked about Count 8            12:15

19   which, I mean, it's essentially the same players but       12:15

20   it's a different conspiracy, different elements of         12:15

21   the conspiracy.  I think on further thought it ought       12:15

22   to read the way it does and they'll be instructed          12:15

23   separately on withdrawal.                                  12:15

24          THE COURT:  Okay.  Let's -- on withdrawal?          12:15

25          MR. NOVICK:  I'm sorry.  On withdrawal as to        12:15
```

1    Count 8.  So I think we should leave the paragraph as          12:15

2    it is.  To start changing it to include Count 8 is             12:15

3    confusing.                                                      12:15

4          THE COURT:  That's probably true.  Let's take            12:15

5    a close look though at Count 8 when we get there.              12:15

6          MR. SILVER:  Okay.  And then the last point,             12:15

7    Your Honor.  The last sentence there says, "But if             12:16

8    you find, even if you find he withdrew, withdrawal is          12:16

9    not an offense to the substantive counts."                     12:16

10          And I guess our only issue there, I'm not               12:16

11    exactly sure what the solution is, is it is in                12:16

12    respect to Pinkerton liability.  So if they find he           12:16

13    withdrew, then he can't be liable as a coconspirator          12:16

14    for those subsequent acts.                                    12:16

15          And so we request that that be modified to              12:16

16    make clear that it's a defense to that theory of              12:16

17    liability.                                                    12:16

18          MR. NOVICK:  I think you can do that, Your              12:16

19    Honor, in the context of the Pinkerton charge.               12:16

20          MR. KAHN:  I agree, Your Honor.  I think it             12:16

21    would be too confusing.                                       12:16

22          THE COURT:  So that's accurate?                        12:16

23          MR. NOVICK:  Yes, Your Honor.                          12:16

24          THE COURT:  And what did you want to                   12:17

25    supplement this?                                              12:17

1    MR. SILVER:  Well, I just want to make sure

2    it's clear that with respect to the Pinkerton theory

3    of conspiratorial liability, that if they find he

4    withdrew, they can't find guilt on that basis for the

5    substantive offenses set forth in Counts 2 through 7

6    or Counts 9 through 12.

7         MR. KAHN:  The government believes, Your

8    Honor, that the appropriate place to include that

9    would be in the Pinkerton instruction.

10        THE COURT:  Okay.  Can we get to the

11   Pinkerton instruction and see how that fares?

12        MR. SILVER:  Okay.

13        MR. NOVICK:  So our next comment is on page

14   our 23, the listing of the elements of the violation

15   of the FCPA.

16        THE COURT:  Anything before then?

17        MR. SILVER:  No.

18        MR. PEACOCK:  Is that Element Three, mails or

19   instrumentality of interstate commerce?

20        MR. NOVICK:  No.  Elements just listing --

21   it's not Element Two.  It's Subheading 2, page 22.

22   It says "elements of violation of the FCPA."  It

23   lists the first five elements, but then leaves out

24   the sixth and seventh.  Your Honor later describes

25   the sixth and seventh element, but it does not list

12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:17
12:18
12:18
12:18
12:18
12:18
12:18
12:18
12:18
12:18
12:18

1    them in the context of the description of the              12:18

2    elements, if that makes sense.                             12:18

3          THE COURT:  But that's correct.                      12:18

4          MR. NOVICK:  There are seven elements of the         12:18

5    crime.                                                     12:18

6          MR. SILVER:  I think that's right.  Actually,        12:18

7    the charge says "The following seven elements," but        12:18

8    then it lists one through five and not six and seven.      12:18

9          THE COURT:  Okay.  I see what you're saying.         12:18

10         MR. NOVICK:  So I think what Your Honor is            12:18

11   missing would be -- so Number 5 is the offer of            12:18

12   payment, promise to pay, et cetera.                        12:18

13         Number 6 would add the payment is for one of         12:18

14   four purposes.                                             12:19

15         I can hand Your Honor what we just wrote             12:19

16   which is just copying what was in our proposal.            12:19

17         MR. SILVER:  That looks fine to us.  Thank           12:19

18   you.                                                       12:19

19         THE COURT:  Okay.  And then we go on to              12:19

20   describe each of those elements.  Okay.                    12:19

21         MR. SILVER:  On Element One on that list, I          12:19

22   think we should just say, "Mr. Hoskins was an agent        12:19

23   of a domestic concern" and just cut out "was the           12:19

24   domestic concern."                                         12:19

25         THE COURT:  I think so too.                          12:19

| | |
|---|---|
| 1 | MR. NOVICK:  We agree with that, Your Honor. | 12:19 |
| 2 | So under Element One, "Agent of a domestic | 12:20 |
| 3 | concern," the actual element, first element, the same | 12:20 |
| 4 | comment I had before, Your Honor.  I would suggest we | 12:20 |
| 5 | remove the "if you find that Mr. Hoskins has not been | 12:20 |
| 6 | proved to be an agent of a domestic concern," | 12:20 |
| 7 | because, again, it is not the way we are articulating | 12:20 |
| 8 | the rest of the elements. | 12:20 |
| 9 | THE COURT:  Let's take that last paragraph | 12:20 |
| 10 | out. | 12:20 |
| 11 | MR. SILVER:  I think we have something on | 12:20 |
| 12 | Element Three, unless you have something before | 12:20 |
| 13 | Element Three. | 12:20 |
| 14 | MR. NOVICK:  We do not. | 12:20 |
| 15 | MR. PEACOCK:  So for Element Three, the last | 12:20 |
| 16 | sentence of the paragraph that begins "the term | 12:20 |
| 17 | interstate commerce" we think can be removed in light | 12:20 |
| 18 | of the stipulation that's mentioned in the following | 12:20 |
| 19 | paragraph. | 12:20 |
| 20 | THE COURT:  Okay.  I've got to catch up with | 12:21 |
| 21 | you. | 12:21 |
| 22 | MR. PEACOCK:  Sure. | 12:21 |
| 23 | THE COURT:  Okay.  What would you propose? | 12:21 |
| 24 | The parties have stipulated or just take out the | 12:21 |
| 25 | whole thing before the parties have stipulated? | 12:21 |

12:21
12:21
12:21
12:21
12:21
12:21
12:21
12:21
12:21
12:21
12:21
12:21
12:22
12:22
12:22
12:22
12:22
12:22
12:22
12:22
12:22
12:22
12:22
12:22
12:22

1    MR. PEACOCK:  Yes, Your Honor.  I think the

2  sentence beginning with "I instruct you that, as a

3  matter of law" can just be taken out because the

4  stipulation that's mentioned in the next paragraph

5  should cover that issue.

6    MR. NOVICK:  That's fine, Your Honor.

7    MR. SILVER:  So it would be those two

8  sentences, right, "I instruct you" and then "so if

9  you find."

10    THE COURT:  Okay.

11    MR. PEACOCK:  And then we would also request

12  that the paragraph which reads, "It is not necessary

13  for the defendant to be directly or personally

14  involved in the charged wire," that that paragraph

15  also be removed.

16    I think that concept of reasonable

17  foreseeability which is being discussed in that

18  paragraph is picked up in the next paragraph in

19  connection with the causation element which is where

20  we think the reasonable foreseeability comes into,

21  into this.  And it's somewhat confusing to have it

22  sort of discussed on its own there and then discussed

23  again in the next paragraph in the context with

24  causation.

25    MR. NOVICK:  I think it's appropriate as it

1    is.                                                    12:22

2         THE COURT:  But I think -- where are you          12:22

3    saying causation is picked up otherwise?               12:23

4         MR. PEACOCK:  So in the paragraph beginning        12:23

5    "in this regard, it is sufficient to establish."      12:23

6         THE COURT:  Right.  And so what are you           12:23

7    saying is not necessary?                               12:23

8         MR. PEACOCK:  We don't think that the             12:23

9    paragraph before that is necessary, the paragraph     12:23

10   stating that, "It is not necessary for the defendant  12:23

11   to be directly or personally involved in the charged  12:23

12   wire."  And we don't think it necessary because the   12:23

13   following paragraph which refers to causation makes   12:23

14   clear that the defendant only needs to be -- the      12:23

15   causation satisfied if it's reasonably satisfied on   12:23

16   the wire issue.                                        12:23

17        THE COURT:  But where do we say --               12:23

18        MR. SILVER:  At the end of the paragraph, it      12:23

19   says, "If the use of the wires can reasonably be      12:23

20   foreseen even though actually not attend, then he     12:24

21   causes the wires to be used."                          12:24

22        THE COURT:  And what's the harm in that "it       12:24

23   is not necessary" sentence?                            12:24

24        MR. PEACOCK:  Well, I think it's somewhat         12:24

25   confusing to refer to reasonably foreseeable in       12:24

1    slightly different terms in two paragraphs          12:24

2    consecutively when I don't think there is anything --    12:24

3    any meaning that's different from the first paragraph    12:24

4    than from the different.                               12:24

5         MR. KAHN:  Your Honor, the government would     12:24

6    disagree.  We think there is a substantial difference    12:24

7    because the first paragraph is making the point that    12:24

8    the defendant need not be directly or personally      12:24

9    involved.  That's not captured in the next one.       12:24

10        THE COURT:  Well, that's what I was looking      12:24

11   for elsewhere.                                         12:24

12        MR. SILVER:  Well, the next paragraph does       12:24

13   say, "This does not mean that the defendant must       12:24

14   specifically have authorized others to make the wire"  12:24

15   which I think is a different sentence.                 12:24

16        THE COURT:  But directly or personally           12:24

17   involved is a bit different but broader.  I think we   12:24

18   should keep it in, but let me think about your         12:25

19   comment.                                               12:25

20        All right.  Next?                                 12:25

21        MR. NOVICK:  I have nothing until Element        12:25

22   Five.                                                  12:25

23        MR. SILVER:  Same.                                12:25

24        MR. NOVICK:  And the last -- I would suggest     12:25

25   adding a sentence at the end of Element Five right     12:25

1    before Number 8 that reads "here the parties have                    12:25

2    stipulated that PLN was an instrumentality of the                    12:25

3    foreign government."                                                 12:25

4         MR. SILVER:  No objection.  I think there's                     12:25

5    just a typo.  It should say "definition" instead of                  12:25

6    "decision" at the end of the second sentence in that                 12:25

7    paragraph.                                                           12:25

8         MR. NOVICK:  Sorry.  Where are we looking at?                    12:26

9         MR. SILVER:  The instrumentality sentence                       12:26

10   that says, "An instrumentality of a foreign                          12:26

11   government," and the second sentence says,                           12:26

12   "State-owned or state-controlled companies that                      12:26

13   provide services to the public may meet this                         12:26

14   definition."                                                         12:26

15        MR. NOVICK:  Agreed.                                            12:26

16        THE COURT:  That the PLN was an                                 12:26

17   instrumentality?                                                     12:26

18        MR. NOVICK:  Of a foreign government.                           12:26

19        THE COURT:  Do we want to put Indonesia in                      12:26

20   there?                                                               12:26

21        MR. NOVICK:  Sure.                                              12:26

22        THE COURT:  How do you really pronounce the                     12:26

23   name of the corporation?                                             12:26

24        MR. SILVER:  You can just say PLN.  That's                      12:26

25   what I always do.                                                    12:26

| | |
|---|---|
| 1 | THE COURT:  All the sudden I realized I | 12:26 |
| 2 | hadn't asked you how you pronounce it. | 12:26 |
| 3 | MR. KAHN:  We asked Mr. Thiessen several | 12:26 |
| 4 | times and we just couldn't hear him the way he was | 12:26 |
| 5 | pronouncing it because his voice was so low. | 12:27 |
| 6 | MR. NOVICK:  Our next comment -- | 12:27 |
| 7 | THE COURT:  Was that because he was so tall? | 12:27 |
| 8 | MR. KAHN:  No. | 12:27 |
| 9 | THE COURT:  He just didn't want to be here? | 12:27 |
| 10 | MR. NOVICK:  He was in -- which is not a fact | 12:27 |
| 11 | that came out.  He was in the bombing in Jakarta | 12:27 |
| 12 | years ago and he has tinnitus.  He was in the | 12:27 |
| 13 | hospital for a long time.  He has tinnitus as a | 12:27 |
| 14 | result of that and just doesn't hear very well at | 12:27 |
| 15 | all. | 12:27 |
| 16 | THE COURT:  So he can't hear how loud he's | 12:27 |
| 17 | speaking? | 12:27 |
| 18 | MR. NOVICK:  He can't hear how loud he's | 12:27 |
| 19 | speaking, that's right. | 12:27 |
| 20 | THE COURT:  All right.  What's next? | 12:27 |
| 21 | MR. NOVICK:  After the seventh element but | 12:27 |
| 22 | before guilt of substance of offense, we request an | 12:27 |
| 23 | additional instruction which I would entitle | 12:27 |
| 24 | "solicitation of bribe not a defense."  I have a very | 12:27 |
| 25 | short motion for it which I can hand up and provide a | 12:28 |

| | |
|---|---|
| 1 | copy to counsel.  It is an instruction that we had in |
| 2 | our proposal originally.  I think there's been some |
| 3 | evidence -- I don't know what counsel is going to |
| 4 | argue, but I think there's been some evidence that |
| 5 | the bribes were in part solicited by foreign |
| 6 | officials here.  And we want the jury to be |
| 7 | instructed consistent with what other juries have |
| 8 | been instructed in other similar circumstances, that |
| 9 | that is not a defense, the fact that Eddie Widiono |
| 10 | and Emir Moeis may have asked for a bribe. |
| 11 | MR. SILVER:  Your Honor, we don't intend to |
| 12 | argue that as a defense, so I don't think it casts |
| 13 | a -- |
| 14 | THE COURT:  Well, let's put it in because I |
| 15 | think it's useful to really give direction to the |
| 16 | jury in the event that they came up with that. |
| 17 | So this would be a new Paragraph 10? |
| 18 | MR. NOVICK:  Yes, Your Honor. |
| 19 | THE COURT:  And is there language as opposed |
| 20 | to the briefing here? |
| 21 | MR. NOVICK:  There should be at the very end. |
| 22 | We had pulled that instruction from the last two FCPA |
| 23 | cases from the Southern District of New York. |
| 24 | THE COURT:  Were you all involved in the |
| 25 | trial of those two cases? |

| | | |
|---|---|---|
| 1 | MR. NOVICK:  I was not. | 12:29 |
| 2 | MR. KAHN:  Our office was but we personally | 12:29 |
| 3 | were not. | 12:29 |
| 4 | THE COURT:  Mr. Silver, any objection to that | 12:30 |
| 5 | language? | 12:30 |
| 6 | MR. SILVER:  No objection to the language. | 12:30 |
| 7 | We don't think it's necessary, but no objection to | 12:30 |
| 8 | that specific language if the Court is inclined to | 12:30 |
| 9 | include it. | 12:30 |
| 10 | THE COURT:  I think it's a good idea.  Okay. | 12:30 |
| 11 | MR. NOVICK:  Next, Your Honor, under "Guilt | 12:30 |
| 12 | of substance of offense," I think it's -- I have no | 12:30 |
| 13 | comments on the instruction itself.  I just have a | 12:30 |
| 14 | notation, perhaps we can address this when you get to | 12:30 |
| 15 | Counts 9 through 12, that this should apply to | 12:30 |
| 16 | that -- those counts as well.  It says, "There is | 12:30 |
| 17 | another method by which you may evaluate the | 12:31 |
| 18 | possibility of guilt of" -- I think there's an extra | 12:31 |
| 19 | "the" -- "of Mr. Hoskins for Counts 2 through 7."  I | 12:31 |
| 20 | think the same would apply for Counts 9 through 12. | 12:31 |
| 21 | THE COURT:  So should we give it here and | 12:31 |
| 22 | then just reiterate it when we get to 9 through 12? | 12:31 |
| 23 | MR. NOVICK:  I think that makes sense, Your | 12:31 |
| 24 | Honor. | 12:31 |
| 25 | MR. SILVER:  By "reiterate," Your Honor, you | 12:31 |

1    mean not repeat the whole thing but just refer back?    12:31

2         THE COURT:  Refer back and give them the page    12:31

3    reference.  Okay.    12:31

4         MR. SILVER:  Before we leave that section, on    12:31

5    Point 6 or Element 6 where it says "the defendant    12:31

6    could have reasonably foreseen that the substantive    12:31

7    crime might be committed," we would suggest that it    12:31

8    say "would be committed" because you could -- it's    12:31

9    different, I think, to say reasonably foreseen that    12:31

10   something might happen versus actually reasonably    12:32

11   foreseeing that it would happen.  So we would suggest    12:32

12   that "might" be changed to "would."    12:32

13        THE COURT:  That seems right, doesn't it?    12:32

14        MR. NOVICK:  I'm looking for the spot.    12:32

15        THE COURT:  Page 28, third line down under 6.    12:32

16   So the old Paragraph 10, "Guilt of substantive    12:32

17   offenses."    12:32

18        MR. NOVICK:  I see what you're saying, Your    12:32

19   Honor.  I'm sorry.  No objection, Your Honor.    12:32

20        THE COURT:  Anything else?    12:32

21        MR. SILVER:  Nothing on that section.  I    12:32

22   think on the next page, the last paragraph before we    12:32

23   talk about Count 8 should refer to six elements as    12:33

24   opposed to five.    12:33

25        And then we would just suggest that at the    12:33

1    end of that paragraph where Your Honor references      12:33

2    aiding and abetting, I think aiding and abetting       12:33

3    hasn't been defined yet, so perhaps just add a         12:33

4    sentence saying I will explain to you the elements of  12:33

5    aiding and abetting or the meaning of aiding and       12:33

6    abetting shortly.                                      12:33

7         THE COURT:  Okay.                                 12:33

8         MR. KAHN:  I'm sorry.  I thought there are        12:33

9    only five elements of conspiracy.                      12:33

10        MR. SILVER:  I think it refers to the six         12:34

11   elements of Pinkerton liability.                       12:34

12        MR. KAHN:  Oh, I'm sorry.  My apologies.          12:34

13        THE COURT:  Oh, we were going to look at          12:34

14   something else.                                        12:34

15        MR. SILVER:  You're right, Your Honor.  That      12:34

16   was the point you had made earlier that here where we  12:34

17   talk about Pinkerton, we should say -- we should       12:34

18   reference withdrawal so to say that if the jury has    12:34

19   found the defendant withdrew from the conspiracies     12:34

20   charged in Counts 1 or Counts 8, that this -- they     12:34

21   may not find Mr. Hoskins guilty using this theory of   12:34

22   liability.                                             12:34

23        MR. NOVICK:  Can I ask, Your Honor, we have       12:34

24   no objection to there being a reference to withdrawal  12:34

25   here.  But just one other comment in that last         12:34

1    paragraph.  Where it says, "If, however, you are not            12:35

2    satisfied as to the existence of any of these,"                 12:35

3    change to six elements, "as to any particular count             12:35

4    among Counts 2 through 7, then you may not find the              12:35

5    defendant guilty of that count using this alternative           12:35

6    method."                                                        12:35

7         THE COURT:  Now, with respect -- we still                  12:35

8    haven't discussed Pinkerton liability in relation to            12:35

9    Count 8.  So I think we need to hold off on that                12:35

10   incorporation by reference.  This is still just count          12:35

11   -- as to the conspiracy of Count 1, right?                      12:36

12        MR. NOVICK:  Yes, Your Honor.                              12:36

13        THE COURT:  So now we're on Count 8.                       12:36

14        MR. SILVER:  My next comment is under the                  12:36

15   first and second objects of the conspiracy or I guess           12:36

16   the first object for conspiracy which is Element One,           12:37

17   Subpart A.                                                      12:37

18        So, Your Honor, we would just request that at              12:37

19   the end of this both Subpart A and Subpart B where              12:37

20   Your Honor is describing the two objects of the                 12:37

21   conspiracy charged in Count 8, that you include the             12:37

22   phrase at the end where you say "rather you need to             12:37

23   determine if the government has proven that the                 12:37

24   commission of this offense was an object or goal of             12:37

25   the conspiracy alleged in Count 8, which the                    12:37

1    defendant specifically intended to accomplish," just    12:37

2    to make it clear that he must join the conspiracy    12:37

3    with that intent.    12:37

4        MR. NOVICK:  I think that specific intent is    12:37

5    covered elsewhere, the definition.  I think adding it    12:37

6    into a description of the existence of the conspiracy    12:37

7    is not appropriate.  That is part of the elements in    12:37

8    the object -- excuse me, the membership in the    12:38

9    conspiracy which Your Honor instructs separately.  I    12:38

10   think it's going to get confusing.    12:38

11       THE COURT:  Can I have the defendant's    12:38

12   requested language again?    12:38

13       MR. SILVER:  We would just request that -- so    12:38

14   for Subpart A after the word "Count 8" which ends the    12:38

15   paragraph, we --    12:38

16       THE COURT:  I need to -- yes.  Okay.    12:38

17       MR. SILVER:  We would say, comma, which the    12:38

18   defendant specifically intended to accomplish.  And    12:38

19   it would be the same phrase at the end of Subpart B    12:38

20   as well on the next page.    12:38

21       THE COURT:  And the government says that --    12:38

22       MR. NOVICK:  That is covered.    12:38

23       THE COURT:  You're not saying that intent    12:38

24   didn't apply there.  You're just saying it's covered    12:38

25   elsewhere?    12:38

1    MR. NOVICK:  Yeah.  Your Honor, I'm saying    12:38

2    that intent is a part of a membership in conspiracy.    12:38

3    This is describing existence of the conspiracy.  It's    12:38

4    separately covered in a number of places.  And I    12:39

5    don't think calling it out and combining two elements    12:39

6    helps with clarity for purposes of the jury's job    12:39

7    here because this isn't talking about the defendant's    12:39

8    intent.  This is talking about the existence of a    12:39

9    conspiracy whether or not the defendant was a member    12:39

10   of it.    12:39

11       THE COURT:  Did you want to respond to that,    12:39

12   Mr. Silver?    12:39

13       MR. SILVER:  Your Honor, I think -- and we    12:39

14   can discuss this further when we get to the next    12:39

15   element which is membership in the conspiracy.  But I    12:39

16   think the charge as drafted doesn't frankly make    12:39

17   clear enough the specific intent element of    12:40

18   membership in the Count 8 conspiracy.  And it refers    12:40

19   back to Your Honor's previous charge on membership    12:40

20   earlier and then talks about the specific mens rea    12:40

21   requirements for these two particular objects.  But    12:40

22   it's not really clear I think either in Element One    12:40

23   or Element Two that the defendant must join this    12:40

24   conspiracy with the specific intent to commit one or    12:40

25   both of those two crimes.    12:40

1      THE COURT:  But why would we put that here?     12:40

2      MR. SILVER:  Well, just for clarity sake,       12:40

3  Your Honor.                                          12:40

4      MR. NOVICK:  That would make it one element.    12:40

5      THE COURT:  But we then go on and we talk       12:40

6  about membership and we talk about the government    12:40

7  having to prove the defendant acted with the intent  12:41

8  to promote the carrying on.  Why is that not         12:41

9  sufficient and actually a little bit more precise?   12:41

10     MR. SILVER:  Well, I think, Your Honor, our      12:41

11 point is that the way it's phrased -- I'm on the next 12:41

12 element now, the membership element.  The way it's    12:41

13 phrased now, the Court refers the jury back just to   12:41

14 the definitions of the terms "knowingly" and          12:41

15 "willfully" which were defined earlier.  So it        12:41

16 doesn't really refer the jury back to the full        12:41

17 description of Count 1 of what it means to be a        12:41

18 member of a conspiracy or that one has to join with   12:41

19 any specific intent.  And then the Court discusses    12:41

20 these two crimes which are the objects of the         12:41

21 conspiracy and their particular mens rea              12:41

22 requirements, one of which happens to have -- and     12:42

23 this is kind of what's confusing about this and I     12:42

24 think what we were briefing earlier.  One of the two  12:42

25 objects of this conspiracy happens to be a specific   12:42

1   intent crime and the other one is a knowledge crime,          12:42

2   and so it's a bit confusing.                                  12:42

3        I think it might be clearer to, instead of              12:42

4   having these two paragraphs discussing the mens rea           12:42

5   requirements of the two different crimes, those could         12:42

6   frankly be removed because Your Honor covers the              12:42

7   elements of those crimes elsewhere and just simply            12:42

8   here say -- refer back to the discussion in Count 1           12:42

9   of what it means to become a member of a conspiracy           12:42

10  and that one must join with a specific intent to              12:42

11  accomplish one or both of the objects of the charged          12:42

12  conspiracy and then later discuss what those                  12:42

13  particular objects are and the elements of those              12:42

14  objects.                                                      12:42

15       MR. NOVICK:  I think, Your Honor, very                   12:42

16  clearly the reference back to knowingly and willfully         12:43

17  in pages 11 through 13 are where the Court instructs          12:43

18  the jury on the issue of intent in the context of             12:43

19  conspiracy.  It says, "Did he participate in it with          12:43

20  the knowledge of unlawful purpose with the specific           12:43

21  intention of furthering its business or objective as          12:43

22  an associate or worker."  I think that covers it.             12:43

23       And I think that the other two paragraphs               12:43

24  here are important because it is relevant as the              12:43

25  cases have said provided in the briefing, what does           12:43

1    it mean to specifically intend a nonspecific intent                    12:43
2    crime.  It's certainly not true that we need to prove                  12:43
3    the defendant intended to violate 18 USC 8 1957.  And                  12:43
4    so I think what the cases have said is in the context                  12:43
5    of intent and conspiracy, the proof need not be more                   12:44
6    than that intent needed for the underlying crime.                      12:44
7         MR. SILVER:  I think we have kind of two                          12:44
8    issues.  One is just simply in the paragraph that                      12:44
9    says "my earlier explanations," I think the way it                     12:44
10   reads, you're just simply referring the jury back to                   12:44
11   the definition of knowingly and willful without                        12:44
12   making it --                                                           12:44
13        MR. NOVICK:  Which is where the specific                          12:44
14   intent section is.                                                     12:44
15        MR. SILVER:  Well, without making it clear                        12:44
16   enough it's really the entire prior instruction on                     12:44
17   membership in a conspiracy is what the jury needs to                   12:44
18   consider here, not --                                                  12:44
19        MR. NOVICK:  The specific intent willfully --                     12:44
20   the willfully and, is it, knowingly is where the                       12:44
21   intent element comes from.  That's where it's                          12:44
22   incorporated.  So I don't know that it requires more.                  12:44
23   I'm telling you, you're instructing the jury that the                  12:44
24   defendant had to act knowingly and willfully.  What                    12:44
25   does that mean, I've defined it.  It includes exactly                  12:45

1    what we just read on page 11 and 12.                    12:45

2         MR. PEACOCK:  I think if we were to change       12:45

3    that sentence that begins with "my earlier             12:45

4    explanations" to read, "my earlier explanations of     12:45

5    what is meant by knowingly and willfully becoming a    12:45

6    member of the conspiracy apply equally here."  You     12:45

7    should refer back to pages 11 and 13.  I think that    12:45

8    would make it a bit clearer.                           12:45

9         MR. NOVICK:  I think that is covered by the       12:45

10   prior sentence, Your Honor.                            12:45

11        THE COURT:  I'm sorry.  I'm not sure I heard      12:45

12   the difference between what's here and what you're     12:45

13   proposing.                                             12:45

14        MR. PEACOCK:  Well, I think the difference,       12:45

15   Your Honor, is that we want it to be very clear that   12:45

16   what's being discussed is knowingly and willfully      12:45

17   joining the conspiracy rather than merely what the     12:45

18   terms knowingly and willfully mean.                    12:45

19        MR. NOVICK:  That's what the prior sentence       12:45

20   says, Your Honor.  It says -- the second element is    12:45

21   the defendant knowingly and willfully.                 12:45

22        THE COURT:  Knowingly and willfully became a      12:45

23   member of the conspiracy.  My earlier explanation of   12:45

24   what's meant by knowingly and willfully apply equally  12:46

25   here.  Let's leave that.  I think that's enough.       12:46

1    They'll go right back to 11 to 13, they'll see    12:46

2    membership in the conspiracy and they'll have that    12:46

3    full charge in mind to be applied here.  The problem    12:46

4    otherwise is you charge a little but not the whole    12:46

5    thing and it becomes confusing as to whether it's    12:46

6    intended to incorporate the entirety.  So let me just    12:46

7    leave it like that.    12:46

8         MR. SILVER:  So just before -- the other    12:46

9    aspect of our objection here was, again, just the    12:46

10   next two paragraphs where the Court talks about the    12:46

11   different mens rea requirements for the two different    12:46

12   objects we think is potentially confusing for the    12:46

13   jury because it's not -- they still have to find that    12:46

14   Mr. Hoskins joined this conspiracy, the money    12:47

15   laundering conspiracy, with a specific intent to    12:47

16   commit one of these two crimes.  And so the fact that    12:47

17   one of those two crimes is not in and of itself a    12:47

18   specific intent crime doesn't change that.  And so we    12:47

19   think it's confusing here to discuss the underlying    12:47

20   mens rea elements of those two crimes.  It could just    12:47

21   be done -- I think is done separately in the charge    12:47

22   when the elements of those two crimes are explained.    12:47

23         MR. NOVICK:  This was our briefing, Your    12:47

24   Honor.  This was specifically as to 1957.  This is    12:47

25   obviously not an issue as to 1956 because it is a    12:47

1    specific intent crime.  But I don't think the law          12:47
2    supports a reading that says you somehow have to           12:47
3    intend the commission of a violation of a particular       12:47
4    statute.  You have to intend the commission of the         12:47
5    object of the conspiracy.                                  12:48
6          And here what's the object of the conspiracy?        12:48
7    It is not a specific intent crime.  It is -- requires      12:48
8    the defendant's knowledge.  And I think it's relevant      12:48
9    to clarify here that what the defendant's intent in        12:48
10   this context is is to -- excuse me, what the               12:48
11   defendant's mens rea in this context is is to be           12:48
12   aware that the funds being transacted by him or his        12:48
13   coconspirators are proceeds of an AUSA or proceeds of      12:48
14   criminal activity.                                         12:48
15         MR. SILVER:  I think we just have a                   12:48
16   disagreement of a legal nature which was set forth in      12:48
17   our prior briefing.  I think our position is that a        12:48
18   conspiracy to commit a violation of 1957 has a higher      12:48
19   mens rea requirement than a violation of 1957 itself.      12:48
20   I think that when you join a conspiracy, you have to       12:48
21   do so with the specific intent to do something             12:48
22   illegal.  And that's a heightened mens rea standard        12:48
23   than just simply committing the substantive offense.       12:48
24         MR. NOVICK:  And that's why we cited those            12:49
25   cases that say that's not accurate, that the               12:49

| | | |
|---|---|---|
| 1 | conspiracy does not elevate the intent requirement | 12:49 |
| 2 | where it doesn't exist. | 12:49 |
| 3 | THE COURT:  All right.  I had taken into | 12:49 |
| 4 | consideration your arguments in the briefing.  I'll | 12:49 |
| 5 | look at that again as to fix the typo. | 12:49 |
| 6 | MR. NOVICK:  There's a -- "crime," yes. | 12:49 |
| 7 | THE COURT:  All right.  What's next? | 12:50 |
| 8 | MR. NOVICK:  I have nothing until -- | 12:50 |
| 9 | THE COURT:  Do we want on 34 to say "has also | 12:50 |
| 10 | asserted the defense of withdrawal as to the charges | 12:50 |
| 11 | in Count 8"? | 12:50 |
| 12 | MR. SILVER:  I think that makes sense, Your | 12:50 |
| 13 | Honor. | 12:50 |
| 14 | MR. NOVICK:  I think you do instruct the jury | 12:50 |
| 15 | on withdrawal in the context of Count 8. | 12:50 |
| 16 | MR. SILVER:  Yeah.  It's right here at the | 12:50 |
| 17 | bottom under 5 after "membership." | 12:50 |
| 18 | THE COURT:  So we earlier just had the | 12:50 |
| 19 | requirement of acquittal as to Count 1 after the | 12:51 |
| 20 | withdrawal.  Is that the change that we -- | 12:51 |
| 21 | MR. SILVER:  I think maybe what Your Honor is | 12:51 |
| 22 | referring to is we want to make clear here where we | 12:51 |
| 23 | talk about withdrawal in the context of Count 8, that | 12:51 |
| 24 | if they find Mr. Hoskins withdrew from the money | 12:51 |
| 25 | laundering conspiracy, they can't -- or, actually, I | 12:51 |

1  guess that would go -- I don't know if we talk about                    12:51

2  Pinkerton separately with respect to Count 8 or not.                    12:51

3          MR. NOVICK:  I think the issue, Your Honor,                     12:51

4  was when we were talking about Count 1, counsel had                     12:51

5  initially suggested adding a reference to Count 8 and                   12:51

6  our point was, well, this is a separate issue of                        12:51

7  withdrawal which I think will get covered when we get                   12:51

8  to the other issue of withdrawal.  And I think as                       12:51

9  I've argued earlier, I think that's adequately                          12:51

10  covered here in Count 8.                                               12:51

11         THE COURT:  Okay.  Let's move on.                               12:52

12         MR. SILVER:  I just had a very small point on                   12:52

13  Section E where the beginning of the discussion of                     12:52

14  the substantive money laundering counts, which is it                   12:52

15  currently reads "Counts 9 through 12 charge                            12:52

16  Mr. Hoskins with unlawfully transporting or                            12:52

17  attempting to transport."  Actually, I think                           12:52

18  "attempt" is -- are you proceeding on an attempt                       12:52

19  theory or can we remove attempt?                                       12:52

20         MR. NOVICK:  I think attempt would be                           12:52

21  appropriate.                                                           12:52

22         MR. SILVER:  Okay.  But actually the next                       12:52

23  part is what I was going to raise, which is "such                      12:52

24  funds or monetary instruments to or from the United                    12:52

25  States."  But the charges are really only from                         12:52

1    charges, so I think it could be amended to say "funds                12:52
2    or monetary instruments from the United States."                     12:52
3            THE COURT:  It only flowed in one direction.                 12:52
4            MR. SILVER:  That's right.  "From the United                 12:52
5    States to a place outside the United States."                        12:52
6            THE COURT:  Do we need to add "to a place                    12:53
7    outside the United States"?                                          12:53
8            MR. SILVER:  I think it would make it                        12:53
9    clearer.                                                             12:53
10           MR. NOVICK:  That's fine, Your Honor.                        12:53
11           I don't have anything until the section under                12:53
12   elements of money laundering.  It looks like you have               12:53
13   something before me.                                                12:53
14           Under "Elements of money laundering," under                 12:53
15   the first bullet, I would add, "comma, or aided or                  12:53
16   abetted or caused another to do the same."                          12:53
17           MR. SILVER:  Where are you?                                  12:53
18           THE COURT:  So it's 36.                                      12:53
19           MR. PEACOCK:  It's 33 for us.                               12:54
20           THE COURT:  Thirty-three?                                    12:54
21           MR. SILVER:  We have a different page                        12:54
22   numbering for some reason.                                           12:54
23           MR. NOVICK:  So under "Elements of money                     12:54
24   laundering," there are two points, Point 1 and -- two              12:54
25   elements.  Sorry.  And under the first element, at                  12:54

1    the end of that first element, read as, "For, comma,

2    or aided and abetted or caused another to do the

3    same."

4          And I'd ask for that same thing at the end of

5    the first paragraph under Number 3, Element One that

6    begins, "The first element the government must

7    prove."

8          MR. SILVER:  This is after aiding and

9    abetting has already been defined?  No, it hasn't

10   been defined yet.  Okay.

11         THE COURT:  Okay.

12         MR. NOVICK:  Our next --

13         MR. PEACOCK:  Sorry.  Regarding Element One,

14   "Transportation of a monetary instrument or funds to

15   or from the United States," we think this needs to

16   pick up the transportation, I guess in this case it

17   should just be "from the United States," it should be

18   knowing.

19         And this is the issue that we briefed.  We

20   don't think that the "to or from the United States"

21   language in Section 1956 is merely a jurisdictional

22   element but it's actually a part of the offense and,

23   therefore, that the default rule that a knowing mens

24   rea applies does apply to that part of Section 1956

25   and should be incorporated in the instruction.

12:54
12:54
12:54
12:54
12:54
12:54
12:54
12:54
12:55
12:55
12:55
12:55
12:55
12:55
12:55
12:55
12:55
12:55
12:55
12:55
12:55
12:56
12:56
12:56
12:56

1    MR. NOVICK:  We obviously argue the opposite.    12:56

2  We would ask for a sentence at the end of the element    12:56

3  which reads, "However, the government need not prove    12:56

4  that the defendant knew the money was being    12:56

5  transported from inside the United States to or    12:56

6  through a place outside the United States."    12:56

7    THE COURT:  Let me go back to the    12:56

8  Subparagraph 1 under elements.  Are we taking out "or    12:56

9  to a place in the United States"?    12:56

10    MR. NOVICK:  Yes, Your Honor.    12:57

11    MR. SILVER:  I think we should do it.  It    12:57

12  appears in a few places under -- yeah, I think both    12:57

13  elements and Element One.  We would suggest that it    12:57

14  be removed in each of those places.    12:57

15    THE COURT:  So what was the addition?    12:57

16    MR. NOVICK:  I would add a sentence right    12:57

17  before Number 4, Element Two, the last sentence under    12:57

18  Element One that would read, "However, the government    12:57

19  need not prove that the defendant knew the money was    12:57

20  being transported from inside the United States to or    12:57

21  through a place outside the United States."    12:57

22    MR. PEACOCK:  And we think that essentially    12:57

23  the opposite should be added.    12:57

24    MR. NOVICK:  I would add, Your Honor, right    12:58

25  before that sentence, that parenthetical can also be    12:58

1    removed because it also reads "or to someplace in the    12:58

2    United States through or from a place outside the    12:58

3    United States."  It's the same thing.    12:58

4         MR. SILVER:  Yeah.  It appears in the first    12:58

5    and final paragraphs of Element One, that same    12:58

6    parenthetical.    12:58

7         THE COURT:  All right.  I have examined the    12:59

8    briefing on this, and it just doesn't seem to me this    12:59

9    is the type of a jurisdictional element that tracks    12:59

10   the types of jurisdictional elements that we see in    12:59

11   the other cases that are certainly more clearly    12:59

12   jurisdictional, being on federal lands, et cetera.    12:59

13   So I have left that out for the time being.  I will    12:59

14   consider your argument and review your authority and    13:00

15   see if a change is necessary either way.    13:00

16        MR. PEACOCK:  Thank you, Your Honor.    13:00

17        MR. SILVER:  I had something on venue if    13:00

18   that's where we are next.    13:00

19        MR. NOVICK:  Before we -- no.    13:00

20        THE COURT:  Excuse me.    13:00

21        (Off the record from 1:00 p.m. to 1:01 p.m.)    13:00

22        THE COURT:  Anything before we get to venue?    13:01

23        MR. NOVICK:  No, Your Honor.    13:01

24        THE COURT:  Okay.    13:01

25        MR. SILVER:  So two requests, I think, in    13:01

1    connection with the venue charge.  They're both in    13:01

2    the third paragraph of the charge.  We would request    13:01

3    that the Court add a sentence after the first    13:01

4    sentence which reads, "To determine where the    13:01

5    financial transaction was conducted, you must    13:01

6    determine whether there was a single continuing    13:01

7    transaction that was conducted at least in part in    13:01

8    Connecticut," which refers directly to the continuing    13:01

9    transaction provision of 1956(i)(3).    13:01

10            And then our second request would be -- and    13:01

11    the next sentence is fine.    13:01

12            And then we would request that the final    13:01

13    sentence be removed.  The final sentence is the one    13:01

14    that says, "In deciding whether the government has    13:02

15    proved venue, you should consider any transfer which    13:02

16    is implemented in multiple stages," et cetera.  We    13:02

17    would request that sentence be removed.    13:02

18            I think that sentence is sort of a version of    13:02

19    what the government has requested which I think comes    13:02

20    from the Harris case which they've cited.  We don't    13:02

21    think it's applicable here.  Harris was not a case    13:02

22    about venue.  It was a case about whether the    13:02

23    government had adequately proven a financial    13:02

24    transaction, an international financial transaction    13:02

25    or an international transfer, I'm sorry, in    13:02

1    connection with 1956(a)(2)(A).  So it did not deal                    13:02

2    with the requirements of venue at all or 1956(i)(3).                  13:02

3         If the Court is inclined to include something                    13:02

4    along those lines, we would request the sentence be                   13:02

5    changed to at least mimic more closely what the                       13:02

6    Harris court actually charged the jury in that case                   13:03

7    which is included in the opinion, I think it's                        13:03

8    referenced in the briefing.                                           13:03

9         MR. KAHN:  Your Honor, I think that the                          13:03

10   government has a couple points here.  As to Harris,                   13:03

11   that case is actually directly on point.  It involves                 13:03

12   (A)(2) and it's talking about whether the case was                    13:03

13   properly charged.  They don't actually use the word                   13:03

14   "venue" but they're talking about a two-step                          13:03

15   transaction domestically and then overseas, and the                   13:03

16   Court held that it was all part of a multistep plan.                  13:03

17   So certainly we think that the instruction that you                   13:03

18   have included here is appropriate.  It tracks the                     13:03

19   Second Circuit.  And I believe there's another Second                 13:03

20   Circuit case, Dinero as well that has a similar                       13:03

21   holding.                                                              13:03

22        And with respect to the request for the added                    13:03

23   sentence by defense counsel for a single -- you must                  13:03

24   find that there is a single continuing transaction,                   13:04

25   that is what the Court is defining in the last                        13:04

1    sentence, and to include it at the outset is                13:04

2    conclusory.  There is no meaning to single continuing        13:04

3    transaction.  That is what the Court is explaining by        13:04

4    one multistep transfer.                                       13:04

5         MR. SILVER:  I think, Your Honor, if the               13:04

6    Court takes a look at the *U.S. v. Harris*, it's quite      13:04

7    clear they're not talking about what a continuing          13:04

8    transaction is.  They're not talking about venue.          13:04

9    Venue was not an issue in that case.  They're talking      13:04

10   about a different element of 1956(a)(2)(A).  So            13:04

11   there's no basis to adopt that formulation in             13:04

12   connection with this venue charge.  Again, if the         13:04

13   Court is inclined to include some kind of language        13:04

14   from Harris, we don't think this sentence really          13:04

15   captures even what the Harris Court said and would be     13:04

16   happy to put forth an alternative proposal.  But we       13:05

17   don't think it should be included at all because          13:05

18   really it's just the language of 1956(i) which say        13:05

19   what a continuing transaction is.                          13:05

20        THE COURT:  Do you have a proposal to submit?         13:05

21        MR. SILVER:  I can read something now.                13:05

22   Again, our position is there needs to be nothing          13:05

23   further than the sentence that says "the term            13:05

24   conducts."  But if the Court wanted to go further, we    13:05

25   would propose that it read, "In deciding whether the     13:05

1   government has proved the venue requirement, you

2   should consider whether the transfer of funds from

3   API or Alstom Power, Inc., to Pacific Resources

4   International and from Pacific Resources

5   International to Indonesia was contemplated and

6   executed as a single transaction, period.  If instead

7   you find that the movement of funds from PRI to

8   Indonesia was a separate independent transaction,

9   then you may not find venue in Connecticut."  Because

10  I think that's exactly what is at issue here.

11         MR. KAHN:  That's simply not supported by the

12  case law, Your Honor.  And I think, again, that's a

13  conclusory statement, single transaction versus --

14         THE COURT:  I mean, we're leaving it to the

15  jury to determine whether this is a single

16  transaction composed of parts or a multitransaction

17  set of activities.  I'm trying to explain what -- the

18  consequences of each such finding or what's

19  necessary.

20         MR. KAHN:  That's exactly right, Your Honor.

21         THE COURT:  I think that's right.  I think

22  your proposal is fraught.

23         MR. SILVER:  Well, Your Honor, I guess the

24  problem we have is that sentence as it currently

25  reads says that, "You should consider any transfer

13:05
13:05
13:05
13:05
13:05
13:05
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:06
13:07
13:07
13:07
13:07

1    which is implemented in multiple stages to be one    13:07

2    single transaction if you find that each stage was an    13:07

3    integral part of a single plan to transfer funds."    13:07

4    That's not anywhere in the statute.  So we're kind of    13:07

5    just essentially making up a definition of what a    13:07

6    continuing transaction is.  And I think that is much    13:07

7    fuzzier than the plain meaning of 1956(i)(3) which    13:07

8    says that a continuing transaction is a transfer of    13:07

9    funds from one place to another.  That's what the    13:07

10   statute says.    13:07

11        MR. KAHN:  That is -- so just to be clear,    13:07

12   Your Honor, so that the Court does not -- is not in    13:07

13   concern that we are drawing things out of thin air,    13:07

14   the Second Circuit held, and I quote, We held in    13:08

15   Harris that a multistep plan to transfer money from    13:08

16   one location to another should be viewed a single    13:08

17   transfer under 1965(a)(2).    13:08

18        MR. SILVER:  Right.    13:08

19        MR. KAHN:  That is the Second Circuit, Dinero    13:08

20   quoting and citing to Harris which also talks about    13:08

21   multistep plans.  So the whole purpose, Your Honor,    13:08

22   of a single transaction, that is defined by the    13:08

23   Second Circuit as a multistep plan.    13:08

24        So, again, I think the instruction as is    13:08

25   captures the Second Circuit law accurately.    13:08

1    MR. SILVER:  The problem is both those cases    13:08

2  define what an international transfer is for purposes    13:08

3  of elements of (a)(2)(A), not what a single    13:08

4  continuing transaction is for venue purposes in    13:08

5  1956(i).  They're just two different concepts.    13:08

6    The language I had suggested regarding    13:09

7  contemplated and executed actually comes directly    13:09

8  from Harris.  That's where that language comes from    13:09

9  which, again, I don't think we should go to Harris.    13:09

10  But if the Court is inclined to use that authority,    13:09

11  then I think that our formulation is more -- is    13:09

12  closer to it.    13:09

13    THE COURT:  All right.  Let me again look    13:09

14  back at your arguments and see if I think we need to    13:09

15  make adjustments here.    13:09

16    What's next?    13:09

17    MR. NOVICK:  So where aiding and abetting,    13:10

18  right below where we were just looking, you define    13:10

19  aiding and abetting.  I think around this area would    13:10

20  be the appropriate place to put an additional    13:10

21  Pinkerton instruction that refers back to the earlier    13:10

22  instruction.    13:10

23    MR. SILVER:  An additional Pinkerton    13:10

24  instruction just to repeat that it's an alternative    13:10

25  basis, you mean?    13:10

```
 1              MR. NOVICK:  Because previously that          13:10
 2    Pinkerton instruction was related to Counts 6 and 7.    13:10
 3              THE COURT:  So you would put that there       13:10
 4    before aiding and abetting?                             13:10
 5              MR. NOVICK:  Yes, Your Honor.                 13:10
 6              MR. SILVER:  Oh, I see.                        13:10
 7              THE COURT:  And I could do that by reference.  13:10
 8              MR. NOVICK:  Yes.                              13:10
 9              MR. SILVER:  And then we would just request    13:10
10    that it's -- as with the prior Pinkerton language, we   13:10
11    included that if they find withdrawal, they can't       13:11
12    rely on that theory of liability.                       13:11
13              MR. NOVICK:  Which I think would be           13:11
14    accomplished by reference but ...                       13:11
15              THE COURT:  Let's see whether that reference  13:11
16    is right there.                                         13:11
17              MR. NOVICK:  I think Your Honor had talked    13:11
18    about adding that into the prior Pinkerton             13:11
19    instruction.                                            13:11
20              THE COURT:  And we didn't do that yet?        13:11
21              MR. NOVICK:  I think Your Honor said that you  13:11
22    were going to.                                          13:11
23              THE COURT:  All right.  If we do that, we     13:11
24    don't need to then add it once more.  And if not,       13:11
25    we'll add it in both places.  Okay.                     13:11
```

1     MR. NOVICK:  I don't have anything for a     13:12

2 while.     13:12

3     MR. SILVER:  I don't think we do either.     13:12

4     THE COURT:  All right.  What's the next one     13:12

5 anyone has an issue with?     13:12

6     MR. NOVICK:  The next one is right before --     13:12

7 sorry, is right after guidelines for deliberation     13:12

8 under "government as a party."  The last sentence     13:12

9 reads, "However, it is the government that bears the     13:12

10 burden of proving Mr. Hoskins guilty beyond a     13:12

11 reasonable doubt and Mr. Hoskins has no burden to     13:12

12 prove his innocence," I would add "though I remind     13:12

13 you that as to the issue of withdrawal, the defendant     13:12

14 bears the burden of proof by a preponderance of the     13:12

15 evidence."     13:12

16     THE COURT:  So I'll just put something in     13:14

17 there that says separately, "May I remind you that     13:14

18 the defendant has the burden of persuasion on his     13:14

19 defense and withdrawal."     13:14

20     MR. NOVICK:  Yes, Your Honor.     13:14

21     THE COURT:  Anything else?     13:14

22     MR. SILVER:  Your Honor, I don't think it's     13:14

23 worth belaboring but we had requested a revised     13:14

24 aiding and abetting instruction based on a Roseman     13:14

25 case that had been briefed.  And I'm sure Your Honor     13:14

1    read those submissions and so I don't think we need    13:14

2    to discuss it further.  I just wanted to flag that    13:14

3    issue.    13:14

4         THE COURT:  Thank you.    13:14

5         MR. SILVER:  I think our next point is on    13:14

6    uncalled witnesses.  I don't have anything before.    13:14

7         MR. NOVICK:  I have something on "Charts and    13:14

8    summaries," H.  The second sentence reads, "These    13:14

9    charts and summaries were admitted in place of the    13:15

10   underlying documents."  I think that by and large --    13:15

11        THE COURT:  In addition to?    13:15

12        MR. NOVICK:  In addition to.    13:15

13        THE COURT:  I'm going to then take out the    13:15

14   whole rest of that sentence, "to save time and avoid    13:15

15   unnecessary inconvenience."    13:15

16        MR. NOVICK:  I think that's why we used the    13:15

17   summaries, but I think that's fine.  I don't feel    13:15

18   strongly.    13:15

19        THE COURT:  Well, let's let them know that we    13:16

20   have them in mind.    13:16

21        All right.  Anything else?    13:16

22        MR. NOVICK:  I have nothing until testimony    13:16

23   of cooperating witnesses.    13:16

24        MR. PEACOCK:  So we had a point just before    13:16

25   that.  There's a proposed -- an uncalled witnesses    13:16

1  instruction.  I think our view is that an uncalled                     13:16

2  witness instruction isn't appropriate here.  I don't                   13:16

3  think it's necessarily correct as a factual matter                     13:16

4  that we actually did have an equal opportunity to                      13:16

5  call witnesses given that the vast majority of any                     13:16

6  fact witnesses who move had something to say are                       13:16

7  located overseas where the government has --                           13:16

8         THE COURT:  Which means you would have had                      13:16

9  equal unavailability?                                                  13:16

10         MR. PEACOCK:  Well, I think the government                     13:16

11 had significant cooperation from the KPK and other                     13:16

12 investigators who could have made those people                         13:16

13 available to them.  Beyond that, in the case of                        13:16

14 Mr. Sharafi, the government met with him we think                      13:17

15 over 70 times prior to trial.  He was on their                         13:17

16 witness list until I think the second to last day of                   13:17

17 trial.                                                                 13:17

18         So while we may have had some opportunity to                   13:17

19 call Mr. Sharafi as a result of the gilded invitation                  13:17

20 that they presented to us, I don't think that we had                   13:17

21 an equal opportunity given the nine years or so that                   13:17

22 they were dealing directly with him.                                   13:17

23         MR. NOVICK:  I think that's just factually                     13:17

24 wrong, Your Honor.  We've given them -- first of                       13:17

25 all --                                                                 13:17

```
 1          THE COURT:  With respect to equal            13:17
 2   opportunity, can we leave that out and just go,     13:17
 3   "There were names who did not appear to testify.  You  13:17
 4   should not draw any inference or reach any conclusion  13:17
 5   as to what they would have testified to had they been  13:17
 6   called.  Their absence should not affect your        13:17
 7   judgment"?  Because that's the essence of it.        13:17
 8          MR. PEACOCK:  That's fine for us, Your Honor.  13:17
 9          MR. NOVICK:  I think that it ought to -- I    13:18
10   think what that sentence expresses essentially is    13:18
11   that you should not draw -- hold it against,          13:18
12   essentially, either side for not calling a particular 13:18
13   witness and particularly those who are equally        13:18
14   available.                                            13:18
15          THE COURT:  I'm trying to get out of the      13:18
16   equally available because there is -- only with      13:18
17   respect to Mr. Sharafi is there a clear record of    13:18
18   equal availability.                                  13:18
19          MR. NOVICK:  Well, I would argue, Your Honor,  13:18
20   as to any other witness.  There is no evidence that  13:18
21   the government had any further access.  We're talking 13:18
22   about people who were friends of the defendant.  We  13:18
23   have no ability, had no ability to compel folks in    13:18
24   Indonesia to speak to us.                             13:18
25          THE COURT:  That's why I'm saying that whole  13:18
```

1    business about equal opportunity to call is not          13:19
2    squaring up.                                             13:19
3         MR. NOVICK:  How about an equal opportunity         13:19
4    or lack of opportunity or inability?                     13:19
5         MR. SILVER:  I just don't think it's accurate       13:19
6    with respect to even Mr. Sharafi.  I just don't think    13:19
7    you can say it's an equal opportunity to call when --    13:19
8         THE COURT:  Sure it is.  He was available.          13:19
9    He could be -- he could have been called and would       13:19
10   have been presented notwithstanding his being outside    13:19
11   the subpoena power.                                      13:19
12        MR. SILVER:  I understand Your Honor's point.       13:19
13   But I think that as Mr. Peacock said, this is someone    13:19
14   the government worked with for almost ten years and      13:19
15   met with 80 times.                                       13:19
16        THE COURT:  I understand that.  But I just          13:19
17   don't think that has anything to do with this, and       13:19
18   I'm really trying to make sure that the jury doesn't     13:19
19   think this has anything to do with it.                   13:19
20        MR. NOVICK:  I agree, Your Honor, and I am          13:20
21   incredibly concerned about the arguments counsel's       13:20
22   suggesting.                                              13:20
23        THE COURT:  No, we're not -- I keep --              13:20
24   because I really hate to interrupt closing arguments.    13:20
25   So that's why we air these points beforehand when        13:20

1    something that appears to be heading towards an                13:20
2    improper argument is aired.                                    13:20
3           MR. MORVILLO:  Can I just weigh in on this              13:20
4    for a second here since I'm the one who is going to            13:20
5    be making the argument?  I certainly have no                   13:20
6    intention to argue that an inference should be drawn           13:20
7    against the government.                                        13:20
8           I do think what Your Honor said a moment ago,           13:20
9    that the jury should draw no inferences from                   13:20
10   witnesses who don't appear is fair game.  And they             13:20
11   certainly shouldn't speculate about what a witness             13:20
12   may or may not have said just based on the fact that           13:20
13   their names come up during the course of the trial.            13:20
14          And so I think it would be appropriate to say           13:21
15   in argument that the jury should not consider the              13:21
16   fact that these witnesses haven't testified full               13:21
17   stop.                                                          13:21
18          THE COURT:  Is that the back door, arguing              13:21
19   that there are a whole lot of witnesses that the               13:21
20   government didn't call?                                        13:21
21          MR. MORVILLO:  It's really to stress to the             13:21
22   jury that they not consider or speculate about what            13:21
23   any of these witnesses would have said.                        13:21
24          THE COURT:  So how does that differ from "You           13:21
25   shouldn't draw any inference or reach any conclusion           13:21

1    as to what they would have testified to had they been    13:21
2    called?  Their absence should not affect your    13:21
3    judgment in any way.    13:21
4        MR. MORVILLO:  I have no problem with that    13:21
5    part.  I totally agree with that.    13:21
6        MR. NOVICK:  I just think, Your Honor, in    13:21
7    order to close the loop to make sure the jury    13:21
8    understands that it is -- either party could have    13:21
9    done this.  That sentence is important.  And I would    13:21
10   be fine with editing it to say each party had an    13:21
11   equal opportunity or lack of opportunity or    13:22
12   inability.  I think lack of opportunity is probably    13:22
13   the cleanest.  And this is particularly true given    13:22
14   the way opening statements went.    13:22
15       THE COURT:  I instruct you that each party    13:22
16   had an equal opportunity or inability to call any of    13:22
17   these witnesses?    13:22
18       MR. NOVICK:  Yes, Your Honor.    13:22
19       THE COURT:  Well, that covers the field.    13:22
20   Okay.    13:22
21       MR. NOVICK:  Under "Testimony of Cooperating    13:22
22   Witnesses," I think it should -- instead of "two," it    13:22
23   should say "three" and include Larry Puckett.    13:22
24       MR. SILVER:  Nothing further from us.    13:23
25       Just at the very beginning, I handed over a    13:23

```
 1   revised 404(b) charge but --                          13:23
 2        THE COURT:  I have that.                          13:23
 3        MR. NOVICK:  We think that the 404(b) charge      13:23
 4   that's in here is appropriate and in the correct       13:23
 5   place.                                                 13:23
 6        THE COURT:  I'll compare it.                      13:23
 7        MR. KAHN:  And, Your Honor, just 30 seconds       13:23
 8   as this is already long.  But just to return for one   13:23
 9   second because I had to refresh on Dinero and Harris   13:23
10   not being a venue case, it's the flip side of the      13:23
11   exact same coin.  It would have been as if we had      13:23
12   charged the transfer from API to Sharafi.  The         13:23
13   argument there was had we done that, that wouldn't     13:23
14   have been an international transaction.  So it's        13:23
15   looking at the exact same issue, whether the           13:23
16   two-stage transaction was a single continuing          13:24
17   transaction under 1965(a)(2).  And I know Your Honor   13:24
18   is going to look at it.  I just wanted to make that    13:24
19   point.                                                 13:24
20        THE COURT:  Okay.  All right.  If there's         13:24
21   nothing else?                                          13:24
22        MR. SPEARS:  Your Honor, can I just point         13:24
23   out, there's another point in the charge where it      13:24
24   talks about the government needing to prove the        13:24
25   defendant was a domestic concern which I think we      13:24
```

1    agreed --                                                    13:24

2          THE COURT:  Can I have the page where we --            13:24

3          MR. SPEARS:  Yes.  It's page 12 of my draft.           13:24

4    It's Section Six, Element Three, agent of domestic           13:24

5    concerns.  It's really the first sentence of the             13:24

6    agency section, third element.                               13:24

7          MR. NOVICK:  We have no objection to changing          13:24

8    that to read, "The third element the government must         13:24

9    prove is that the defendant was an agent of a                13:24

10   domestic concern."                                           13:24

11         THE COURT:  All right.  I will take your               13:25

12   comments back, consider them, get you a clean, what          13:25

13   we think will be the final draft.  If there is               13:25

14   anything that is amiss, you need to e-mail us right          13:25

15   away because we will start reproducing this to the           13:25

16   jury.                                                        13:25

17         Now, with respect to the length of closing            13:25

18   arguments, what is the request here?                         13:25

19         MR. KAHN:  I think, Your Honor, to err on the         13:25

20   safe side, we would request two hours for closing and      13:25

21   rebuttal for the government.  We hope that it will be       13:25

22   closer to an hour and a half but just to measure            13:25

23   expectations in case it leads to two hours, we want         13:25

24   to be safe.                                                 13:26

25         THE COURT:  Two hours will do you?                    13:26

```
1          MR. MORVILLO:  Oh, yes.                        13:26
2          THE COURT:  Phew.  Well, we will get the case  13:26
3    submitted tomorrow but they won't have much time for 13:26
4    deliberation.                                        13:26
5          MR. MORVILLO:  Would it be your intention to   13:26
6    invite them to begin deliberations or --             13:26
7          THE COURT:  Sure, if it's --                   13:26
8          MR. MORVILLO:  There's time?                   13:26
9          THE COURT:  If there's time.  So my guess is   13:26
10   this may well be a two-hour charge plus.  Hopefully   13:26
11   it will not be much over two hours because we'll then 13:26
12   break for lunch.                                      13:26
13         MR. MORVILLO:  So we'll go from 10 to 12 and    13:26
14   break?                                                13:26
15         THE COURT:  Something like that.                13:26
16         MR. MORVILLO:  Around that time.                13:26
17         THE COURT:  The caterers will deliver their     13:27
18   lunch.  I think I might have to scrimp it to 45       13:27
19   minutes for lunch.  If you both take two hours, we'll 13:27
20   just get to 5 and we need a break in there.           13:27
21         MR. MORVILLO:  I would certainly request a      13:27
22   break between the government's main summation and the 13:27
23   defense if for no other reason that happen to set up  13:27
24   computers and that kind of stuff, Your Honor.         13:27
25         MR. NOVICK:  I would also request a break       13:27
```

1    between defense summation and the rebuttal.                     13:27

2            MR. MORVILLO:  You can use my computer.               13:27

3            MR. NOVICK:  Appreciate it.                            13:27

4            THE COURT:  So we need a break between the            13:27

5    government's initial summation and defense.  We then          13:27

6    need another break -- if you go two hours, we'll need         13:28

7    another break before the jury -- excuse me, before            13:28

8    the government proceeds with its rebuttal summation.          13:28

9    That's a lot of breaks.  Okay.  All right.  I don't           13:28

10   think they'll get to much deliberation but -- and             13:28

11   we're a little bit squishy on time but we'll make it.         13:28

12   Okay.                                                         13:28

13           MR. NOVICK:  Thank you, Your Honor.                   13:28

14           MR. SILVER:  Thank you, Your Honor.                   13:28

15           THE COURT:  You and Donna have got all the            13:28

16   exhibits all tidied up for --                                 13:28

17           MR. NOVICK:  We'll check.  I think that was           13:28

18   what the paralegal was doing while we were in here            13:28

19   but we'll check again.                                        13:28

20           THE COURT:  All right.  So that they can pull         13:28

21   them all up on their screen and otherwise.  Okay.            13:28

22           MR. NOVICK:  Your Honor, you have no                  13:28

23   restrictions, as I recall, from moving around while           13:28

24   we're addressing the jury?                                    13:29

25           THE COURT:  My concern is only that you can           13:29

1   be heard by both the court reporter and the jury who          13:29

2   are in two separate directions.                               13:29

3          MR. NOVICK:  Is there a --                             13:29

4          THE COURT:  A Lavalier mike?                           13:29

5          MR. NOVICK:  Yes.                                      13:29

6          THE COURT:  I don't think so.  We do have a            13:29

7   handheld mike.                                                13:29

8          MR. SILVER:  A little bit of Phil                      13:29

9   Donahue-ish.                                                  13:29

10         MR. NOVICK:  We'll check with IT.  I know at           13:29

11  least the last trial we had in Judge Chatigny's               13:29

12  courtroom, they had one that they hooked me up.               13:29

13         THE COURT:  They did.  That would be great.            13:29

14  Find out if you can use it.                                   13:29

15         Thank you very much.                                   13:29

16         (Proceedings concluded, 1:29 p.m.)

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3  RE: UNITED STATES OF AMERICA v. LAWRENCE HOSKINS

 4              No. 3:12-CR-238 (JBA)

 5

 6         I, Melissa J. Cianciullo, RMR, CRR, CRC,

 7  Official Court Reporter for the United States

 8  District Court for the District of Connecticut, do

 9  hereby certify that the foregoing pages 1 through 94

10  are a true and accurate transcription of my shorthand

11  notes taken in the aforementioned matter to the best

12  of my skill and ability.

13

14

15

16

17         /s/_Melissa J. Cianciullo_____

18       MELISSA J. CIANCIULLO, RMR, CRR
              Official Court Reporter
19        United States District Court
           141 Church Street, Room 147
20        New Haven, Connecticut  06510
               (203) 606-1794
21

22

23

24

25
```

**'**

**'agent** [1] - 26:21

---

**/**

**/s/_Melissa** [1] - 95:17

---

**0**

**06510** [2] - 2:4, 95:20
**06890** [2] - 2:19

---

**1**

**1** [14] - 34:18, 46:24,
47:1, 47:4, 47:12,
60:20, 61:11, 64:17,
65:8, 70:19, 71:4,
72:24, 74:8, 95:9
**10** [3] - 57:17, 59:16,
92:13
**10019-6131** [1] - 2:14
**11** [5] - 11:4, 65:17,
67:1, 67:7, 68:1
**11308** [1] - 2:9
**11:10** [1] - 1:6
**12** [8] - 49:6, 58:15,
58:20, 58:22, 67:1,
71:15, 91:3, 92:13
**13** [3] - 65:17, 67:7,
68:1
**14** [3] - 3:18, 3:20,
12:24
**1400** [1] - 2:8
**141** [2] - 1:7, 95:19
**147** [1] - 95:19
**157** [1] - 2:4
**17** [2] - 5:23, 34:24
**18** [1] - 66:3
**1956** [3] - 68:25,
73:21, 73:24
**1956(a)(2)(A)** [2] -
77:1, 78:10
**1956(i** [1] - 78:18
**1956(i)** [1] - 81:5
**1956(i)(3** [1] - 80:7
**1956(i)(3)** [2] - 76:9,
77:2
**1957** [4] - 66:3, 68:24,
69:18, 69:19
**1965(a)(2)** [2] - 80:17,
90:17
**1:00** [1] - 75:21
**1:01** [1] - 75:21
**1:29** [1] - 94:16

---

**2**

**2** [7] - 8:1, 8:13, 18:14,

---

49:5, 49:21, 58:19,
61:4
**20005** [1] - 2:9
**2019** [1] - 1:5
**203** [5] - 1:25, 2:5,
2:18, 2:19, 95:20
**212** [1] - 2:15
**22** [1] - 49:21
**23** [1] - 49:14
**23rd** [1] - 2:4
**2425** [1] - 2:18
**28** [1] - 59:15
**292-9766** [1] - 2:19

---

**3**

**3** [2] - 8:2, 73:5
**30** [1] - 90:7
**33** [1] - 72:19
**34** [1] - 70:9
**36** [1] - 72:18
**37** [1] - 32:22
**3:12-CR-238** [2] - 1:4,
95:4

---

**4**

**4** [1] - 74:17
**404(b** [6] - 7:21, 8:4,
8:19, 22:16, 90:1,
90:3
**43** [3] - 8:9, 8:10, 8:12
**45** [1] - 92:18

---

**5**

**5** [7] - 1:5, 4:5, 5:25,
11:6, 50:11, 70:17,
92:20

---

**6**

**6** [10] - 4:9, 4:12, 4:18,
4:20, 5:1, 50:13,
59:5, 59:15, 82:2
**606-1794** [2] - 1:25,
95:20

---

**7**

**7** [5] - 4:25, 49:5,
58:19, 61:4, 82:2
**70** [1] - 85:15

---

**8**

**8** [27] - 7:23, 9:5,
34:18, 47:1, 47:3,
47:4, 47:12, 47:18,
48:1, 48:2, 48:5,

---

55:1, 59:23, 60:20,
61:9, 61:13, 61:21,
61:25, 62:14, 63:18,
66:3, 70:11, 70:15,
70:23, 71:2, 71:5,
71:10
**80** [1] - 87:15
**821-3700** [1] - 2:5
**878-8000** [1] - 2:15

---

**9**

**9** [6] - 9:19, 49:6,
58:15, 58:20, 58:22,
71:15
**94** [1] - 95:9

---

**A**

**A)(2** [1] - 77:12
**a)(2)(A** [1] - 81:3
**a.m** [1] - 1:6
**abetted** [2] - 72:16,
73:2
**abetting** [9] - 60:2,
60:5, 60:6, 73:9,
81:17, 81:19, 82:4,
83:24
**ability** [3] - 86:23,
95:12
**absence** [2] - 86:6,
89:2
**absolutely** [3] - 41:25,
42:1, 42:11
**accept** [1] - 10:23
**acceptable** [1] - 23:7
**acceptance** [1] - 18:14
**access** [1] - 86:21
**accomplish** [3] - 62:1,
62:18, 65:11
**accomplished** [1] -
82:14
**accordingly** [1] - 30:7
**account** [6] - 38:14,
39:2, 42:8, 42:10,
42:14
**accurate** [6] - 5:14,
20:21, 48:22, 69:25,
87:5, 95:10
**accurately** [5] - 15:22,
23:3, 24:17, 30:9,
80:25
**achieve** [1] - 16:11
**acknowledge** [1] -
6:20
**acquit** [1] - 47:6
**acquittal** [1] - 70:19
**act** [8] - 29:3, 29:5,
33:24, 34:5, 34:11,
44:16, 45:21, 66:24

---

**acted** [2] - 27:23, 64:7
**action** [2] - 39:3,
43:16
**actions** [2] - 43:1,
44:7
**activities** [1] - 79:17
**activity** [2] - 39:4,
69:14
**acts** [19] - 15:18,
15:23, 17:8, 17:13,
17:14, 17:20, 18:2,
29:9, 32:2, 32:4,
32:7, 32:8, 32:16,
32:20, 32:22, 33:10,
33:19, 38:16, 48:14
**actual** [1] - 51:3
**add** [12] - 6:17, 26:16,
50:13, 60:3, 72:6,
72:15, 74:16, 74:24,
76:3, 82:24, 82:25,
83:12
**Add** [1] - 26:17
**added** [2] - 74:23,
77:22
**adding** [4] - 54:25,
62:5, 71:5, 82:18
**addition** [5] - 34:3,
35:9, 74:15, 84:11,
84:12
**additional** [5] - 6:19,
45:24, 56:23, 81:20,
81:23
**address** [1] - 58:14
**addressing** [1] - 93:24
**adequately** [2] - 71:9,
76:23
**adjustments** [1] -
81:15
**admitted** [1] - 84:9
**adopt** [1] - 78:11
**advance** [1] - 8:22
**affect** [2] - 86:6, 89:2
**aforementioned** [1] -
95:11
**agency** [13] - 11:4,
12:21, 14:24, 15:22,
16:7, 16:22, 17:6,
21:3, 21:14, 25:2,
25:17, 45:21, 91:6
**Agent** [1] - 51:2
**agent** [48] - 3:21,
13:13, 13:18, 14:20,
15:5, 15:18, 15:23,
16:6, 17:2, 17:9,
17:15, 17:21, 18:3,
18:13, 18:14, 18:21,
19:10, 19:12, 19:16,
19:22, 19:24, 20:18,
21:13, 21:25, 22:9,
22:10, 22:23, 23:11,

---

23:16, 23:22, 25:7,
25:9, 25:21, 25:24,
26:1, 26:8, 26:11,
26:13, 26:15, 27:6,
27:7, 27:13, 27:21,
27:24, 50:22, 51:6,
91:4, 91:9
**ago** [2] - 56:12, 88:8
**agree** [9] - 19:23,
24:24, 33:10, 33:16,
41:12, 48:20, 51:1,
87:20, 89:5
**agreed** [4] - 16:6,
17:2, 55:15, 91:1
**agreement** [3] - 17:7,
33:24, 42:13
**agreements** [2] - 27:3,
27:5
**agrees** [4] - 15:19,
17:21, 17:23, 18:13
**aided** [2] - 72:15, 73:2
**aiding** [9] - 60:2, 60:5,
73:8, 81:17, 81:19,
82:4, 83:24
**air** [2] - 80:13, 87:25
**aired** [1] - 88:2
**alleged** [12] - 18:24,
19:12, 20:2, 20:9,
20:10, 20:17, 20:19,
20:24, 22:1, 22:6,
22:14, 61:25
**alleges** [2] - 19:1,
19:25
**alleging** [1] - 19:6
**alluding** [1] - 19:8
**almost** [1] - 87:14
**alone** [3] - 38:23,
39:12, 41:23
**Alstom** [5] - 13:8,
13:24, 14:2, 14:3,
14:14, 26:14, 27:24,
79:3
**alternative** [6] - 21:16,
33:15, 34:12, 61:5,
78:16, 81:24
**alternatively** [1] -
29:14
**altogether** [1] - 42:19
**amended** [4] - 30:14,
30:19, 30:23, 72:1
**AMERICA** [2] - 1:4,
95:3
**amiss** [1] - 91:14
**amount** [1] - 20:11
**anyplace** [1] - 32:1
**API** [5] - 14:21, 15:4,
16:20, 79:3, 90:12
**API's** [1] - 22:5
**apologies** [1] - 60:12
**apologize** [2] - 20:5,

38:20
**appear** [2] - 86:3, 88:10
**applicable** [1] - 76:21
**applied** [1] - 68:3
**applies** [3] - 5:12, 9:11, 73:24
**apply** [9] - 21:15, 25:10, 25:16, 58:15, 58:20, 62:24, 67:6, 67:24, 73:24
**appreciate** [1] - 93:3
**appropriate** [20] - 7:11, 8:16, 9:22, 10:4, 10:6, 10:25, 25:8, 27:14, 35:15, 44:20, 44:22, 49:8, 52:25, 62:7, 71:21, 77:18, 81:20, 85:2, 88:14, 90:4
**area** [2] - 8:23, 81:19
**argue** [9] - 10:1, 16:19, 24:12, 44:1, 57:4, 57:12, 74:1, 86:19, 88:6
**argued** [2] - 4:21, 71:9
**arguing** [2] - 27:17, 88:18
**argument** [10] - 14:25, 15:9, 18:4, 28:12, 35:2, 75:14, 88:2, 88:5, 88:15, 90:13
**arguments** [5] - 70:4, 81:14, 87:21, 87:24, 91:18
**arises** [1] - 9:24
**ARTERTON** [1] - 1:18
**articulate** [1] - 40:12
**articulating** [2] - 20:7, 51:7
**aspect** [2] - 20:18, 68:9
**aspects** [1] - 16:8
**asserted** [1] - 70:10
**associate** [1] - 65:22
**assume** [2] - 30:9, 37:6
**attempt** [6] - 16:19, 29:5, 71:18, 71:19, 71:20
**attempting** [2] - 16:24, 71:17
**attend** [1] - 53:20
**attending** [1] - 24:1
**Attorney's** [1] - 2:3
**AUSA** [2] - 2:3, 69:13
**authority** [2] - 75:14, 81:10
**authorized** [1] - 54:14
**availability** [1] - 86:18

**available** [4] - 85:13, 86:14, 86:16, 87:8
**Avenue** [1] - 2:8
**avoid** [1] - 84:14
**award** [1] - 16:12
**aware** [1] - 69:12

## B

**balanced** [1] - 12:10
**based** [4] - 10:20, 14:12, 83:24, 88:12
**basis** [4] - 34:6, 49:4, 78:11, 81:25
**bear** [1] - 25:24
**bears** [3] - 28:12, 83:9, 83:14
**became** [2] - 23:22, 67:22
**become** [1] - 65:9
**becomes** [1] - 68:5
**becoming** [1] - 67:5
**beforehand** [1] - 87:25
**begin** [3] - 40:5, 42:19, 92:6
**beginning** [7] - 8:1, 12:25, 39:18, 52:2, 53:4, 71:13, 89:25
**begins** [6] - 11:6, 11:11, 13:13, 51:16, 67:3, 73:6
**behalf** [5] - 15:19, 15:24, 17:9, 17:15, 17:21
**belabor** [1] - 44:4
**belaboring** [1] - 83:23
**believes** [1] - 49:7
**below** [1] - 81:18
**benefit** [1] - 9:16
**BENJAMIN** [2] - 2:13
**benjamin.peacock@ cliffordchance.com** [1] - 2:16
**Berger** [12] - 35:7, 35:14, 36:17, 36:19, 37:14, 38:4, 38:21, 38:24, 40:23, 40:24, 41:1
**best** [1] - 95:11
**better** [3] - 7:16, 18:2, 20:8
**between** [11] - 14:2, 15:3, 35:20, 37:2, 38:18, 39:7, 41:6, 67:12, 92:22, 93:1, 93:4
**beyond** [6] - 6:4, 6:24, 20:10, 28:6, 44:17, 46:3, 83:10, 85:13

**bidding** [1] - 16:21
**bit** [8] - 5:10, 8:6, 54:17, 64:9, 65:2, 67:8, 93:11, 94:8
**bleed** [1] - 22:16
**bombing** [1] - 56:11
**BOND** [1] - 1:18
**bottom** [5] - 4:12, 4:20, 5:25, 45:15, 70:17
**break** [8] - 92:12, 92:14, 92:20, 92:22, 92:25, 93:4, 93:6, 93:7
**breaks** [1] - 93:9
**BRIAN** [1] - 2:17
**bribe** [2] - 56:24, 57:10
**bribery** [4] - 24:2, 24:10, 24:15, 24:16
**bribes** [1] - 57:5
**briefed** [4] - 36:11, 44:9, 73:19, 83:25
**briefing** [8] - 57:20, 64:24, 65:25, 68:23, 69:17, 70:4, 75:8, 77:8
**broader** [1] - 54:17
**broke** [1] - 19:25
**brought** [2] - 24:20, 38:3
**bspears@ spearsmanning. com** [1] - 2:20
**build** [1] - 14:21
**bullet** [1] - 72:15
**burden** [20] - 4:8, 4:14, 4:16, 5:14, 5:21, 6:3, 6:7, 6:21, 6:22, 6:24, 7:1, 7:2, 7:12, 35:11, 45:18, 46:2, 83:10, 83:11, 83:14, 83:18
**burdens** [1] - 5:19
**business** [20] - 13:13, 18:22, 19:16, 19:22, 35:2, 36:1, 36:8, 36:14, 36:22, 37:20, 37:22, 38:9, 39:12, 40:2, 40:17, 41:8, 42:15, 42:22, 65:21, 87:1
**businesses** [2] - 37:2, 38:19

## C

**cabins** [2] - 27:15
**cannot** [1] - 41:10
**capture** [1] - 36:5

**captured** [3] - 22:21, 23:4, 54:9
**captures** [4] - 23:14, 24:18, 78:15, 80:25
**carrying** [1] - 64:8
**case** [43] - 5:19, 6:6, 18:23, 18:24, 19:5, 19:12, 19:18, 19:19, 20:15, 20:25, 21:2, 21:3, 21:7, 21:15, 22:11, 22:14, 24:22, 25:18, 26:10, 35:5, 36:6, 36:24, 37:2, 37:25, 38:7, 38:10, 38:11, 42:15, 73:16, 76:20, 76:21, 76:22, 77:6, 77:11, 77:12, 77:20, 78:9, 79:12, 83:25, 85:13, 90:10, 91:23, 92:2
**cases** [8] - 40:20, 57:23, 57:25, 65:25, 66:4, 69:25, 75:11, 81:1
**casts** [1] - 57:12
**catch** [1] - 51:20
**caterers** [1] - 92:17
**causation** [5] - 52:19, 52:24, 53:3, 53:13, 53:15
**caused** [2] - 72:16, 73:2
**causes** [1] - 53:21
**certain** [1] - 45:3
**certainly** [15] - 14:6, 23:7, 24:11, 25:16, 34:13, 36:13, 36:25, 39:10, 43:4, 66:2, 75:11, 77:17, 88:5, 88:11, 92:21
**certify** [1] - 95:9
**cessation** [1] - 39:4
**cetera** [6] - 3:7, 6:9, 27:24, 50:12, 75:12, 76:16
**challenged** [1] - 34:18
**Chance** [1] - 2:14
**change** [15] - 11:19, 20:14, 24:20, 24:21, 31:12, 31:13, 31:17, 31:21, 36:3, 61:3, 67:2, 68:18, 70:20, 75:15
**changed** [2] - 59:12, 77:5
**changes** [1] - 3:6
**changing** [2] - 48:2, 91:7
**characteristics** [1] - 15:7

**CHARGE** [1] - 1:12
**charge** [29] - 4:13, 7:22, 8:5, 8:7, 9:2, 10:5, 10:7, 11:21, 12:19, 28:13, 31:23, 41:9, 46:24, 48:19, 50:7, 63:16, 63:19, 68:3, 68:4, 68:21, 71:15, 76:1, 76:2, 78:12, 90:1, 90:3, 90:23, 92:10
**charged** [15] - 9:4, 9:9, 32:8, 32:16, 47:1, 47:4, 47:11, 52:14, 53:11, 60:20, 61:21, 65:11, 77:6, 77:13, 90:12
**charges** [7] - 6:1, 7:24, 9:21, 19:24, 70:10, 71:25, 72:1
**Charts** [1] - 84:7
**charts** [4] - 21:4, 30:5, 30:8, 84:9
**Chatigny's** [1] - 94:11
**check** [3] - 93:17, 93:19, 94:10
**CHRISTOPHER** [1] - 2:12
**christopher.morvillo @cliffordchance. com** [1] - 2:15
**Church** [3] - 1:7, 2:4, 95:19
**CIANCIULLO** [1] - 95:18
**Cianciullo** [3] - 1:24, 95:6, 95:17
**Circuit** [6] - 77:19, 77:20, 80:14, 80:19, 80:23, 80:25
**circulated** [1] - 3:9
**circumstance** [1] - 6:12
**circumstances** [1] - 57:8
**cited** [2] - 69:24, 76:20
**citing** [1] - 80:20
**claim** [1] - 24:8
**clarifies** [1] - 21:20
**clarify** [6] - 16:25, 17:4, 22:12, 23:5, 38:21, 69:9
**clarifying** [1] - 21:13
**clarity** [3] - 46:25, 63:6, 64:2
**clause** [1] - 6:17
**clean** [3] - 29:16, 29:21, 91:12
**cleanest** [1] - 89:13
**clear** [24] - 4:1, 6:11,

6:15, 9:13, 11:17, 12:10, 18:25, 37:7, 37:10, 39:11, 41:13, 45:13, 48:16, 49:2, 53:14, 62:2, 63:17, 63:22, 66:15, 67:15, 70:22, 78:7, 80:11, 86:17
**clearer** [7] - 5:7, 12:17, 20:23, 47:3, 65:3, 67:8, 72:9
**clearly** [2] - 65:16, 75:11
**Clifford** [1] - 2:14
**close** [3] - 12:8, 48:5, 89:7
**closed** [1] - 38:13
**closely** [1] - 77:5
**closer** [2] - 81:12, 91:22
**closes** [1] - 42:8
**closing** [7] - 27:16, 39:2, 42:14, 87:24, 91:17, 91:20
**coconspirator** [1] - 48:13
**coconspirators** [1] - 69:13
**coin** [1] - 90:11
**collapsing** [3] - 15:21, 17:6, 17:24
**combining** [1] - 63:5
**comma** [3] - 62:17, 72:15, 73:1
**comment** [6] - 49:13, 51:4, 54:19, 56:6, 60:25, 61:14
**comments** [2] - 58:13, 91:12
**commerce** [2] - 49:19, 51:17
**Commission** [1] - 29:2
**commission** [3] - 61:24, 69:3, 69:4
**commit** [3] - 63:24, 68:16, 69:18
**committed** [7] - 33:25, 34:2, 34:4, 34:11, 45:21, 59:7, 59:8
**committing** [1] - 69:23
**common** [1] - 14:24
**commonly** [1] - 9:25
**companies** [1] - 55:12
**company** [3] - 35:13, 38:13, 42:17
**compare** [1] - 90:6
**compel** [1] - 86:23
**completely** [1] - 14:22
**composed** [1] - 79:16

**comprehension** [1] - 7:17
**computer** [1] - 93:2
**computers** [1] - 92:24
**concept** [1] - 52:16
**concepts** [1] - 81:5
**concern** [16] - 12:25, 13:9, 19:10, 22:10, 23:12, 23:19, 36:12, 36:21, 50:23, 50:24, 51:3, 51:6, 80:13, 90:25, 91:10, 93:25
**concerned** [1] - 87:21
**concerns** [2] - 21:4, 91:5
**conclude** [1] - 14:19
**concluded** [1] - 94:16
**concludes** [1] - 23:20
**conclusion** [2] - 86:4, 88:25
**conclusory** [2] - 78:2, 79:13
**conduct** [19] - 10:19, 10:20, 18:5, 18:6, 18:24, 19:1, 19:12, 19:13, 20:2, 20:3, 20:9, 20:10, 20:12, 20:16, 20:19, 20:24, 22:1, 22:13, 22:16
**conducted** [2] - 76:5, 76:7
**conducts** [1] - 78:24
**CONFERENCE** [1] - 1:12
**conflate** [1] - 47:15
**conflation** [1] - 39:6
**confusing** [14] - 5:10, 5:20, 13:25, 40:18, 48:3, 48:21, 52:21, 53:25, 62:10, 64:23, 65:2, 68:5, 68:12, 68:19
**confusion** [2] - 39:9, 43:11
**congress** [1] - 9:22
**Congress** [1] - 10:17
**CONNECTICUT** [1] - 1:1
**Connecticut** [7] - 1:8, 33:25, 34:1, 76:8, 79:9, 95:8, 95:20
**connection** [15] - 19:11, 19:13, 20:23, 21:18, 22:2, 22:10, 22:19, 23:12, 23:21, 23:23, 23:25, 52:19, 76:1, 77:1, 78:12
**consecutively** [1] - 54:2
**consequences** [2] -

15:7, 79:18
**consider** [26] - 7:15, 9:15, 9:16, 10:22, 11:16, 11:24, 12:4, 12:19, 16:10, 25:6, 25:9, 25:17, 26:20, 27:12, 27:13, 38:2, 43:5, 47:16, 66:18, 75:14, 76:15, 79:2, 79:25, 88:15, 88:22, 91:12
**consideration** [2] - 33:2, 70:4
**considered** [2] - 10:6, 11:18
**considering** [1] - 25:23
**consistent** [4] - 37:8, 37:11, 38:6, 57:7
**consisting** [1] - 34:14
**consists** [7] - 15:18, 16:5, 17:20, 18:2, 18:9, 29:17
**conspiracies** [6] - 10:15, 47:1, 47:4, 47:11, 47:17, 60:19
**conspiracy** [71] - 9:21, 9:23, 9:24, 10:2, 10:7, 10:10, 10:14, 10:24, 11:5, 12:15, 20:14, 34:7, 34:15, 35:14, 37:6, 38:4, 39:14, 40:5, 40:7, 40:14, 41:18, 41:19, 41:24, 42:9, 42:17, 43:2, 43:12, 43:17, 45:22, 46:11, 46:12, 46:14, 46:15, 46:24, 47:20, 47:21, 60:9, 61:11, 61:15, 61:16, 61:21, 61:25, 62:2, 62:6, 62:9, 63:2, 63:3, 63:9, 63:15, 63:18, 63:24, 64:18, 64:21, 64:25, 65:9, 65:12, 65:19, 66:5, 66:17, 67:6, 67:17, 67:23, 68:2, 68:14, 68:15, 69:5, 69:6, 69:18, 69:20, 70:1, 70:25
**conspiratorial** [5] - 10:19, 39:4, 44:7, 44:16, 49:3
**constitute** [10] - 35:7, 36:15, 36:18, 37:21, 38:16, 38:23, 39:12, 40:3, 42:22, 43:14
**constitutes** [1] - 39:3
**consultancy** [3] -

27:3, 27:4, 42:13
**consultant** [2] - 25:21, 27:10
**consultants** [1] - 26:9
**contemplated** [2] - 79:5, 81:7
**contested** [1] - 24:6
**context** [17] - 10:7, 20:15, 21:12, 22:9, 23:2, 23:3, 23:5, 25:18, 48:19, 50:1, 52:23, 65:18, 66:4, 69:10, 69:11, 70:15, 70:23
**continuing** [10] - 76:6, 76:8, 77:24, 78:2, 78:7, 78:19, 80:6, 80:8, 81:4, 90:16
**contract** [2] - 16:12, 21:19
**contrary** [1] - 27:17
**control** [5] - 13:17, 14:23, 16:20, 16:21, 17:1
**controlled** [1] - 55:12
**cooperating** [1] - 84:23
**Cooperating** [1] - 89:21
**cooperation** [1] - 85:11
**copies** [2] - 30:11, 31:2
**copy** [2] - 32:10, 57:1
**copying** [2] - 31:3, 50:16
**corporation** [2] - 39:7, 55:23
**correct** [6] - 16:4, 36:13, 46:8, 50:3, 85:3, 90:4
**corrections** [1] - 3:6
**counsel** [16] - 3:1, 14:10, 17:5, 23:4, 26:12, 26:25, 29:3, 29:7, 29:13, 34:13, 35:10, 42:16, 57:1, 57:3, 71:4, 77:23
**counsel's** [2] - 22:21, 87:21
**Count** [26] - 46:24, 47:3, 47:12, 47:18, 48:1, 48:2, 48:5, 59:23, 61:9, 61:11, 61:13, 61:21, 61:25, 62:14, 63:18, 64:17, 65:8, 70:11, 70:15, 70:19, 70:23, 71:2, 71:4, 71:5, 71:10
**count** [5] - 9:6, 28:1,

61:3, 61:5, 61:10
**Counts** [9] - 34:18, 47:1, 47:4, 49:5, 49:6, 58:20, 60:20, 82:2
**counts** [10] - 9:11, 9:12, 9:14, 48:9, 58:15, 58:16, 58:19, 61:4, 71:14, 71:15
**couple** [3] - 15:13, 18:18, 77:10
**course** [3] - 19:21, 42:6, 88:13
**court** [2] - 77:6, 94:1
**COURT** [203] - 1:1, 3:1, 3:13, 4:4, 4:18, 5:3, 5:15, 5:21, 6:13, 7:10, 9:1, 9:8, 9:15, 10:13, 10:22, 11:19, 12:1, 12:18, 13:11, 14:8, 14:25, 15:12, 16:9, 16:15, 17:11, 18:1, 18:9, 18:12, 21:10, 22:8, 22:15, 22:19, 23:11, 23:24, 24:4, 24:8, 24:19, 24:25, 25:12, 25:19, 26:4, 26:16, 26:18, 26:22, 27:3, 27:8, 27:11, 28:14, 28:17, 28:22, 28:25, 29:19, 29:24, 30:3, 30:13, 30:21, 31:1, 31:6, 31:10, 31:19, 31:25, 32:5, 32:15, 32:23, 33:1, 33:8, 33:18, 34:19, 34:23, 35:19, 35:24, 36:2, 37:12, 37:19, 37:24, 39:21, 41:17, 42:4, 42:7, 43:12, 43:19, 43:23, 43:25, 44:13, 44:15, 45:10, 45:13, 46:10, 46:17, 47:6, 47:11, 47:24, 48:4, 48:22, 48:24, 49:10, 49:16, 50:3, 50:9, 50:19, 51:5, 51:9, 51:20, 51:23, 52:10, 53:2, 53:6, 53:17, 53:22, 54:10, 54:16, 55:16, 55:19, 55:22, 56:1, 56:7, 56:9, 56:16, 56:20, 57:14, 57:19, 57:24, 58:4, 58:10, 58:21, 59:2, 59:13, 59:15, 59:20, 60:7, 60:13, 61:7, 61:13, 62:11, 62:16, 62:21, 62:23, 63:11, 64:1,

4

64:5, 67:11, 67:22, 70:3, 70:7, 70:9, 70:18, 71:11, 72:3, 72:6, 72:18, 72:20, 73:11, 74:7, 74:15, 75:7, 75:20, 75:22, 75:24, 78:20, 79:14, 79:21, 81:13, 82:3, 82:7, 82:15, 82:20, 82:23, 83:4, 83:16, 83:21, 84:4, 84:11, 84:13, 84:19, 85:8, 86:1, 86:15, 86:25, 87:8, 87:16, 87:23, 88:18, 88:24, 89:15, 89:19, 90:2, 90:6, 90:20, 91:2, 91:11, 91:25, 92:2, 92:7, 92:9, 92:15, 92:17, 93:4, 93:15, 93:20, 93:25, 94:4, 94:6, 94:13

**Court** [33] - 1:24, 14:11, 15:16, 18:24, 20:8, 25:4, 25:10, 32:11, 32:13, 33:16, 37:7, 38:15, 41:2, 58:8, 64:13, 64:19, 65:17, 68:10, 76:3, 77:3, 77:16, 77:25, 78:3, 78:6, 78:13, 78:15, 78:24, 80:12, 81:10, 95:7, 95:8, 95:18, 95:19

**Court's** [3] - 8:7, 37:17, 37:18

**courtroom** [1] - 94:12

**cover** [3] - 30:25, 31:1, 52:5

**covered** [7] - 62:5, 62:22, 62:24, 63:4, 67:9, 71:7, 71:10

**covers** [5] - 20:11, 37:21, 65:6, 65:22, 89:19

**CRC** [2] - 1:24, 95:6

**create** [1] - 16:22

**crime** [17] - 7:9, 9:23, 10:11, 10:12, 46:4, 46:13, 46:15, 50:5, 59:7, 65:1, 66:2, 66:6, 68:18, 69:1, 69:7, 70:6

**crimes** [12] - 8:25, 9:4, 9:8, 10:8, 63:25, 64:20, 65:5, 65:7, 68:16, 68:17, 68:20, 68:22

**criminal** [22] - 35:6, 35:11, 35:21, 36:7,

36:19, 37:2, 38:19, 38:22, 39:8, 40:9, 40:13, 40:17, 40:25, 41:5, 41:7, 41:15, 41:16, 41:19, 43:1, 43:2, 43:13, 69:14

**Criminal** [1] - 2:8

**CRR** [3] - 1:24, 95:6, 95:18

**crux** [1] - 16:7

**CT** [2] - 2:4, 2:19

**cut** [1] - 50:23

**Cutco** [2] - 13:15, 14:17

## D

**D.C** [1] - 2:9

**dangers** [1] - 10:2

**DANIEL** [2] - 2:6, 2:13

**daniel.kahn@usdoj. gov** [1] - 2:10

**daniel.silver@ cliffordchance.com** [1] - 2:16

**DAVID** [1] - 2:3

**david.novick@usdoj .gov** [1] - 2:5

**DAVIS** [1] - 30:17

**deal** [1] - 77:1

**dealing** [2] - 8:18, 85:22

**decide** [1] - 15:3

**deciding** [2] - 76:14, 78:25

**decision** [1] - 55:6

**deemed** [2] - 9:22, 11:8

**default** [1] - 73:23

**defeat** [7] - 35:14, 39:14, 40:13, 41:23, 43:1, 43:16, 44:25

**defeated** [7] - 35:12, 37:6, 38:1, 38:3, 40:4, 40:7, 41:18

**defeating** [1] - 42:9

**defendant** [45] - 4:21, 6:1, 6:4, 6:8, 6:9, 10:13, 11:7, 11:12, 11:15, 12:6, 19:10, 21:25, 22:6, 23:22, 27:16, 38:12, 39:13, 40:12, 41:22, 44:6, 45:17, 46:1, 52:13, 53:10, 53:14, 54:8, 54:13, 59:5, 60:19, 61:5, 62:1, 62:18, 63:9, 63:23, 64:7, 66:3, 66:24, 67:21, 74:4, 74:19, 83:13,

83:18, 86:22, 90:25, 91:9

**Defendant** [2] - 1:9, 2:11

**defendant's** [9] - 18:5, 37:5, 39:23, 40:6, 62:11, 63:7, 69:8, 69:9, 69:11

**defense** [21] - 7:1, 7:14, 9:1, 18:3, 21:5, 22:20, 23:4, 28:14, 45:17, 46:1, 46:23, 48:16, 56:24, 57:9, 57:12, 70:10, 77:23, 83:19, 92:23, 93:1, 93:5

**define** [2] - 81:2, 81:18

**defined** [8] - 15:23, 17:8, 60:3, 64:15, 66:25, 73:9, 73:10, 80:22

**defines** [1] - 15:16

**defining** [2] - 18:15, 77:25

**definition** [13] - 3:21, 14:23, 25:10, 25:16, 26:1, 26:14, 26:18, 27:12, 55:5, 55:14, 62:5, 66:11, 80:5

**definitions** [4] - 26:20, 26:23, 27:7, 64:14

**delete** [1] - 28:15

**deliberation** [3] - 83:7, 92:4, 93:10

**deliberations** [2] - 33:5, 92:6

**deliver** [1] - 92:17

**Department** [1] - 2:7

**deposit** [1] - 38:14

**describe** [2] - 6:18, 27:5, 50:20

**describes** [1] - 49:24

**describing** [2] - 61:20, 63:3

**description** [4] - 7:24, 50:1, 62:6, 64:17

**determine** [5] - 42:21, 61:23, 76:4, 76:6, 79:15

**determined** [1] - 10:18

**determining** [2] - 26:13, 43:6

**differ** [1] - 88:24

**difference** [4] - 35:19, 54:6, 67:12, 67:14

**different** [17] - 5:19, 15:21, 23:18, 47:20, 54:1, 54:3, 54:4, 54:15, 54:17, 59:9,

65:5, 68:11, 72:21, 78:10, 81:5

**Dinero** [3] - 77:20, 80:19, 90:9

**direction** [2] - 57:15, 72:3

**directions** [1] - 94:2

**directly** [5] - 52:13, 53:11, 54:8, 54:16, 76:8, 77:11, 81:7, 85:22

**directs** [1] - 23:15

**disagree** [8] - 4:17, 15:20, 17:23, 19:3, 28:9, 36:10, 36:25, 54:6

**disagreement** [1] - 69:16

**disavow** [1] - 35:14, 39:13, 40:13, 41:23, 43:1, 43:16, 44:26

**disavowal** [6] - 37:8, 37:11, 38:3, 38:16, 41:11, 42:22

**disavowed** [7] - 37:5, 40:4, 40:6, 41:14, 41:15, 41:17, 43:7

**disavows** [2] - 35:12, 38:1

**discuss** [5] - 7:7, 63:14, 65:12, 68:19, 84:2

**discussed** [9] - 4:13, 4:23, 24:2, 24:10, 52:17, 52:22, 61:8, 67:16

**discusses** [1] - 64:19

**discussing** [4] - 8:16, 9:13, 9:23, 65:4

**discussion** [9] - 3:3, 4:10, 8:24, 9:6, 24:14, 24:16, 29:7, 65:8, 71:13

**discussions** [1] - 29:3

**dispute** [1] - 3:14

**disputing** [1] - 5:15

**distinct** [1] - 10:10

**distinction** [5] - 37:1, 37:15, 37:25, 38:17, 41:6

**District** [5] - 33:25, 57:23, 95:8, 95:19

**district** [1] - 34:11

**DISTRICT** [2] - 1:1, 1:1

**Division** [1] - 2:8

**document** [1] - 31:17

**documents** [5] - 26:11, 26:12, 26:25, 27:5, 84:10

**domestic** [12] - 12:25,

13:9, 19:10, 22:10, 23:12, 50:23, 50:24, 51:2, 51:6, 90:25, 91:4, 91:10

**domestically** [1] - 77:15

**Donahue** [1] - 94:9

**Donahue-ish** [1] - 94:9

**done** [8] - 6:25, 22:2, 22:6, 46:19, 68:21, 89:9, 90:13

**Donna** [1] - 93:15

**door** [1] - 88:18

**doubt** [6] - 5:8, 6:4, 6:25, 28:7, 46:3, 83:11

**down** [2] - 18:21, 59:15

**draft** [3] - 3:3, 91:3, 91:13

**drafted** [1] - 63:16

**draw** [4] - 86:4, 86:11, 88:9, 88:25

**drawing** [1] - 80:13

**drawn** [1] - 88:6

**drop** [1] - 31:8

**during** [3] - 8:5, 13:23, 88:13

## E

**E-mail** [3] - 2:5, 2:15, 2:20

**e-mail** [3] - 31:9, 31:10, 91:14

**e-mails** [1] - 29:17

**easy** [1] - 3:8

**Eddie** [1] - 57:9

**edit** [1] - 29:21

**editing** [2] - 3:15, 89:10

**effect** [3] - 42:8, 44:17, 46:4

**effectuated** [1] - 45:5

**effort** [1] - 14:15

**efforts** [5] - 15:4, 21:18, 22:2, 22:5, 23:6

**either** [13] - 4:3, 11:17, 12:10, 12:12, 29:11, 33:23, 44:10, 45:23, 45:22, 75:15, 83:3, 86:12, 89:8

**element** [30] - 7:8, 12:21, 14:23, 27:25, 28:8, 45:20, 46:3, 46:10, 46:13, 49:25, 51:3, 52:19, 56:21, 63:15, 63:17, 64:4,

5

64:12, 66:21, 67:20,
72:25, 73:1, 73:6,
73:22, 74:2, 75:9,
78:10, 91:6, 91:8
**Element** [25] - 12:23,
13:4, 28:23, 32:4,
33:22, 49:18, 49:21,
50:21, 51:2, 51:12,
51:13, 51:15, 54:21,
54:25, 59:5, 61:16,
63:22, 63:23, 73:5,
73:13, 74:13, 74:17,
74:18, 75:5, 91:4
**elements** [37] - 6:24,
15:21, 17:6, 17:25,
28:2, 28:4, 28:6,
28:21, 45:19, 45:24,
47:20, 49:14, 49:20,
49:22, 49:23, 50:2,
50:4, 50:7, 50:20,
51:8, 59:23, 60:4,
60:9, 60:11, 61:3,
62:7, 63:5, 65:7,
65:13, 68:20, 68:22,
72:12, 72:25, 74:8,
74:13, 75:10, 81:3
**Elements** [2] - 72:14,
72:23
**elevate** [1] - 70:1
**elsewhere** [4] - 54:11,
62:5, 62:25, 65:7
**Email** [1] - 2:10
**Emir** [1] - 57:10
**emphasis** [1] - 28:13
**emphasizing** [2] -
14:10, 28:8
**employment** [5] -
35:20, 35:25, 36:15,
37:20, 43:14
**end** [17] - 7:25, 8:8,
8:14, 9:4, 13:7, 25:4,
53:18, 54:25, 55:6,
57:21, 60:1, 61:19,
61:22, 62:19, 73:1,
73:4, 74:2
**ends** [1] - 62:14
**engaged** [3] - 14:15,
20:25, 22:14
**enterprise** [19] - 35:6,
35:12, 35:21, 36:7,
36:20, 38:10, 38:22,
39:8, 40:10, 40:14,
40:17, 40:25, 41:5,
41:8, 41:16, 41:19,
43:1, 43:13
**enterprises** [3] - 37:2,
37:22, 38:19
**entire** [2] - 34:1, 66:16
**entirely** [1] - 6:11
**entirety** [1] - 68:6

**entitle** [1] - 56:23
**equal** [10] - 85:4, 85:9,
85:21, 86:1, 86:18,
87:1, 87:3, 87:7,
89:11, 89:16
**equally** [4] - 67:6,
67:24, 86:13, 86:16
**equivalent** [1] - 42:17
**err** [1] - 91:19
**ESQ** [6] - 2:6, 2:7,
2:12, 2:13, 2:13,
2:17
**essence** [2] - 28:14,
86:7
**essential** [2] - 11:24,
12:4
**essentially** [8] - 4:22,
8:24, 41:3, 47:19,
74:22, 80:5, 86:10,
86:12
**establish** [1] - 53:5
**established** [1] - 7:13
**establishes** [1] -
13:17
**et** [6] - 3:6, 6:9, 27:24,
50:12, 75:12, 76:16
**evaluate** [1] - 58:17
**event** [1] - 57:16
**events** [12] - 18:23,
19:18, 20:15, 21:3,
21:6, 21:20, 22:11,
23:13, 24:21, 24:22,
44:7, 44:17
**evidence** [31] - 4:24,
5:11, 8:13, 8:14,
8:17, 13:22, 14:1,
14:4, 14:11, 14:13,
16:15, 18:6, 24:4,
24:8, 24:12, 24:13,
24:15, 24:18, 25:22,
26:8, 26:12, 27:1,
30:8, 35:10, 42:12,
44:19, 57:3, 57:4,
83:15, 86:20
**evidentiary** [1] - 8:23
**evil** [1] - 10:10
**exact** [4] - 8:16, 44:23,
90:11, 90:15
**exactly** [12] - 8:18,
12:15, 19:17, 25:12,
25:22, 29:23, 38:5,
48:11, 66:25, 79:10,
79:20
**examined** [1] - 75:7
**example** [5] - 24:3,
38:12, 44:9, 45:9,
45:11
**examples** [3] - 32:16,
44:18, 45:4
**except** [1] - 6:17

**exception** [1] - 6:6
**excuse** [5] - 28:19,
62:8, 69:10, 75:20,
93:7
**executed** [2] - 79:6,
81:7
**exhibit** [1] - 27:9
**exhibits** [1] - 93:16
**exist** [2] - 16:10, 70:2
**existence** [5] - 11:17,
61:2, 62:6, 63:3,
63:8
**expanded** [2] - 8:6,
9:1
**expands** [1] - 18:4
**expectations** [1] -
91:23
**explain** [6] - 6:19,
10:1, 10:17, 60:4,
79:17
**explained** [1] - 68:22
**explaining** [1] - 78:3
**explanation** [1] -
67:23
**explanations** [3] -
66:9, 67:4
**explicitly** [1] - 12:10
**expresses** [1] - 86:10
**extent** [2] - 21:10,
23:4
**extra** [1] - 58:18

**F**

**fabrication** [1] - 41:4
**face** [2] - 30:22, 30:24
**fact** [17] - 8:19, 10:10,
11:23, 12:5, 13:25,
14:17, 17:1, 36:23,
41:1, 45:17, 46:1,
56:10, 57:9, 68:16,
85:6, 88:12, 88:16
**factor** [4] - 11:16,
12:3, 12:4, 12:12
**facts** [7] - 15:1, 16:9,
19:4, 19:18, 21:2,
24:6, 43:25
**factual** [3] - 21:11,
42:20, 85:3
**factually** [2] - 21:17,
85:23
**fair** [1] - 88:10
**familiarity** [1] - 10:24
**far** [1] - 20:10
**fares** [1] - 49:11
**fast** [1] - 41:6
**FCPA** [7] - 9:11, 18:5,
19:2, 19:24, 49:15,
49:22, 57:22
**federal** [1] - 75:12

**few** [1] - 74:12
**field** [1] - 89:19
**filed** [1] - 3:25
**final** [6] - 12:19, 25:2,
75:5, 76:12, 76:13,
91:13
**finally** [2] - 33:23,
34:16
**financial** [8] - 11:13,
11:18, 12:2, 12:11,
12:14, 76:5, 76:23,
76:24
**findings** [1] - 21:11
**fine** [20] - 4:4, 21:21,
26:2, 30:2, 30:10,
36:3, 37:17, 39:22,
45:12, 46:5, 46:6,
46:15, 50:17, 52:6,
72:10, 76:11, 84:17,
86:8, 89:10
**finish** [2] - 39:24, 42:2
**first** [31] - 3:14, 3:17,
4:6, 4:14, 7:13, 7:20,
11:21, 12:21, 12:24,
35:5, 36:13, 37:12,
39:17, 40:1, 44:15,
47:9, 49:23, 51:3,
54:3, 54:7, 61:15,
61:16, 72:15, 72:25,
73:1, 73:5, 73:6,
75:4, 76:3, 85:24,
91:5
**five** [4] - 49:23, 50:8,
59:24, 60:9
**Five** [2] - 54:22, 54:25
**fix** [1] - 70:5
**flag** [1] - 84:2
**flip** [1] - 90:10
**floats** [1] - 25:21
**Floor** [1] - 2:4
**flowed** [1] - 72:3
**focused** [1] - 22:17
**focuses** [1] - 23:14
**folks** [1] - 86:23
**following** [5] - 36:23,
44:8, 50:7, 51:18,
53:13
**foregoing** [1] - 95:9
**foreign** [4] - 55:3,
55:10, 55:18, 57:5
**foreseeability** [2] -
52:17, 52:20
**foreseeable** [1] -
53:25
**foreseeing** [1] - 59:11
**foreseen** [3] - 53:20,
59:6, 59:9
**form** [3] - 3:9, 3:10,
14:10
**formal** [1] - 15:6

**formed** [2] - 33:24,
34:4
**forms** [1] - 34:6
**formulated** [1] - 5:5
**formulation** [3] -
37:17, 78:11, 81:11
**forth** [5] - 13:21,
25:21, 49:5, 69:16,
78:16
**forward** [1] - 35:10
**Four** [3] - 28:23, 32:4,
33:23
**four** [1] - 50:14
**framed** [1] - 16:2
**frankly** [2] - 63:16,
65:6
**Fraud** [1] - 2:8
**fraudulent** [1] - 38:10
**fraught** [1] - 79:22
**friends** [1] - 86:22
**full** [4] - 32:17, 64:16,
68:3, 88:16
**funds** [8] - 69:12,
71:24, 72:1, 73:14,
79:2, 79:7, 80:3,
80:9
**furtherance** [1] -
45:22
**furthering** [1] - 65:21
**furthermore** [1] - 37:3
**fuzzier** [1] - 80:7

**G**

**game** [1] - 88:10
**general** [5] - 6:5,
16:21, 21:4, 22:22,
23:3
**gilded** [1] - 85:19
**given** [10] - 9:25, 25:5,
26:1, 26:15, 27:12,
29:15, 85:5, 85:21,
85:24, 89:13
**glad** [1] - 24:20
**goal** [1] - 61:24
**Government** [1] - 2:2
**government** [52] - 6:3,
6:23, 7:12, 8:15,
8:20, 13:14, 19:1,
19:5, 19:9, 19:25,
20:19, 21:21, 23:7,
28:2, 28:16, 28:17,
34:2, 34:10, 35:1,
38:18, 44:21, 45:18,
46:2, 49:7, 54:5,
55:3, 55:11, 55:18,
61:23, 62:21, 64:6,
73:6, 74:3, 74:18,
76:14, 76:19, 76:23,
77:10, 79:1, 83:8,

83:9, 85:7, 85:10, 85:14, 86:21, 87:14, 88:7, 88:20, 90:24, 91:8, 91:21, 93:8
**government's** [8] - 4:8, 4:15, 5:9, 13:6, 16:18, 35:4, 92:22, 93:5
**grave** [1] - 10:18
**great** [1] - 94:13
**greater** [1] - 10:18
**guess** [8] - 18:20, 44:3, 48:10, 61:15, 71:1, 73:16, 79:23, 92:9
**guidelines** [1] - 83:7
**guilt** [4] - 6:3, 49:4, 56:22, 58:18
**Guilt** [2] - 58:11, 59:16
**guilty** [4] - 19:23, 60:21, 61:5, 83:10
**guy** [1] - 42:7

## H

**half** [1] - 91:22
**hand** [2] - 50:15, 56:25
**handed** [1] - 89:25
**handheld** [1] - 94:7
**happy** [6] - 3:15, 29:10, 32:13, 40:19, 40:20, 78:16
**hard** [2] - 12:1, 41:6
**hard-and-fast** [1] - 41:6
**harm** [1] - 53:22
**Harris** [12] - 76:20, 76:21, 77:6, 77:10, 78:6, 78:14, 78:15, 80:15, 80:20, 81:8, 81:9, 90:9
**hate** [1] - 87:24
**Haven** [3] - 1:8, 2:4, 95:20
**heading** [1] - 88:1
**hear** [8] - 5:8, 5:10, 27:16, 32:18, 56:4, 56:14, 56:16, 56:18
**heard** [4] - 25:17, 26:8, 67:11, 94:1
**hears** [1] - 4:14
**heightened** [1] - 69:22
**held** [3] - 77:16, 80:14
**helpful** [2] - 44:18, 44:24
**helps** [1] - 63:6
**hereby** [1] - 95:9
**higher** [1] - 69:18
**hold** [2] - 61:9, 86:11

**holding** [1] - 77:21
**holdings** [1] - 40:23
**Honor** [164] - 3:11, 3:12, 3:17, 3:23, 5:6, 5:13, 5:24, 6:23, 7:21, 8:5, 9:3, 9:11, 9:19, 10:5, 10:16, 11:20, 12:24, 13:20, 14:9, 14:19, 15:11, 15:14, 15:21, 16:1, 17:5, 18:8, 18:11, 18:19, 19:4, 19:8, 20:4, 20:5, 21:22, 21:24, 22:20, 23:1, 23:17, 24:18, 25:3, 26:2, 26:24, 27:21, 28:9, 28:18, 28:24, 29:3, 29:8, 29:12, 29:16, 29:22, 30:1, 30:3, 30:16, 30:25, 31:14, 32:6, 32:20, 32:21, 32:25, 33:13, 34:17, 34:25, 35:4, 35:16, 35:17, 35:22, 35:23, 36:4, 36:6, 36:11, 36:12, 37:1, 37:3, 38:20, 39:16, 39:22, 39:25, 40:8, 40:19, 40:21, 41:21, 43:9, 43:21, 43:24, 44:10, 44:12, 44:21, 44:23, 45:3, 45:15, 47:13, 48:7, 48:19, 48:20, 48:23, 49:8, 49:24, 50:10, 50:15, 51:1, 51:4, 52:1, 52:6, 54:5, 57:11, 57:18, 58:11, 58:24, 58:25, 59:19, 60:1, 60:15, 60:23, 61:12, 61:18, 61:20, 62:9, 63:1, 63:13, 64:3, 64:10, 65:6, 65:15, 67:10, 67:15, 67:20, 68:24, 70:13, 70:21, 71:3, 72:10, 74:10, 74:24, 75:16, 75:23, 77:9, 78:5, 79:12, 79:20, 79:23, 80:12, 80:21, 82:5, 82:17, 82:21, 83:20, 83:22, 83:25, 85:24, 86:8, 86:19, 87:20, 88:8, 89:6, 89:18, 90:7, 90:17, 90:22, 91:19, 92:24, 93:13, 93:14, 93:22
**Honor's** [3] - 45:6, 63:19, 87:12
**HONORABLE** [1] -

1:18
**hooked** [1] - 94:12
**hope** [2] - 27:15, 91:21
**hopefully** [2] - 20:8, 92:10
**Hoskins** [21] - 13:23, 14:4, 14:20, 16:23, 20:12, 20:24, 22:13, 25:24, 26:13, 27:23, 42:12, 50:22, 51:5, 58:19, 60:21, 68:14, 70:24, 71:16, 83:10, 83:11
**HOSKINS** [2] - 1:8, 95:3
**hospital** [1] - 56:13
**hour** [2] - 91:22, 92:10
**hours** [6] - 91:20, 91:23, 91:25, 92:11, 92:19, 93:6

## I

**idea** [2] - 47:15, 58:10
**II** [1] - 9:4
**illegal** [1] - 69:22
**immediately** [1] - 9:16
**implemented** [2] - 76:16, 80:1
**implies** [1] - 17:18, 41:10
**important** [8] - 6:10, 22:4, 27:17, 28:5, 45:16, 45:25, 65:24, 89:9
**imposes** [1] - 6:9
**impressions** [1] - 45:4
**improper** [1] - 88:2
**improves** [1] - 24:23
**inability** [3] - 87:4, 89:12, 89:16
**inaccurate** [1] - 7:2
**Inc** [7] - 13:8, 13:25, 14:2, 14:14, 26:14, 27:24, 79:3
**inclined** [5] - 10:23, 58:8, 77:3, 78:13, 81:10
**include** [11] - 16:3, 25:5, 45:24, 48:2, 49:8, 58:9, 61:21, 77:3, 78:1, 78:13, 89:23
**included** [4] - 4:12, 9:20, 77:7, 77:18, 78:17, 82:11
**includes** [6] - 16:3, 17:14, 17:17, 18:4, 34:1, 44:24, 66:25

**inconsistent** [2] - 19:15, 19:20
**inconvenience** [1] - 84:15
**incorporate** [1] - 68:6
**incorporated** [2] - 66:22, 73:25
**incorporation** [1] - 61:10
**incredibly** [1] - 87:21
**independent** [1] - 79:8
**indictment** [19] - 7:25, 20:9, 20:11, 20:17, 29:6, 29:7, 29:11, 30:6, 30:9, 30:15, 30:20, 30:24, 31:2, 31:20, 31:22, 32:9, 33:4, 33:5
**individual** [1] - 10:20
**individually** [1] - 9:14
**Indonesia** [4] - 14:3, 55:19, 79:5, 79:8, 86:24
**inference** [3] - 86:4, 88:6, 88:25
**inferences** [1] - 88:9
**influence** [1] - 16:11
**initial** [2] - 7:5, 93:5
**inject** [1] - 42:18
**innocence** [2] - 4:8, 83:12
**innocent** [1] - 6:1
**insert** [1] - 9:13
**inserted** [2] - 7:23, 37:4
**inside** [2] - 74:5, 74:20
**instead** [6] - 18:22, 36:1, 55:5, 65:3, 79:6, 89:22
**instruct** [4] - 52:2, 52:8, 70:14, 89:15
**instructed** [5] - 8:20, 11:11, 47:22, 57:7, 57:8
**instructing** [2] - 8:21, 66:23
**instruction** [28] - 7:21, 13:15, 14:17, 22:22, 25:20, 32:7, 35:15, 36:9, 36:17, 44:23, 49:9, 49:11, 56:23, 57:1, 57:22, 58:13, 66:16, 73:25, 77:17, 80:24, 81:21, 81:22, 81:24, 82:2, 82:19, 83:24, 85:1, 85:2
**instructs** [2] - 62:9, 65:17
**instrument** [1] - 73:14
**instrumentality** [5] -

49:19, 55:2, 55:9, 55:10, 55:17
**instruments** [2] - 71:24, 72:2
**integral** [1] - 80:3
**intend** [6] - 3:25, 4:2, 57:11, 66:1, 69:3, 69:4
**intended** [5] - 16:8, 62:1, 62:18, 66:3, 68:6
**intent** [26] - 45:6, 62:3, 62:4, 62:23, 63:2, 63:8, 63:17, 63:24, 64:7, 64:19, 65:1, 65:10, 65:18, 66:1, 66:5, 66:6, 66:14, 66:19, 66:21, 68:15, 68:18, 69:1, 69:7, 69:9, 69:21, 70:1
**intention** [3] - 65:21, 88:6, 92:5
**interest** [8] - 11:13, 11:14, 11:15, 11:18, 12:3, 12:6, 12:11, 12:14
**international** [5] - 76:24, 76:25, 79:5, 81:2, 90:14
**International** [4] - 14:14, 14:20, 15:4, 79:4
**interrupt** [2] - 42:5, 87:24
**interstate** [2] - 49:19, 51:17
**investigators** [1] - 85:12
**invitation** [1] - 85:19
**invite** [1] - 92:6
**involved** [6] - 20:12, 52:14, 53:11, 54:9, 54:17, 57:24
**involvement** [1] - 42:9
**involves** [1] - 77:11
**ish** [1] - 94:9
**issue** [26] - 3:25, 6:2, 6:21, 8:18, 8:20, 8:21, 12:25, 25:3, 32:21, 39:1, 41:1, 48:10, 52:5, 53:16, 65:18, 68:25, 71:3, 71:6, 71:8, 73:19, 78:9, 79:10, 83:5, 83:13, 84:3, 90:15
**issues** [4] - 7:7, 8:17, 8:23, 66:8
**IT** [1] - 94:10
**itself** [11] - 4:13, 10:12, 35:3, 35:7,

36:15, 37:20, 40:2,
43:14, 58:13, 68:17,
69:19

## J

**Jakarta** [2] - 24:13,
56:11
**JANET** [1] - 1:18
**JBA** [2] - 1:4, 95:4
**job** [1] - 63:6
**join** [5] - 62:2, 63:23,
64:18, 65:10, 69:20
**joined** [1] - 68:14
**joining** [1] - 67:17
**Joint** [1] - 13:16
**joint** [8] - 13:17,
13:18, 13:23, 14:1,
14:2, 14:4, 15:4,
15:6
**Judge** [1] - 94:11
**judgment** [3] - 44:10,
86:7, 89:3
**juries** [1] - 57:7
**jurisdictional** [4] -
73:21, 75:9, 75:10,
75:12
**jurors** [1] - 21:10
**jury** [47] - 4:14, 5:8,
7:16, 10:9, 10:17,
11:18, 14:7, 14:19,
15:3, 16:10, 19:5,
19:19, 23:20, 25:8,
28:4, 29:25, 32:12,
33:9, 38:2, 39:9,
41:10, 42:21, 43:5,
44:18, 44:25, 57:6,
57:16, 60:18, 64:13,
64:16, 65:18, 66:10,
66:17, 66:23, 68:13,
70:14, 77:6, 79:15,
87:18, 88:9, 88:15,
88:22, 89:7, 91:16,
93:7, 93:24, 94:1
**jury's** [2] - 10:24, 63:6
**Justice** [1] - 2:7
**juxtapose** [1] - 7:11

## K

**Kahn** [1] - 40:23
**KAHN** [35] - 2:6, 20:5,
21:21, 22:20, 24:17,
24:24, 32:21, 32:24,
36:12, 38:20, 40:9,
41:20, 42:2, 42:6,
42:11, 43:3, 43:18,
43:21, 44:21, 46:6,
48:20, 49:7, 54:5,
56:3, 56:8, 58:2,

60:8, 60:12, 77:9,
79:11, 79:20, 80:11,
80:19, 90:7, 91:19
**Kahn's** [2] - 20:22,
40:22
**keep** [3] - 22:16,
54:18, 87:23
**key** [1] - 39:1
**keyed** [1] - 30:9
**kind** [10] - 4:9, 21:8,
27:6, 41:6, 45:19,
64:23, 66:7, 78:13,
80:4, 92:24
**knowing** [2] - 73:18,
73:23
**knowingly** [11] -
64:14, 65:16, 66:11,
66:20, 66:24, 67:5,
67:16, 67:18, 67:21,
67:22, 67:24
**knowledge** [3] - 65:1,
65:20, 69:8
**known** [1] - 10:9
**KPK** [1] - 85:11

## L

**lack** [4] - 11:17, 87:4,
89:11, 89:12
**lands** [1] - 75:12
**language** [15] - 13:21,
14:5, 25:6, 37:4,
57:19, 58:5, 58:6,
58:8, 62:12, 73:21,
78:13, 78:18, 81:6,
81:8, 82:10
**large** [1] - 84:10
**Larry** [1] - 89:23
**LARYEA** [3] - 2:7,
3:20, 5:23
**last** [23] - 6:16, 11:3,
27:20, 31:14, 33:22,
34:16, 34:20, 45:14,
46:7, 46:21, 48:6,
48:7, 51:9, 51:15,
54:24, 57:22, 59:22,
60:25, 74:17, 77:25,
83:8, 85:16, 94:11
**laundering** [7] - 9:12,
68:15, 70:25, 71:14,
72:12, 72:14, 72:24
**Lavalier** [1] - 94:4
**law** [17] - 5:14, 5:25,
6:8, 14:24, 20:1,
35:5, 36:6, 36:24,
37:2, 37:25, 38:7,
38:24, 40:18, 52:3,
69:1, 79:12, 80:25
**lawful** [2] - 23:21,
23:24

**LAWRENCE** [2] - 1:8,
95:3
**leads** [1] - 91:23
**least** [5] - 6:15, 9:5,
76:7, 77:5, 94:11
**leave** [4] - 44:3, 48:1,
59:4, 67:25, 68:7,
86:2
**leaves** [2] - 45:4,
49:23
**leaving** [5] - 42:15,
42:16, 42:17, 42:21,
79:14
**left** [2] - 15:9, 75:13
**legal** [3] - 15:7, 16:20,
69:16
**legitimate** [3] - 38:9,
38:13, 39:7
**length** [1] - 91:17
**liability** [7] - 48:12,
48:17, 49:3, 60:11,
60:22, 61:8, 82:12
**liable** [1] - 48:13
**light** [2] - 39:3, 51:17
**line** [3] - 3:19, 31:16,
59:15
**lines** [1] - 77:4
**list** [6] - 33:12, 45:19,
45:20, 49:25, 50:21,
85:16
**listed** [3] - 17:19, 32:8,
32:9
**listen** [1] - 32:12
**listing** [2] - 49:14,
49:20
**lists** [2] - 49:23, 50:8
**literally** [2] - 15:25,
17:8
**LLC** [1] - 2:18
**LLP** [1] - 2:14
**located** [1] - 85:7
**location** [1] - 80:16
**look** [7] - 21:6, 48:5,
60:13, 70:5, 78:6,
81:13, 90:18
**looking** [5] - 54:10,
55:8, 59:14, 81:18,
90:15
**looks** [4] - 45:1, 46:21,
50:17, 72:12
**loop** [1] - 89:7
**LORINDA** [1] - 2:7
**lorinda.laryea@**
**usdoj.gov** [1] - 2:10
**loses** [1] - 23:9
**loud** [2] - 56:16, 56:18
**low** [1] - 56:5
**lunch** [3] - 92:12,
92:18, 92:19

## M

**mail** [6] - 2:5, 2:15,
2:20, 31:9, 31:10,
91:14
**mails** [2] - 29:17,
49:18
**main** [1] - 92:22
**majority** [1] - 85:5
**Manning** [1] - 2:18
**marshaling** [1] - 44:19
**Martini** [1] - 2:18
**Marubeni** [1] - 14:3
**match** [1] - 40:16
**matter** [5] - 14:16,
38:24, 52:3, 85:3,
95:11
**mean** [18] - 5:14,
12:14, 21:16, 24:6,
25:20, 28:10, 28:17,
36:11, 38:7, 38:11,
47:19, 54:13, 59:1,
66:1, 66:25, 67:18,
79:14, 81:25
**meaning** [6] - 21:14,
31:19, 54:3, 60:5,
78:2, 80:7
**means** [7] - 10:25,
16:3, 21:20, 64:17,
65:9, 85:8
**meant** [2] - 67:5,
67:24
**measure** [1] - 91:22
**meet** [1] - 55:13
**meeting** [3] - 24:2,
24:9, 24:13
**MELISSA** [1] - 95:18
**Melissa** [2] - 1:24,
95:6
**member** [8] - 12:15,
13:24, 14:4, 63:9,
64:18, 65:9, 67:6,
67:23
**membership** [10] -
62:8, 63:2, 63:15,
63:18, 63:19, 64:6,
64:12, 66:17, 68:2,
70:17
**Membership** [1] - 11:5
**mens** [9] - 63:20,
64:21, 65:4, 68:11,
68:20, 69:11, 69:19,
69:22, 73:23
**mention** [1] - 7:5
**mentioned** [2] - 51:18,
52:4
**mere** [1] - 39:4
**merely** [2] - 67:17,
73:21
**met** [2] - 85:14, 87:15

**method** [2] - 58:17,
61:6
**might** [8] - 12:5,
21:16, 47:3, 59:7,
59:10, 59:12, 65:3,
92:18
**mike** [2] - 94:4, 94:7
**mimic** [1] - 77:5
**mind** [2] - 68:3, 84:20
**minutes** [1] - 92:19
**misleading** [1] - 14:6
**missing** [1] - 50:11
**misstates** [1] - 40:23
**mix** [1] - 40:16
**modeled** [1] - 8:4
**modified** [1] - 48:15
**modify** [1] - 45:25
**Moeis** [1] - 57:10
**moment** [2] - 20:3,
88:8
**monetary** [3] - 71:24,
72:2, 73:14
**money** [10] - 9:12,
68:14, 70:24, 71:14,
72:12, 72:14, 72:23,
74:4, 74:19, 80:15
**morning** [1] - 3:1
**morphed** [1] - 22:24
**MORVILLO** [11] - 2:12,
88:3, 88:21, 89:4,
92:1, 92:5, 92:8,
92:13, 92:16, 92:21,
93:2
**most** [2] - 3:4, 44:20
**motion** [3] - 44:7,
44:16, 56:25
**move** [7] - 7:17, 9:2,
18:17, 24:25, 28:23,
71:11, 85:6
**moved** [1] - 5:21
**movement** [1] - 79:7
**moving** [1] - 93:23
**MR** [371] - 3:11, 3:12,
3:17, 3:21, 3:22, 4:5,
4:17, 4:20, 4:25, 5:1,
5:6, 5:13, 5:17, 5:18,
5:24, 6:14, 6:22, 7:8,
7:19, 8:10, 8:12,
8:15, 9:3, 9:10, 9:18,
10:4, 10:16, 11:3,
11:20, 12:8, 12:13,
12:20, 12:23, 13:1,
13:3, 13:5, 13:6,
13:10, 13:12, 13:20,
14:9, 14:18, 15:11,
15:13, 15:20, 16:1,
16:13, 16:17, 17:5,
17:12, 17:14, 17:17,
17:23, 18:7, 18:11,
18:18, 19:3, 19:7,

19:15, 19:20, 20:3, 20:5, 20:20, 20:21, 20:22, 21:2, 21:8, 21:21, 21:23, 22:13, 22:18, 22:20, 23:17, 23:18, 24:1, 24:5, 24:11, 24:17, 24:24, 25:2, 25:14, 25:15, 26:2, 26:5, 26:6, 26:17, 26:19, 26:24, 27:4, 27:9, 27:10, 27:20, 28:9, 28:16, 28:18, 28:24, 29:2, 29:21, 30:1, 30:10, 30:12, 30:16, 30:18, 30:19, 30:25, 31:4, 31:8, 31:13, 31:21, 32:3, 32:6, 32:19, 32:21, 32:24, 33:3, 33:6, 33:12, 33:14, 33:15, 33:22, 34:9, 34:12, 34:17, 34:21, 34:22, 34:25, 35:16, 35:17, 35:22, 36:1, 36:3, 36:5, 36:10, 36:12, 36:25, 37:16, 37:23, 38:5, 38:20, 39:16, 39:22, 39:25, 40:9, 40:21, 41:15, 41:20, 41:25, 42:2, 42:3, 42:6, 42:11, 42:20, 42:24, 43:3, 43:4, 43:8, 43:18, 43:21, 43:24, 44:3, 44:14, 44:21, 45:2, 45:8, 45:12, 45:14, 46:5, 46:6, 46:7, 46:9, 46:12, 46:13, 46:15, 46:18, 46:19, 47:5, 47:8, 47:13, 47:25, 48:6, 48:18, 48:20, 48:23, 49:1, 49:7, 49:12, 49:13, 49:17, 49:18, 49:20, 50:4, 50:6, 50:10, 50:17, 50:21, 51:1, 51:11, 51:14, 51:15, 51:22, 52:1, 52:6, 52:7, 52:11, 52:25, 53:4, 53:8, 53:18, 53:24, 54:5, 54:12, 54:21, 54:23, 54:24, 55:4, 55:8, 55:9, 55:15, 55:18, 55:21, 55:24, 56:3, 56:6, 56:8, 56:10, 56:18, 56:21, 57:11, 57:18, 57:21, 58:1, 58:2, 58:6, 58:11, 58:23, 58:25, 59:4, 59:14, 59:18, 59:21, 60:8,

60:10, 60:12, 60:15, 60:23, 61:12, 61:14, 62:4, 62:13, 62:17, 62:22, 63:1, 63:13, 64:2, 64:4, 64:10, 65:15, 66:7, 66:13, 66:15, 66:19, 67:2, 67:9, 67:14, 67:19, 68:8, 68:23, 69:15, 69:24, 70:6, 70:8, 70:12, 70:14, 70:16, 70:21, 71:3, 71:12, 71:20, 71:22, 72:4, 72:8, 72:10, 72:17, 72:19, 72:21, 72:23, 73:8, 73:12, 73:13, 74:1, 74:10, 74:11, 74:16, 74:22, 74:24, 75:4, 75:16, 75:17, 75:19, 75:23, 75:25, 77:9, 78:5, 78:21, 79:11, 79:20, 79:23, 80:11, 80:18, 80:19, 81:1, 81:17, 81:23, 82:1, 82:5, 82:6, 82:8, 82:9, 82:13, 82:17, 82:21, 83:1, 83:3, 83:6, 83:20, 83:22, 84:5, 84:7, 84:12, 84:16, 84:22, 84:24, 85:10, 85:23, 86:8, 86:9, 86:19, 87:3, 87:5, 87:12, 87:20, 88:3, 88:21, 89:4, 89:6, 89:18, 89:21, 89:24, 90:3, 90:7, 90:22, 91:3, 91:7, 91:19, 92:1, 92:5, 92:8, 92:13, 92:16, 92:21, 92:25, 93:2, 93:3, 93:13, 93:14, 93:17, 93:22, 94:3, 94:5, 94:8, 94:10

**MS** [3] - 3:20, 5:23, 30:17
**multiple** [2] - 76:16, 80:1
**multistep** [5] - 77:16, 78:4, 80:15, 80:21, 80:23
**multitransaction** [1] - 79:16
**must** [24] - 7:12, 11:8, 17:1, 19:9, 19:12, 19:24, 33:23, 37:8, 37:10, 39:13, 39:20, 40:3, 40:12, 41:21, 43:15, 47:6, 54:13, 62:2, 63:23, 65:10,

73:6, 76:5, 77:23, 91:8

## N

**N.W** [1] - 2:8
**name** [1] - 55:23
**names** [2] - 86:3, 88:13
**narrowing** [1] - 23:8
**narrows** [1] - 23:14
**nature** [2] - 20:13, 69:16
**necessarily** [5] - 28:19, 36:15, 37:20, 40:3, 85:3
**necessary** [15] - 8:22, 11:24, 26:7, 28:3, 28:20, 32:13, 52:12, 53:7, 53:9, 53:10, 53:12, 53:23, 58:7, 75:15, 79:19
**need** [23] - 24:20, 30:24, 31:3, 31:6, 31:11, 34:7, 54:8, 61:9, 61:22, 62:16, 66:2, 66:5, 72:6, 74:3, 74:19, 81:14, 82:24, 84:1, 91:14, 92:20, 93:4, 93:6
**needed** [1] - 66:6
**needing** [1] - 90:24
**needs** [4] - 53:14, 66:17, 73:15, 78:22
**Nerlinger** [3] - 38:11, 38:25, 40:24
**Network** [3] - 14:14, 14:21, 15:4
**never** [3] - 6:7, 6:8, 7:3
**New** [6] - 1:8, 2:4, 2:8, 2:14, 57:23, 95:20
**new** [3] - 30:22, 30:24, 57:17
**next** [39] - 7:18, 11:2, 11:10, 13:12, 15:12, 25:1, 25:3, 25:4, 27:19, 27:25, 28:1, 29:1, 44:2, 46:22, 49:13, 52:4, 52:18, 52:23, 54:9, 54:12, 54:20, 56:6, 56:20, 58:11, 59:22, 61:14, 62:20, 63:14, 64:11, 68:10, 70:7, 71:22, 73:12, 75:18, 76:11, 81:16, 83:4, 83:6, 84:5
**NH** [1] - 2:3
**nine** [1] - 85:21

**non** [1] - 18:5
**non-FCPA** [1] - 18:5
**noncriminal** [1] - 37:21
**nonspecific** [1] - 66:1
**notation** [1] - 58:14
**notebook** [1] - 33:20
**notebooks** [1] - 31:3
**noted** [1] - 4:6
**notes** [1] - 95:11
**nothing** [10] - 12:20, 34:21, 46:18, 54:21, 59:21, 70:8, 78:22, 84:22, 89:24, 90:21
**notwithstanding** [1] - 87:10
**November** [1] - 1:5
**Novick** [5] - 12:21, 15:2, 20:7, 40:11, 41:12
**NOVICK** [169] - 2:3, 3:11, 3:17, 3:21, 4:17, 4:25, 5:13, 5:18, 5:24, 6:14, 7:8, 8:10, 8:15, 10:4, 11:20, 12:13, 12:23, 13:3, 13:6, 13:12, 14:9, 15:11, 15:20, 17:5, 17:14, 17:23, 18:7, 18:11, 19:3, 19:15, 20:3, 20:21, 21:2, 23:17, 25:14, 26:6, 26:17, 26:19, 26:24, 27:4, 27:9, 27:20, 28:16, 28:18, 28:24, 29:2, 29:21, 30:12, 30:16, 30:18, 30:25, 31:4, 31:8, 31:13, 31:21, 32:3, 32:6, 32:19, 33:6, 33:12, 33:15, 33:22, 34:12, 34:21, 34:25, 35:17, 35:22, 36:5, 36:16, 39:25, 41:15, 42:24, 43:8, 43:24, 45:8, 45:12, 46:5, 46:7, 46:13, 46:18, 47:5, 47:13, 47:25, 48:18, 48:23, 49:13, 49:20, 50:4, 50:10, 51:1, 51:14, 52:6, 52:25, 54:21, 54:24, 55:8, 55:15, 55:18, 55:21, 56:6, 56:10, 56:18, 56:21, 57:18, 57:21, 58:1, 58:11, 58:23, 59:14, 59:18, 60:23, 61:12, 62:4, 62:22, 63:1, 64:4, 65:15, 66:13, 66:19,

67:9, 67:19, 68:23, 69:24, 70:6, 70:8, 70:14, 71:3, 71:20, 72:10, 72:23, 73:12, 74:1, 74:10, 74:16, 74:24, 75:19, 75:23, 81:17, 82:1, 82:5, 82:8, 82:13, 82:17, 82:21, 83:1, 83:6, 83:20, 84:7, 84:12, 84:16, 84:22, 85:23, 86:9, 86:19, 87:3, 87:20, 89:6, 89:18, 89:21, 90:3, 91:7, 92:25, 93:3, 93:13, 93:17, 93:22, 94:3, 94:5, 94:10
**Novick's** [2] - 7:20, 40:22
**number** [3] - 31:16, 50:13, 63:4
**Number** [6] - 8:13, 18:14, 50:11, 55:1, 73:5, 74:17
**numbering** [1] - 72:22
**numbers** [1] - 31:18
**NY** [2] - 2:14, 2:14

## O

**object** [8] - 13:20, 45:8, 45:9, 61:16, 61:24, 62:8, 69:5, 69:6
**objected** [1] - 44:5
**objection** [15] - 5:6, 10:21, 13:10, 30:4, 30:22, 32:19, 47:14, 55:4, 58:4, 58:6, 58:7, 59:19, 60:24, 68:9, 91:7
**objections** [2] - 4:2, 5:4
**objective** [3] - 11:1, 27:18, 65:21
**objects** [9] - 61:15, 61:20, 63:21, 64:20, 64:25, 65:11, 65:13, 65:14, 68:12
**obtain** [3] - 21:18, 22:2, 22:5
**obviously** [13] - 3:24, 4:17, 6:2, 6:5, 25:9, 27:23, 28:3, 28:10, 29:4, 31:22, 34:6, 68:25, 74:1
**OF** [3] - 1:1, 1:4, 95:3
**offense** [6] - 48:9, 56:22, 58:12, 61:24, 69:23, 73:22

offenses [2] - 49:5, 59:17
offer [1] - 50:11
offered [1] - 21:5
office [2] - 31:5, 58:2
Office [1] - 2:3
Official [3] - 1:24, 95:7, 95:18
officials [1] - 57:6
old [1] - 59:16
once [2] - 23:8, 82:24
one [44] - 6:21, 7:19, 12:11, 15:22, 20:3, 20:6, 21:13, 21:16, 28:5, 28:8, 29:8, 34:6, 34:8, 38:8, 38:9, 41:7, 41:8, 50:8, 50:13, 54:9, 60:25, 63:24, 64:4, 64:18, 64:22, 64:24, 65:1, 65:10, 65:11, 66:8, 68:16, 68:17, 72:3, 76:13, 78:4, 80:1, 80:9, 80:16, 83:4, 83:6, 88:4, 90:8, 94:12
One [11] - 13:13, 18:21, 50:21, 51:2, 61:16, 63:22, 73:5, 73:13, 74:13, 74:18, 75:5
ones [3] - 27:1, 30:8, 31:22
opening [1] - 89:14
opinion [1] - 77:7
opportunity [12] - 85:4, 85:18, 85:21, 86:2, 87:1, 87:3, 87:4, 87:7, 89:11, 89:12, 89:16
opposed [3] - 40:22, 57:19, 59:24
opposite [1] - 14:6, 74:1, 74:23
oral [1] - 15:9
order [3] - 11:7, 43:19, 89:7
orderly [1] - 3:5
organizational [1] - 21:4
original [1] - 43:9
originally [1] - 57:2
otherwise [3] - 53:3, 68:4, 93:21
ought [3] - 6:20, 47:21, 86:9
outcome [1] - 11:9
outset [2] - 5:8, 78:1
outside [6] - 72:5, 72:7, 74:6, 74:21,

75:2, 87:10
overseas [2] - 77:15, 85:7
overt [16] - 29:2, 29:5, 29:9, 32:1, 32:4, 32:7, 32:8, 32:16, 32:20, 32:22, 33:10, 33:19, 33:24, 34:5, 34:11, 45:21
Overview [1] - 9:4
overview [1] - 9:8
own [3] - 15:6, 15:7, 52:22
owned [1] - 55:12

P

p.m [3] - 75:21, 94:16
Pacific [2] - 79:3, 79:4
page [47] - 3:5, 3:6, 3:14, 3:17, 3:18, 3:20, 4:5, 4:6, 4:9, 4:12, 4:18, 4:20, 4:25, 5:1, 5:23, 5:25, 7:23, 8:8, 8:10, 9:5, 9:19, 11:4, 12:24, 15:14, 15:16, 18:19, 30:24, 30:25, 31:1, 31:14, 31:15, 31:16, 31:17, 44:8, 45:15, 46:22, 49:13, 49:21, 59:2, 59:15, 59:22, 62:20, 67:1, 72:21, 91:2, 91:3
pages [6] - 31:12, 31:13, 31:21, 65:17, 67:7, 95:9
papers [1] - 13:22
paragraph [59] - 4:21, 4:23, 6:16, 6:19, 9:21, 10:3, 11:6, 12:24, 13:3, 13:7, 13:12, 23:9, 25:3, 25:4, 27:20, 27:22, 28:3, 28:15, 30:6, 32:3, 33:22, 34:16, 34:20, 35:1, 35:3, 35:18, 39:10, 40:16, 44:8, 44:15, 46:21, 47:9, 47:10, 48:1, 51:9, 51:16, 51:19, 52:4, 52:12, 52:14, 52:18, 52:23, 53:4, 53:9, 53:13, 53:18, 54:3, 54:7, 54:12, 55:7, 59:22, 60:1, 61:1, 62:15, 66:8, 73:5, 76:2
Paragraph [2] - 57:17, 59:16

paragraphs [11] - 18:21, 29:10, 29:20, 29:22, 30:2, 30:5, 54:1, 65:4, 65:23, 68:10, 75:5
paralegal [1] - 93:18
parallel [2] - 28:20, 35:8
paralleled [1] - 28:1
parenthetical [2] - 74:25, 75:6
part [15] - 3:8, 10:5, 17:7, 22:8, 44:20, 57:5, 62:7, 63:2, 71:23, 73:22, 73:24, 76:7, 77:16, 80:3, 89:5
participant [1] - 11:8
participate [1] - 65:19
participation [1] - 13:16
particular [7] - 6:12, 61:3, 63:21, 64:21, 65:13, 69:3, 86:12
particularly [6] - 10:7, 10:9, 26:11, 27:1, 86:13, 89:13
parties [4] - 13:8, 51:24, 51:25, 55:1
partner [1] - 13:18
partnership [4] - 13:16, 13:24, 15:6
parts [1] - 79:16
party [6] - 26:9, 27:10, 83:8, 89:8, 89:10, 89:15
pass [1] - 40:20
pattern [2] - 10:5, 44:22
pay [1] - 50:12
payment [2] - 50:12, 50:13
PEACOCK [18] - 2:13, 49:18, 51:15, 51:22, 52:1, 52:11, 53:4, 53:8, 53:24, 67:2, 67:14, 72:19, 73:13, 74:22, 75:16, 84:24, 85:10, 86:8
Peacock [1] - 87:13
people [2] - 85:12, 86:22
perform [6] - 15:19, 16:6, 17:2, 17:21, 17:24, 18:13
performed [1] - 16:24
performs [4] - 15:24, 17:9, 17:15, 18:3
perhaps [4] - 3:8, 7:25, 58:14, 60:3

period [2] - 44:17, 79:6
permitted [1] - 14:19
personally [5] - 52:13, 53:11, 54:8, 54:16, 58:2
persuasion [1] - 83:18
phew [1] - 92:2
Phil [1] - 94:8
phrase [2] - 61:22, 62:19
phrased [2] - 64:11, 64:13
pick [1] - 73:16
picked [2] - 52:18, 53:3
piece [1] - 22:25
Pinkerton [14] - 48:12, 48:19, 49:2, 49:9, 49:11, 60:11, 60:17, 61:8, 71:2, 81:21, 81:23, 82:2, 82:10, 82:18
place [14] - 7:11, 8:16, 27:22, 49:8, 72:5, 72:6, 74:6, 74:9, 74:21, 75:2, 80:9, 81:20, 84:9, 90:5
places [5] - 47:8, 63:4, 74:12, 74:14, 82:25
plain [1] - 80:7
plaintiff [1] - 1:5
plan [4] - 77:16, 80:3, 80:15, 80:23
plans [1] - 80:21
players [1] - 47:19
PLN [3] - 55:2, 55:16, 55:24
plus [1] - 92:10
Point [2] - 59:5, 72:24
point [31] - 7:20, 9:18, 11:3, 11:22, 16:1, 16:14, 16:17, 19:17, 20:7, 20:22, 22:3, 22:21, 25:2, 28:10, 35:23, 36:6, 45:14, 48:6, 54:7, 60:16, 64:11, 71:6, 71:12, 77:11, 84:5, 84:24, 87:12, 90:19, 90:22, 90:23
pointed [2] - 23:1, 42:16
points [6] - 15:13, 18:19, 44:5, 72:24, 77:10, 87:25
portion [1] - 28:13
position [4] - 35:4, 44:12, 69:17, 78:22
possibility [1] - 58:18

Post [1] - 2:18
potentially [3] - 14:6, 39:17, 68:12
power [1] - 87:11
Power [7] - 13:8, 13:25, 14:2, 14:14, 26:14, 27:24, 79:3
PowerPoints [1] - 21:5
precise [1] - 64:9
preexisting [1] - 31:15
preferable [1] - 29:14
prepared [1] - 8:3
preponderance [6] - 4:11, 4:23, 5:11, 7:1, 7:4, 83:14
presented [2] - 85:20, 87:10
presumes [1] - 5:25
presumption [1] - 4:7
pretty [1] - 45:13
previous [1] - 63:19
previously [4] - 4:1, 13:21, 44:5, 82:1
PRI [1] - 79:7
principal [8] - 15:19, 15:24, 16:8, 16:25, 17:3, 17:10, 17:15, 17:22
principally [1] - 29:17
problem [10] - 3:9, 18:10, 29:24, 40:10, 45:2, 47:5, 68:3, 79:24, 81:1, 89:4
proceed [3] - 3:5, 27:24, 27:25
proceeding [1] - 71:18
Proceedings [1] - 94:16
proceeds [4] - 38:15, 69:13, 93:8
process [3] - 16:21, 26:25, 27:6
Project [10] - 14:16, 14:22, 22:3, 22:5, 23:6, 23:13, 23:21, 23:25, 24:9, 24:23
promise [1] - 50:12
promote [1] - 64:8
pronounce [2] - 55:22, 56:2
pronouncing [1] - 56:5
proof [5] - 4:8, 4:15, 7:12, 66:5, 83:14
properly [2] - 11:16, 77:13
proposal [7] - 8:4, 40:22, 50:16, 57:2, 78:16, 78:20, 79:22

**propose** [3] - 9:3, 51:23, 78:25
**proposed** [2] - 8:7, 84:25
**proposing** [1] - 67:13
**proposition** [1] - 6:5
**prove** [13] - 6:3, 6:24, 19:9, 29:5, 29:17, 64:7, 66:2, 73:7, 74:3, 74:19, 83:12, 90:24, 91:9
**proved** [3] - 51:6, 76:15, 79:1
**proven** [2] - 29:9, 61:23, 76:23
**provide** [2] - 55:13, 56:25
**provided** [2] - 29:12, 65:25
**proving** [2] - 46:2, 83:10
**provision** [1] - 76:9
**public** [3] - 9:24, 10:19, 55:13
**Puckett** [1] - 89:23
**pull** [1] - 93:20
**pulled** [1] - 57:22
**purpose** [14] - 18:22, 22:23, 23:1, 23:10, 37:6, 38:3, 39:14, 40:5, 40:7, 41:18, 43:12, 43:16, 65:20, 80:21
**Purpose** [1] - 9:19
**purposes** [13] - 13:14, 19:16, 19:22, 19:25, 22:1, 30:13, 34:7, 34:15, 43:8, 50:14, 63:6, 81:2, 81:4
**put** [12] - 12:19, 18:12, 26:12, 26:25, 35:10, 55:19, 57:14, 64:1, 78:16, 81:20, 82:3, 83:16

## Q

**quite** [1] - 78:6
**quote** [2] - 38:22, 80:14
**quote/unquote** [2] - 38:19, 41:7
**quoting** [1] - 80:20

## R

**raise** [1] - 71:23
**raised** [2] - 45:17, 46:1
**rather** [8] - 4:12,

39:18, 39:19, 40:3, 40:12, 43:15, 61:22, 67:17
**Rather** [1] - 41:21
**RE** [1] - 95:3
**rea** [9] - 63:20, 64:21, 65:4, 68:11, 68:20, 69:11, 69:19, 69:22, 73:24
**reach** [2] - 86:4, 88:25
**read** [24] - 4:7, 13:7, 15:17, 23:11, 28:21, 32:10, 32:13, 32:16, 33:3, 33:6, 33:8, 33:11, 33:16, 33:20, 44:12, 47:22, 67:1, 67:4, 73:1, 74:18, 78:21, 78:25, 84:1, 91:8
**Read** [1] - 32:4
**reading** [4] - 12:8, 32:20, 34:16, 69:2
**reads** [9] - 9:21, 13:16, 19:9, 33:23, 44:6, 46:23, 52:12, 55:1, 66:10, 71:15, 74:3, 75:1, 76:4, 79:25, 83:9, 84:8
**real** [1] - 14:18
**realized** [1] - 56:1
**really** [18] - 6:22, 8:4, 10:20, 14:23, 19:21, 38:17, 55:22, 57:15, 63:22, 64:16, 66:16, 71:25, 78:14, 78:18, 87:18, 87:24, 88:21, 91:5
**reason** [8] - 6:8, 7:10, 10:23, 37:9, 42:18, 44:23, 72:22, 92:23
**reasonable** [8] - 5:8, 6:4, 6:24, 28:7, 46:3, 52:16, 52:20, 83:11
**reasonably** [6] - 53:15, 53:19, 53:25, 59:6, 59:9, 59:10
**rebuttal** [3] - 91:21, 93:1, 93:8
**receive** [1] - 3:15
**record** [6] - 3:24, 4:1, 8:5, 38:21, 75:21, 86:17
**recordkeeping** [1] - 30:14
**red** [1] - 3:18
**redline** [1] - 29:15
**redo** [2] - 29:20, 30:6
**redone** [1] - 29:6
**refer** [12] - 26:9, 31:22, 32:1, 33:4, 40:24,

53:25, 59:1, 59:2, 59:23, 64:16, 65:8, 67:7
**reference** [10] - 30:5, 59:3, 60:18, 60:24, 61:10, 65:16, 71:5, 82:7, 82:14, 82:15
**referenced** [1] - 77:8
**references** [3] - 4:19, 30:7, 60:1
**referencing** [1] - 26:10
**referring** [6] - 11:13, 32:2, 36:18, 37:13, 66:10, 70:22
**refers** [6] - 53:13, 60:10, 63:18, 64:13, 76:8, 81:21
**refining** [1] - 24:21
**refresh** [1] - 90:9
**regard** [4] - 6:18, 11:6, 22:7, 53:5
**regarding** [3] - 24:12, 73:13, 81:6
**regardless** [1] - 34:3
**regularly** [1] - 10:6
**reiterate** [4] - 22:24, 23:8, 58:22, 58:25
**reiterates** [1] - 13:15
**related** [3] - 23:13, 24:22, 82:2
**relates** [2] - 4:9, 4:11
**relation** [1] - 61:8
**relationship** [3] - 15:3, 16:7, 16:22
**relationships** [1] - 25:17
**relevant** [3] - 25:19, 65:24, 69:8
**relieve** [1] - 45:18, 46:2
**relitigate** [1] - 3:25
**rely** [1] - 82:12
**remainder** [1] - 33:20
**remaining** [1] - 32:23
**remember** [2] - 45:16, 45:25
**remind** [2] - 83:12, 83:17
**remove** [5] - 34:15, 35:18, 43:10, 51:5, 71:19
**removed** [7] - 51:17, 52:15, 65:6, 74:14, 75:1, 76:13, 76:17
**removing** [1] - 42:18
**renumber** [1] - 29:10
**renumbered** [2] - 29:11, 29:22
**renumbering** [1] - 30:2

**repeat** [2] - 59:1, 81:24
**reporter** [1] - 94:1
**Reporter** [3] - 1:24, 95:7, 95:18
**reproducing** [1] - 91:15
**request** [30] - 4:2, 4:7, 4:9, 4:10, 7:22, 10:2, 11:10, 13:15, 15:15, 18:20, 18:23, 20:1, 25:4, 35:17, 48:15, 52:11, 56:22, 61:18, 62:13, 76:2, 76:10, 76:12, 76:17, 77:4, 77:22, 82:9, 91:18, 91:20, 92:21, 92:25
**requested** [3] - 62:12, 76:19, 83:23
**requests** [1] - 75:25
**requirement** [5] - 38:8, 69:19, 70:1, 70:19, 79:1
**requirements** [5] - 63:21, 64:22, 65:5, 68:11, 77:2
**requires** [2] - 66:22, 69:7
**reserved** [2] - 14:11, 44:10
**Resignation** [1] - 40:2
**resignation** [30] - 35:2, 35:6, 35:20, 35:24, 36:7, 36:8, 36:14, 36:17, 36:19, 36:22, 37:5, 37:8, 37:10, 37:19, 38:1, 38:2, 38:22, 39:1, 39:11, 39:23, 40:4, 40:6, 40:9, 40:16, 40:17, 41:3, 41:10, 41:23, 43:6, 43:13
**resigned** [3] - 35:13, 38:12, 41:14
**resigns** [4] - 38:8, 38:9, 41:7, 41:8
**Resources** [2] - 79:3, 79:4
**respect** [12] - 3:14, 10:14, 16:23, 48:12, 49:2, 61:7, 71:2, 77:22, 86:1, 86:17, 87:6, 91:17
**respond** [2] - 39:24, 63:11
**rest** [6] - 26:7, 31:17, 40:15, 43:25, 51:8, 84:14
**restatement** [1] - 10:11

**restrictions** [1] - 93:23
**result** [2] - 56:14, 85:19
**return** [1] - 90:8
**review** [1] - 75:14
**revise** [1] - 39:11
**revised** [2] - 83:23, 90:1
**rid** [1] - 46:7
**risk** [6] - 14:18, 18:7, 23:20, 39:9, 40:18, 45:7
**risky** [1] - 44:19
**RMR** [3] - 1:24, 95:6, 95:18
**road** [1] - 16:20
**Road** [1] - 2:18
**room** [1] - 33:5
**Room** [2] - 2:9, 95:19
**Roseman** [1] - 83:24
**rule** [1] - 73:23
**rules** [1] - 39:4
**ruling** [1] - 14:12
**running** [1] - 40:10
**runs** [1] - 45:6

## S

**safe** [2] - 91:20, 91:24
**safety** [2] - 9:24, 10:19
**sake** [3] - 29:4, 46:25, 64:2
**satisfied** [3] - 53:15, 61:2
**save** [2] - 32:25, 84:14
**scheme** [1] - 38:15
**screen** [1] - 93:21
**scrimp** [1] - 92:18
**seated** [1] - 3:2
**Second** [6] - 77:19, 80:14, 80:19, 80:23, 80:25
**second** [15] - 30:18, 30:19, 30:23, 32:3, 37:13, 47:9, 55:6, 55:11, 61:15, 67:20, 76:10, 84:8, 85:16, 88:4, 90:9
**seconds** [1] - 90:7
**section** [10] - 5:22, 6:10, 7:5, 11:5, 27:21, 59:4, 59:21, 66:14, 72:11, 91:6
**Section** [9] - 2:8, 8:1, 8:2, 11:6, 46:22, 71:13, 73:21, 73:24, 91:4
**secure** [1] - 23:6
**see** [18] - 3:6, 4:19, 8:11, 9:16, 22:12,

22:15, 22:18, 30:22,
49:11, 50:9, 59:18,
68:1, 75:10, 75:15,
81:14, 82:6, 82:15
**seem** [2] - 20:17, 75:8
**selected** [1] - 33:10
**selecting** [1] - 27:6
**sense** [8] - 7:7, 7:16,
16:20, 30:16, 38:7,
50:2, 58:23, 70:12
**sent** [1] - 3:4
**sentence** [50] - 11:10,
15:17, 19:8, 26:7,
36:13, 37:13, 39:18,
39:19, 40:1, 44:6,
46:8, 47:9, 47:10,
48:7, 51:16, 52:2,
53:23, 54:15, 54:25,
55:6, 55:9, 55:11,
60:4, 67:3, 67:10,
67:19, 74:2, 74:16,
74:17, 74:25, 76:3,
76:4, 76:11, 76:13,
76:17, 76:18, 77:4,
77:23, 78:1, 78:14,
78:23, 79:24, 83:8,
84:8, 84:14, 86:10,
89:9, 91:5
**sentences** [1] - 52:8
**separate** [6] - 9:23,
17:7, 37:14, 71:6,
79:8, 94:2
**separately** [7] - 47:16,
47:23, 62:9, 63:4,
68:21, 71:2, 83:17
**September** [1] - 24:13
**services** [11] - 15:18,
15:23, 16:5, 16:23,
17:2, 17:9, 17:13,
17:14, 17:21, 18:3,
55:13
**set** [5] - 13:21, 49:5,
69:16, 79:17, 92:23
**sets** [2] - 44:7, 44:16
**seven** [3] - 50:4, 50:7,
50:8
**seventh** [3] - 49:24,
49:25, 56:21
**several** [1] - 56:3
**severed** [1] - 35:11
**Sharafi** [5] - 85:14,
85:19, 86:17, 87:6,
90:12
**shift** [1] - 6:20
**shifting** [1] - 6:23
**shifts** [2] - 6:7, 7:3
**short** [2] - 8:3, 56:25
**shorthand** [1] - 95:10
**shortly** [1] - 60:6
**show** [1] - 15:1

**showing** [1] - 29:16
**shows** [2] - 24:9,
24:12
**side** [3] - 86:12, 90:10,
91:20
**signature** [1] - 31:15
**significance** [2] -
12:2, 23:15
**significant** [1] - 85:11
**SILVER** [141] - 2:13,
3:12, 3:22, 4:5, 4:20,
5:1, 5:6, 5:17, 6:22,
7:19, 8:12, 9:3, 9:10,
9:18, 10:16, 11:3,
12:8, 12:20, 13:1,
13:5, 13:10, 13:20,
14:18, 15:13, 16:1,
16:13, 16:17, 17:12,
17:17, 18:18, 19:7,
19:20, 20:20, 20:22,
21:8, 21:23, 22:13,
22:18, 23:18, 24:1,
24:5, 24:11, 25:2,
25:15, 26:2, 26:5,
27:10, 28:9, 30:1,
30:10, 30:19, 33:3,
33:14, 34:9, 34:17,
34:22, 35:16, 36:1,
36:3, 36:10, 36:25,
37:16, 37:23, 38:5,
39:22, 40:21, 41:25,
42:3, 42:20, 43:4,
44:3, 44:14, 45:2,
45:14, 46:9, 46:12,
46:15, 46:19, 47:8,
48:6, 49:1, 49:12,
49:17, 50:6, 50:17,
50:21, 51:11, 52:7,
53:18, 54:12, 54:23,
55:4, 55:9, 55:24,
57:11, 58:6, 58:25,
59:4, 59:21, 60:10,
60:15, 61:14, 62:13,
62:17, 63:13, 64:2,
64:10, 66:7, 66:15,
68:8, 69:15, 70:12,
70:16, 70:21, 71:12,
71:22, 72:4, 72:8,
72:17, 72:21, 73:8,
74:11, 75:4, 75:17,
75:25, 78:5, 78:21,
79:23, 80:18, 81:1,
81:23, 82:6, 82:9,
83:3, 83:22, 84:5,
87:5, 87:12, 89:24,
93:14, 94:8
**Silver** [2] - 58:4, 63:12
**similar** [2] - 57:8,
77:20
**simple** [1] - 6:8

**simplicity** [1] - 34:19
**simply** [7] - 4:15, 24:1,
65:7, 66:8, 66:10,
69:23, 79:11
**single** [13] - 76:6,
77:23, 77:24, 78:2,
79:6, 79:13, 79:15,
80:2, 80:3, 80:16,
80:22, 81:3, 90:16
**Six** [1] - 91:4
**six** [4] - 50:8, 59:23,
60:10, 61:3
**sixth** [2] - 49:24, 49:25
**skill** [1] - 95:12
**slightly** [1] - 54:1
**small** [2] - 9:18, 71:12
**solicitation** [1] - 56:24
**solicited** [1] - 57:5
**solution** [1] - 48:11
**someone** [3] - 12:13,
31:8, 87:13
**someplace** [1] - 75:1
**sometimes** [1] - 26:9
**somewhat** [2] - 52:21,
53:24
**soon** [1] - 31:5
**sorry** [20] - 4:19, 5:1,
8:12, 11:20, 13:1,
37:18, 39:24, 40:8,
46:19, 47:13, 47:25,
55:8, 59:19, 60:8,
60:12, 67:11, 72:25,
73:13, 76:25, 83:7
**sort** [2] - 52:22, 76:18
**sound** [1] - 12:16
**Southern** [1] - 57:23
**Southport** [1] - 2:19
**sowing** [1] - 43:10
**speaking** [2] - 56:17,
56:19
**SPEARS** [3] - 2:17,
90:22, 91:3
**Spears** [1] - 2:18
**specific** [30] - 17:1,
18:23, 19:18, 20:14,
21:1, 21:3, 21:6,
21:17, 21:20, 22:11,
22:12, 23:12, 24:22,
32:1, 58:8, 62:4,
63:17, 63:20, 63:24,
64:19, 64:25, 65:10,
65:20, 66:13, 66:19,
68:15, 68:18, 69:1,
69:7, 69:21
**specifically** [6] -
32:11, 54:14, 62:1,
62:18, 66:1, 68:24
**speculate** [2] - 88:11,
88:22
**spot** [1] - 59:14

**squaring** [1] - 87:2
**squishy** [1] - 93:11
**stage** [3] - 5:11, 80:2,
90:16
**stages** [2] - 76:16,
80:1
**stake** [1] - 11:8
**standalone** [2] -
39:19, 40:1
**standard** [7] - 4:11,
5:9, 5:12, 7:4, 11:21,
69:22
**standing** [1] - 38:23
**standpoint** [1] - 7:16
**start** [7] - 3:8, 18:1,
20:16, 23:8, 31:3,
48:2, 91:15
**started** [1] - 40:11
**starts** [4] - 4:21, 34:24
**state** [3] - 23:19, 34:1,
55:12
**State** [1] - 55:12
**state-controlled** [1] -
55:12
**State-owned** [1] -
55:12
**statement** [3] - 5:14,
36:14, 79:13
**statements** [3] - 34:5,
44:11, 89:14
**States** [17] - 71:25,
72:2, 72:5, 72:7,
73:15, 73:17, 73:20,
74:5, 74:6, 74:9,
74:20, 74:21, 75:2,
75:3, 95:7, 95:19
**STATES** [3] - 1:1, 1:4,
95:3
**stating** [1] - 53:10
**status** [1] - 21:14
**statute** [6] - 9:20,
34:6, 34:8, 69:4,
80:4, 80:10
**step** [2] - 44:25, 77:14
**steps** [3] - 39:13,
40:13, 41:22
**still** [6] - 6:23, 31:14,
36:5, 61:7, 61:10,
68:13
**stipulated** [4] - 13:8,
51:24, 51:25, 55:2
**stipulation** [2] - 51:18,
52:4
**stop** [4] - 26:4, 31:25,
43:20, 88:17
**Street** [3] - 1:7, 2:4,
95:19
**stress** [1] - 88:21
**stricken** [1] - 10:3
**strikes** [2] - 8:15, 28:7

**strongly** [1] - 84:18
**stuff** [1] - 92:24
**stylistic** [1] - 5:3
**Subheading** [1] -
49:21
**submissions** [1] -
84:1
**submit** [1] - 78:20
**submitted** [1] - 92:3
**Subparagraph** [1] -
74:8
**Subpart** [5] - 61:17,
61:19, 62:14, 62:19
**subpoena** [1] - 87:11
**Subsection** [1] - 4:7
**subsequent** [1] -
48:14
**substance** [4] - 3:15,
14:10, 56:22, 58:12
**substantial** [2] -
20:11, 54:6
**substantive** [10] - 5:4,
8:24, 10:8, 10:11,
48:9, 49:5, 59:6,
59:16, 69:23, 71:14
**substitute** [1] - 30:7
**subsume** [2] - 12:5,
12:9
**subtle** [1] - 28:10
**successfully** [1] -
16:11
**sudden** [1] - 56:1
**suddenly** [1] - 20:16
**suffice** [1] - 38:4
**sufficient** [8] - 13:17,
14:16, 16:22, 36:23,
38:16, 42:22, 53:5,
64:9
**suggest** [13] - 15:2,
34:3, 39:17, 39:25,
42:16, 44:22, 45:23,
51:4, 54:24, 59:7,
59:11, 59:25, 74:13
**suggested** [4] - 34:14,
42:18, 71:5, 81:6
**suggesting** [2] -
36:22, 87:22
**suggestion** [8] - 7:15,
9:10, 13:6, 31:24,
32:6, 34:13, 43:9,
43:22
**suggestions** [1] - 35:1
**suggests** [1] - 44:24
**Suite** [1] - 2:18
**summaries** [3] - 84:8,
84:9, 84:17
**summary** [2] - 30:4,
30:7
**summation** [6] -
16:19, 28:12, 92:22,

93:1, 93:5, 93:8
**summations** [1] - 15:10
**superseding** [4] - 29:7, 30:15, 30:19, 30:23
**supplement** [1] - 48:25
**support** [1] - 14:17
**supported** [1] - 79:11
**supports** [1] - 69:2
**suppose** [3] - 13:14, 33:15, 33:17
**supposed** [1] - 25:23

## T

**talks** [4] - 63:20, 68:10, 80:20, 90:24
**tall** [1] - 56:7
**Tarahan** [13] - 14:15, 14:22, 21:18, 22:3, 22:5, 22:17, 23:2, 23:6, 23:13, 23:21, 23:25, 24:9, 24:22
**ten** [4] - 32:10, 33:10, 33:19, 87:14
**tend** [1] - 33:8
**term** [7] - 25:7, 25:9, 26:8, 26:20, 27:13, 51:16, 78:23
**terms** [4] - 38:2, 54:1, 64:14, 67:18
**testified** [3] - 86:5, 88:16, 89:1
**testify** [1] - 86:3
**testimony** [3] - 24:7, 28:11, 84:22
**Testimony** [1] - 89:21
**text** [2] - 11:12, 32:17
**THE** [203] - 1:18, 3:1, 3:13, 4:4, 4:18, 5:3, 5:15, 5:21, 6:13, 7:10, 9:1, 9:8, 9:15, 10:13, 10:22, 11:19, 12:1, 12:18, 13:11, 14:8, 14:25, 15:12, 16:9, 16:15, 17:11, 18:1, 18:9, 18:12, 21:10, 22:8, 22:15, 22:19, 23:11, 23:24, 24:4, 24:8, 24:19, 24:25, 25:12, 25:19, 26:4, 26:16, 26:18, 26:22, 27:3, 27:8, 27:11, 28:14, 28:17, 28:22, 28:25, 29:19, 29:24, 30:3, 30:13, 30:21, 31:1, 31:6, 31:10, 31:19, 31:25,

32:5, 32:15, 32:23, 33:1, 33:8, 33:18, 34:19, 34:23, 35:19, 35:24, 36:2, 37:12, 37:19, 37:24, 39:21, 41:17, 42:4, 42:7, 43:12, 43:19, 43:23, 43:25, 44:13, 44:15, 45:10, 45:13, 46:10, 46:17, 47:6, 47:11, 47:24, 48:4, 48:22, 48:24, 49:10, 49:16, 50:3, 50:9, 50:19, 50:25, 51:9, 51:20, 51:23, 52:10, 53:2, 53:8, 53:17, 53:22, 54:10, 54:16, 55:16, 55:19, 55:22, 56:1, 56:7, 56:9, 56:16, 56:20, 57:14, 57:19, 57:24, 58:4, 58:10, 58:21, 59:2, 59:13, 59:15, 59:20, 60:7, 60:13, 61:7, 61:13, 62:11, 62:16, 62:21, 62:23, 63:11, 64:1, 64:5, 67:11, 67:22, 70:3, 70:7, 70:9, 70:18, 71:11, 72:3, 72:6, 72:18, 72:20, 73:11, 74:7, 74:15, 75:7, 75:20, 75:22, 75:24, 78:20, 79:14, 79:21, 81:13, 82:3, 82:7, 82:15, 82:20, 82:23, 83:4, 83:16, 83:21, 84:4, 84:11, 84:13, 84:19, 85:8, 86:1, 86:15, 86:25, 87:8, 87:16, 87:23, 88:18, 88:24, 89:15, 89:19, 90:2, 90:6, 90:20, 91:2, 91:11, 91:25, 92:2, 92:7, 92:9, 92:15, 92:17, 93:4, 93:15, 93:20, 93:25, 94:4, 94:6, 94:13
**theory** [6] - 16:18, 48:16, 49:2, 60:21, 71:19, 82:12
**therefore** [1] - 73:23
**they've** [1] - 76:20
**Thiessen** [1] - 56:3
**thin** [1] - 80:13
**thinking** [1] - 27:1
**third** [11] - 13:3, 26:9, 27:10, 29:6, 30:14, 30:19, 30:23, 59:15, 76:2, 91:6, 91:8

**third-party** [2] - 26:9, 27:10
**thirty** [1] - 72:20
**thirty-three** [1] - 72:20
**threat** [2] - 9:23, 10:18
**Three** [7] - 12:23, 13:4, 49:18, 51:12, 51:13, 51:15, 91:4
**three** [2] - 72:20, 89:23
**tidied** [1] - 93:16
**ties** [1] - 35:11
**tinnitus** [2] - 56:12, 56:13
**together** [6] - 12:19, 14:15, 14:21, 15:5, 17:6, 17:25
**tomorrow** [1] - 92:3
**took** [5] - 39:13, 40:13, 41:22, 42:12, 43:15
**top** [3] - 8:19, 9:5, 12:24
**totally** [2] - 34:9, 89:5
**towards** [2] - 8:8, 88:1
**tracks** [2] - 75:9, 77:18
**trading** [1] - 38:13
**transacted** [1] - 69:12
**transaction** [22] - 76:5, 76:7, 76:9, 76:24, 77:15, 77:24, 78:3, 78:8, 78:19, 79:6, 79:8, 79:13, 79:16, 80:2, 80:6, 80:8, 80:22, 81:4, 90:14, 90:16, 90:17
**transcription** [1] - 95:10
**transfer** [11] - 76:15, 76:25, 78:4, 79:2, 79:25, 80:3, 80:8, 80:15, 80:17, 81:2, 90:12
**transport** [1] - 71:17
**Transportation** [1] - 73:14
**transportation** [1] - 73:16
**transported** [2] - 74:5, 74:20
**transporting** [1] - 71:16
**trial** [9] - 8:6, 13:23, 14:11, 36:11, 57:25, 85:15, 85:17, 88:13, 94:11
**trick** [2] - 21:23, 26:5
**triggers** [1] - 36:8
**trouble** [1] - 13:1
**true** [8] - 6:5, 6:11,

28:22, 34:17, 48:4, 66:2, 89:13, 95:10
**try** [2] - 22:24, 23:8
**trying** [8] - 17:3, 20:6, 22:15, 22:16, 32:24, 79:17, 86:15, 87:18
**Two** [3] - 49:21, 63:23, 74:17
**two** [41] - 5:18, 18:20, 29:8, 37:13, 44:11, 47:8, 52:7, 54:1, 57:22, 57:25, 61:20, 63:5, 63:21, 63:25, 64:20, 64:24, 65:4, 65:5, 65:23, 66:7, 68:10, 68:11, 68:16, 68:17, 68:20, 68:22, 72:24, 75:25, 77:14, 81:5, 89:22, 90:16, 91:20, 91:23, 91:25, 92:10, 92:11, 92:19, 93:6, 94:2
**two-hour** [1] - 92:10
**two-stage** [1] - 90:16
**two-step** [1] - 77:14
**type** [1] - 75:9
**types** [1] - 75:10
**typically** [1] - 9:20
**typo** [2] - 55:5, 70:5

## U

**U.S** [3] - 2:3, 2:7, 78:6
**U.S.D.J** [1] - 1:18
**unavailability** [1] - 85:9
**uncalled** [2] - 84:6, 84:25, 85:1
**under** [25] - 4:7, 12:23, 13:3, 29:2, 32:3, 32:4, 38:4, 51:2, 58:11, 59:15, 61:14, 70:17, 72:11, 72:14, 72:23, 72:25, 73:5, 74:8, 74:12, 74:17, 80:17, 83:8, 89:21, 90:17
**underlying** [3] - 66:6, 68:19, 84:10
**undermines** [1] - 14:22
**understood** [3] - 15:11, 31:4, 34:10
**undertaking** [18] - 15:16, 15:17, 15:22, 15:25, 16:5, 16:11, 16:25, 17:8, 17:13, 18:2, 18:9, 18:15, 18:16, 20:10, 20:15, 22:22, 22:25, 23:9

**United** [17] - 71:24, 72:2, 72:4, 72:5, 72:7, 73:15, 73:17, 73:20, 74:5, 74:6, 74:9, 74:20, 74:21, 75:2, 75:3, 95:7, 95:19
**UNITED** [3] - 1:1, 1:4, 95:3
**unlawful** [1] - 65:20
**unlawfully** [1] - 71:16
**unless** [3] - 39:21, 39:23, 51:12
**unlike** [1] - 10:8
**unnecessarily** [1] - 28:8
**unnecessary** [4] - 10:1, 10:14, 10:17, 84:15
**up** [20] - 7:7, 24:20, 29:5, 29:10, 29:17, 33:12, 40:20, 51:20, 52:18, 53:3, 56:25, 57:16, 73:16, 80:5, 87:2, 88:13, 92:23, 93:16, 93:21, 94:12
**US** [1] - 2:14
**USC** [1] - 66:3
**useful** [1] - 57:15
**uses** [4] - 25:6, 26:10, 26:20, 27:13

## V

**various** [1] - 45:19
**vast** [1] - 85:5
**venture** [6] - 11:9, 13:17, 13:18, 14:1, 14:2, 14:5
**venturer** [1] - 13:24
**venue** [19] - 7:4, 7:8, 34:7, 34:14, 34:18, 75:17, 75:22, 76:1, 76:15, 76:22, 77:2, 77:14, 78:8, 78:9, 78:12, 79:1, 79:9, 81:4, 90:10
**verdict** [2] - 3:9, 3:10
**version** [3] - 8:7, 29:16, 76:18
**versus** [2] - 59:10, 79:13
**view** [2] - 21:24, 85:1
**viewed** [1] - 80:16
**violate** [1] - 66:3
**violation** [5] - 49:14, 49:22, 69:3, 69:18, 69:19
**violative** [2] - 18:5, 19:2

**voice** [3] - 20:6, 32:25, 56:5

## W

**waive** [1] - 4:2
**wants** [3] - 9:1, 23:5, 28:14
**Washington** [1] - 2:9
**ways** [3] - 29:8, 39:10, 45:5
**weigh** [1] - 88:3
**well-known** [1] - 10:9
**white** [3] - 29:9, 29:15, 31:15
**whole** [10] - 11:22, 19:21, 23:10, 51:25, 59:1, 68:4, 80:21, 84:14, 86:25, 88:19
**Widiono** [1] - 57:9
**willful** [1] - 66:11
**willfully** [11] - 64:15, 65:16, 66:19, 66:20, 66:24, 67:5, 67:16, 67:18, 67:21, 67:22, 67:24
**win** [1] - 14:15
**wire** [4] - 52:14, 53:12, 53:16, 54:14
**wires** [2] - 53:19, 53:21
**withdrawal** [42] - 4:11, 4:13, 5:12, 5:21, 5:22, 6:18, 7:1, 7:14, 34:21, 34:24, 35:7, 35:20, 36:16, 36:18, 37:21, 38:23, 39:8, 39:12, 40:3, 41:2, 43:15, 44:4, 45:5, 45:15, 46:20, 46:23, 47:16, 47:23, 47:24, 47:25, 48:8, 60:18, 60:24, 70:10, 70:15, 70:20, 70:23, 71:7, 71:8, 82:11, 83:13, 83:19
**withdrew** [7] - 4:22, 41:16, 48:8, 48:13, 49:4, 60:19, 70:24
**witness** [5] - 85:2, 85:16, 86:13, 86:20, 88:11
**Witnesses** [1] - 89:22
**witnesses** [12] - 24:14, 24:15, 84:6, 84:23, 84:25, 85:5, 85:6, 88:10, 88:16, 88:19, 88:23, 89:17
**word** [6] - 18:4, 26:11, 34:2, 35:24, 62:14,

77:13
**words** [1] - 41:5
**worker** [1] - 65:22
**works** [1] - 28:25
**worth** [1] - 83:23
**written** [1] - 12:17
**wrote** [1] - 50:15

## Y

**years** [3] - 56:12, 85:21, 87:14
**yesterday** [1] - 3:4
**York** [3] - 2:8, 2:14, 57:23