1                UNITED STATES DISTRICT COURT                10:01
                   DISTRICT OF CONNECTICUT
2

3    _____
                                     )
4    UNITED STATES OF AMERICA,       )
                                     ) No. 3:12-CR-238 (JBA)
5                  Plaintiff,        )
                                     ) November 7, 2019
6                                    )
     v.                              ) 10:01 a.m.
7                                    )
                                     ) 141 Church Street
8                                    ) New Haven, Connecticut
     LAWRENCE HOSKINS,               )
9                                    )
                   Defendant.        )
10   _____)

11

12

13                        JURY TRIAL

                         VOLUME VIII
14

15

16

17   B E F O R E:

18          THE HONORABLE JANET BOND ARTERTON, U.S.D.J.
                        AND A JURY
19

20

21

22

23

24          Official Court Reporter:
            Melissa J. Cianciullo, RMR, CRR, CRC
25          (203) 606-1794

```
 1   A P P E A R A N C E S:

 2   For the Government:

 3        DAVID E. NOVICK, AUSA
          U.S. Attorney's Office - NH
 4        157 Church Street, 23rd Floor
          New Haven, CT 06510
 5        (203) 821-3700
          E-mail: david.novick@usdoj.gov
 6
          DANIEL S. KAHN, ESQ.
 7        LORINDA LARYEA, ESQ.
          U.S. Department of Justice
 8        Fraud Section, Criminal Division
          1400 New York Avenue, N.W.
 9        Room 11308
          Washington, D.C., 20005
10        Email: daniel.kahn@usdoj.gov
                 lorinda.laryea@usdoj.gov
11
     For the Defendant:
12
          CHRISTOPHER J. MORVILLO, ESQ.
13        DANIEL SILVER, ESQ.
          BENJAMIN K. PEACOCK, ESQ.
14        Clifford Chance US LLP - NY
          New York, NY 10019-6131
15        (212) 878-8000
          E-mail: christopher.morvillo@cliffordchance.com
16                daniel.silver@cliffordchance.com
                  benjamin.peacock@cliffordchance.com
17
          BRIAN E. SPEARS, ESQ.
18        Spears Manning & Martini LLC
          2425 Post Road, Suite 203
19        Southport, CT 06890
          (203) 292-9766
20        E-mail: bspears@spearsmanning.com

21                                                    09:31

22                                                    09:31

23                                                    09:31

24

25
```

| | | |
|---|---|---|
| 1 | (Jury begins deliberating, 9:40 a.m.) | 10:05 |
| 2 | THE COURT:  So, Counsel, we have a note from | 10:01 |
| 3 | Juror Number 4 given to the courtroom deputy not | 10:01 |
| 4 | opened until it got to me identifying that Juror | 10:01 |
| 5 | Number 4's husband has been working as a fireman on a | 10:01 |
| 6 | job in upper New York City for Alstom.  And you've | 10:01 |
| 7 | read the rest with respect to why she couldn't have | 10:01 |
| 8 | notified us earlier. | 10:01 |
| 9 | If she had been a -- during jury selection | 10:01 |
| 10 | she had identified that her husband was on a job | 10:01 |
| 11 | working for Alstom, we likely would have excused her, | 10:02 |
| 12 | right? | 10:02 |
| 13 | MR. MORVILLO:  I think we likely would have | 10:02 |
| 14 | requested that, Judge. | 10:02 |
| 15 | THE COURT:  Yeah. | 10:02 |
| 16 | MR. NOVICK:  I'm not -- well, I think we | 10:02 |
| 17 | would have voir dired her, Your Honor.  Given that | 10:02 |
| 18 | he's doing -- as I understand, reading from the note, | 10:02 |
| 19 | a subcontractor on a job for Alstom.  Now, he doesn't | 10:02 |
| 20 | work for Alstom.  We would have presumably voir dired | 10:02 |
| 21 | her as to whether her husband's being a fireman on a | 10:02 |
| 22 | subcontracting job for Alstom would affect her | 10:02 |
| 23 | ability to be fair and impartial, and she would have | 10:02 |
| 24 | said what she says. | 10:02 |
| 25 | MR. SILVER:  I think it's "foreman."  Is | 10:02 |

1   that -- I think it's "foreman," not "fireman."          10:02

2        MR. NOVICK:  Oh, foreman.  Either way, being       10:02

3   a foreman on a subcontractor job, I don't think he's    10:02

4   employed by Alstom.                                     10:02

5        MR. KAHN:  And it's also -- I mean, if this        10:02

6   were a case against Alstom, certainly.  But this is a   10:03

7   different Alstom division that doesn't relate to the    10:03

8   subject matter we're dealing with.                      10:03

9        MS. LARYEA:  I was saying it's three weeks.        10:03

10  I don't think -- I don't know whether he started        10:03

11  working as a foreman on this job after jury selection   10:03

12  which was at this point almost a month ago.             10:03

13       MR. MORVILLO:  The note also calls into            10:03

14  question as to whether she was discussing the case      10:03

15  with her husband.                                       10:03

16       THE COURT:  Well, it certainly somehow came        10:03

17  to her attention that there was a particular interest   10:03

18  on her part as to who her husband was working for       10:03

19  even as a subcontractor.  It's not very -- I mean,      10:03

20  they haven't started deliberating, and we can bring     10:03

21  an alternate in without much adieu.  It seems to me     10:03

22  that that's not a bad idea.                             10:03

23       MR. NOVICK:  At risk, Your Honor, of               10:04

24  respectfully disagreeing, I think that we could very    10:04

25  easily voir dire her.  We could ask her whether this    10:04

1    would at all impact her ability to be fair and          10:04

2    impartial.  I do recognize this is the juror who's       10:04

3    been late, and I understand where the Court is coming    10:04

4    from.  But I think that what I see in the note here      10:04

5    to me does not necessarily suggest a conflict.  It is    10:04

6    a couple steps removed.  It does not have any bearing    10:04

7    on the facts of this case.  Alstom doesn't even --       10:04

8    isn't even in the power business anymore.  I think       10:05

9    this is transportation.  I can't fathom how this         10:05

10   would impact her -- and the case isn't against          10:05

11   Alstom, as my colleague indicated.  I can't fathom      10:05

12   how this would impact her otherwise stated view that    10:05

13   she can be fair and impartial from jury selection.      10:05

14        THE COURT:  She made that view clear.  I           10:05

15   mean, she expressed that view or that the contrary      10:05

16   did not exist before she knew that Alstom was in some   10:05

17   way in her life.                                        10:05

18        MR. NOVICK:  Absolutely.  So I don't think --      10:05

19        THE COURT:  And where we had plenty of jurors      10:05

20   to utilize at that point, it would not have been a      10:05

21   bad idea to excuse her lest the fact that Alstom,       10:05

22   which may not be a party but is certainly prominently   10:06

23   displayed throughout this trial.                        10:06

24        MR. NOVICK:  Certainly.  And I think that          10:06

25   if -- certainly if she were doing a job that related    10:06

1    some way to this case.  But this is -- first of all,          10:06

2    she obviously didn't know it at the time so there's          10:06

3    no way we could have known it at the time.  So              10:06

4    there's no -- you know, it's hard to go back and            10:06

5    figure out what she would have said were we to have          10:06

6    inquired.                                                    10:06

7         THE COURT:  I know that.  Let me also remind           10:06

8    you that I believe this is the juror who said I             10:06

9    cannot stay past Friday.  And I don't know whether          10:06

10   these jurors are going to be able to complete by            10:06

11   Friday.  If that comes up, we're then going to have         10:06

12   to bring in an alternate.                                   10:06

13        MR. NOVICK:  Well, my worry, Your Honor, is I          10:06

14   don't think she was the only one to have had an             10:06

15   issue.  Was there another juror who said they had to        10:06

16   go?                                                         10:07

17        THE COURT:  I don't think so.                          10:07

18        MR. NOVICK:  That was the only one.                    10:07

19        THE COURT:  I don't want to have to start the          10:07

20   deliberations over with an alternate that will take         10:07

21   them back through two days of deliberation.                 10:07

22        MR. NOVICK:  So my request, Your Honor, would          10:07

23   be to voir dire her and we can ask both questions           10:07

24   then.  You know, number one, in light of what you've        10:07

25   told us, can you reiterate that you can be fair and         10:07

1   impartial in this instance.  Is this going to affect          10:07

2   your evaluation of the case.  She certainly doesn't           10:07

3   indicate that in the note.  She's, I think, doing             10:07

4   what she should do which is she found something out,          10:07

5   she's letting us know which I think she should do.            10:07

6   And then we can also ask her whether -- if the                10:07

7   deliberations were to go beyond this week, whether            10:07

8   that continues to cause a problem.                            10:07

9        MR. MORVILLO:  Your Honor, I think that what             10:07

10  is clear from the note is that her husband is working         10:07

11  as a subcontractor for a company that has been                10:07

12  prominently displayed throughout this and in a way is         10:08

13  portrayed as a victim of the conduct that Mr. Hoskins         10:08

14  is accused of.  And I think it's -- well, they've             10:08

15  obviously resolved the case.                                  10:08

16       But there have been a number of witnesses who            10:08

17  have testified who were previously employed by                10:08

18  Alstom, I think all of them except for Agent Coleman.        10:08

19  And there's, I think, just a risk here that she could         10:08

20  be swayed by the fact that her husband is now working        10:08

21  for this company, that they may have some more                10:08

22  credibility or that they -- that her judgment could           10:08

23  be affected by the fact that her husband is working           10:08

24  on matters relating to Alstom in this case.                   10:08

25       MR. NOVICK:  I can't fathom, Your Honor, that            10:08

| | | |
|---|---|---|
| 1 | that's the case. | 10:08 |
| 2 | THE COURT:  Let's voir dire her.  If neither | 10:08 |
| 3 | side think there's a problem with pulling her out of | 10:08 |
| 4 | the deliberations, let me voir dire her and see, | 10:09 |
| 5 | particularly with regard to the scheduling. | 10:09 |
| 6 | The other question is the jurors would like | 10:09 |
| 7 | to attend a naturalization.  I have one that I had | 10:09 |
| 8 | transferred off at 11 but I can recall if we let them | 10:09 |
| 9 | come to a naturalization.  Your views?  We'll just | 10:09 |
| 10 | put them back in the jury box. | 10:09 |
| 11 | MR. NOVICK:  That's a first for me, Your | 10:09 |
| 12 | Honor. | 10:09 |
| 13 | MR. MORVILLO:  Me as well.  How long is the | 10:09 |
| 14 | naturalization? | 10:09 |
| 15 | THE COURT:  About 40 minutes. | 10:09 |
| 16 | MR. NOVICK:  So ... | 10:09 |
| 17 | MR. MORVILLO:  I certainly wouldn't want to | 10:09 |
| 18 | deprive them of an opportunity to watch Your Honor in | 10:09 |
| 19 | another setting.  I do think it's a bit of a | 10:09 |
| 20 | distraction for them to do that at the outset of such | 10:09 |
| 21 | important work.  But ultimately it's 40 minutes, I | 10:10 |
| 22 | don't have an objection. | 10:10 |
| 23 | MR. NOVICK:  I suppose I don't have any | 10:10 |
| 24 | objection certainly to the concept, Your Honor.  My | 10:10 |
| 25 | worry is we are at the -- we are on a Thursday before | 10:10 |

1   a long weekend, and I think that -- and I don't know                10:10

2   what they voted on in terms of how much time they                   10:10

3   plan on spending in court every day.                                10:10

4           THE COURT:  I don't know that they have                     10:10

5   voted.                                                              10:10

6           MR. NOVICK:  But that's a -- relatively                     10:10

7   speaking, a chunk of time.  But I defer entirely to                 10:10

8   the Court on that.                                                  10:10

9           MR. MORVILLO:  Is that something that they                  10:10

10  all want to do or is it -- what time is the                         10:10

11  naturalization?  You said 11.                                       10:10

12          THE COURT:  My view is they should stick to                 10:10

13  the program at hand, and we can let them know when                  10:10

14  the next naturalizations are.                                       10:11

15          MR. MORVILLO:  That's a great idea.                         10:11

16          THE COURT:  And they can come back to court                 10:11

17  and be welcome to attend that.                                      10:11

18          MR. NOVICK:  That seems right to the                        10:11

19  government, Your Honor.                                             10:11

20          MR. MORVILLO:  Hopefully they're all                        10:11

21  naturalized.                                                        10:11

22          THE COURT:  We're going to have one more                    10:11

23  problem potentially Friday afternoon.  I haven't                    10:11

24  heard from the juror.                                               10:11

25          MR. MORVILLO:  With prayers?                                10:11

1      THE COURT:  Uh-huh.  I haven't heard from him          10:11

2   with respect to whether he thinks that this work          10:11

3   would be sufficiently important that he will forego       10:11

4   prayers, but I'm waiting for that communication.          10:11

5      MR. NOVICK:  Understood.                                10:11

6      THE COURT:  All right.  We'll call in Juror            10:11

7   Number 4.  We will tell the jurors that really we'd       10:11

8   prefer that they keep going and come to another           10:11

9   naturalization another time.  We will give them the       10:11

10  schedule.                                                  10:12

11      And we will see whether Juror Number 4 would         10:12

12  be able to stay with us if this deliberation runs         10:12

13  into next week.                                            10:12

14      MR. NOVICK:  I think that's reasonable, Your         10:12

15  Honor.  I would say that if she says it's going to be     10:12

16  difficult, I think we then wait and see whether           10:12

17  deliberations do run until next week.                      10:12

18      THE COURT:  No.  I think if it's going to be         10:12

19  difficult and she can't do it, I'm going to excuse        10:12

20  her so I can get an alternate in at the beginning and     10:12

21  not have to redo all the deliberations with that          10:12

22  alternate.                                                 10:12

23      MR. MORVILLO:  I also, Your Honor, do think          10:12

24  it's important to re-emphasize to this juror that she     10:12

25  shouldn't be talking about the case outside               10:12

1    deliberations.                                      10:12

2         MR. NOVICK:  I don't think there's any         10:12

3    indication from this note that that's what she's    10:12

4    doing.  I think she had a conversation with her     10:12

5    husband.                                            10:12

6         THE COURT:  Let's hear from her.               10:12

7         (Proceedings moved to Courtroom 2.)            10:12

8         (Juror 4 entered proceedings, 10:17 a.m.)      10:17

9         THE COURT:  All right.  Juror Number 4, good   10:17

10   morning.                                            10:17

11        JUROR 4:  Good morning.                        10:17

12        THE COURT:  I've received your note which we   10:17

13   will mark as Court Exhibit A reflecting that your   10:17

14   husband is a subcontractor on a job for Alstom.     10:17

15        JUROR 4:  Correct.                             10:17

16        THE COURT:  That you just learned this and     10:17

17   you properly brought this to the Court's attention. 10:17

18        So my question to you is:  How did this fact   10:18

19   that your husband was a subcontractor for Alstom come 10:18

20   to your attention?                                  10:18

21        JUROR 4:  Well, he's been working there as     10:18

22   the foreman in Finger Lakes, New York.  And he works 10:18

23   at like many different plants and places, so I never 10:18

24   quite like asked him what plant or what company he  10:18

25   was doing work for.                                 10:18

```
1     So last night -- he's tentative to return        10:18
2   today -- he had mentioned something about the company  10:18
3   being called Alstom.  And he said like they have   10:18
4   places everywhere and in Paris.  And it like took me  10:18
5   a second.  This was over FaceTime -- not FaceTime,  10:18
6   over just regular phone call.  So then I questioned  10:18
7   him a few times and, I had asked him like to spell it  10:18
8   and I asked him what the logo looked like.  And then  10:19
9   I tried to like just stop from there because I didn't  10:19
10  want to like go to further.  And he's pretty vague in  10:19
11  response anyways when it comes to work stuff,      10:19
12  especially when he's on the road.  So he didn't   10:19
13  question why I didn't keep asking him about it.   10:19
14       But I would have told you weeks ago but,     10:19
15  again, I just never asked him.  I knew he was in New  10:19
16  York working and ...                              10:19
17       THE COURT:  So let me ask you the question.  10:19
18  Obviously when he said "Alstom," this, let's say,  10:19
19  caught your attention.                            10:19
20       JUROR 4:  Yes.                               10:19
21       THE COURT:  Do you think there is a risk of  10:19
22  any sort that knowing that your husband was working  10:19
23  for Alstom, API, albeit as a foreman on the       10:19
24  subcontracting job, is there any chance that that  10:20
25  is -- could influence your way of thinking about the  10:20
```

1    witnesses and the documents and the testimony in this          10:20

2    case which obviously involves Alstom?          10:20

3          JUROR 4:  I mean, I don't think so.  But I          10:20

4    had just found out last night.  And, I mean, he's          10:20

5    kind of on the road.  I have my son.  I've been kind          10:20

6    of busy.  I guess no.  I'm too busy to think about it          10:20

7    outside of like the courtroom anyways, and we're          10:20

8    not -- I'm not going to ask him about his work and          10:20

9    what he's done until after the case.  So it doesn't          10:20

10   affect it, I guess, if that's an okay answer.          10:20

11         THE COURT:  So do you think that in any way          10:20

12   your view or your -- how you assess the credibility          10:21

13   of witnesses or the inferences that you might put or          10:21

14   draw from the documents, the e-mails and so forth          10:21

15   that are in evidence could be influenced by the fact          10:21

16   that -- your husband's relationship with Alstom?          10:21

17         JUROR 4:  I don't think so.  They're kind of          10:21

18   two different atmospheres; and what we're on trial          10:21

19   for and what he's doing, they're not the same playing          10:21

20   field.  So I don't think so.          10:21

21         THE COURT:  When you came in this morning,          10:21

22   did you mention to your fellow jurors in any way that          10:21

23   you just found out your husband had been doing work          10:21

24   in conjunction with Alstom?          10:22

25         JUROR 4:  I mentioned it to the person next          10:22

1     to me, yeah.  When the note came, I --                  10:22

2          THE COURT:  Do you recall what you said?          10:22

3          JUROR 4:  There was like the note and -- that     10:22

4     I had to give you.  And it was kind of like when       10:22

5     you're in school and you give a note you were taking   10:22

6     to the teacher, you got caught out.  And I just        10:22

7     wanted to say like it's not about anyone or anything   10:22

8     besides myself.  And I was speaking to one of the      10:22

9     jurors last night about how my husband is doing work,  10:22

10    and I said what a small world it is.  That's what      10:22

11    that note was about.                                   10:22

12         THE COURT:  So you knew yesterday that your       10:22

13    husband was working for Alstom?                        10:22

14         JUROR 4:  I knew he was in New York working       10:22

15    at a company that engineered and fixed trains.  I did  10:22

16    not know that it was Alstom until last night on the    10:22

17    phone with him, he had mentioned it, like the name of  10:22

18    the company.  Like he was going to sign out a permit   10:23

19    or something at Alstom and the place that he's         10:23

20    working at.  So, no, I didn't know it was that         10:23

21    company until last night.                              10:23

22         THE COURT:  So perhaps I misunderstood.  I        10:23

23    thought you said last night as you all were leaving,   10:23

24    you said something to one of the other jurors about    10:23

25    small world.                                           10:23

1    JUROR 4:  Oh, no, that was kind of this    10:23

2  morning.  But last night he had asked -- because with    10:23

3  the time and everything, I was stressed out because    10:23

4  my husband's in New York working.  He had asked --    10:23

5  and we kind of went over time and with childcare and    10:23

6  stuff.  And I said, you know, I'm kind of like a    10:23

7  single mom this week.  He asked what my husband was    10:23

8  doing.  I said he's working at a plant with train --    10:23

9  like taking care of trains.  I don't know.  I'm    10:23

10  trying to like recall it, but I'm kind of nervous    10:23

11  right now so I can't.    10:23

12    THE COURT:  All right.  Let me move to a    10:23

13  different subject.    10:24

14    When you were at jury selection, I have a    10:24

15  recollection that you described that it would be --    10:24

16  that if deliberations continue past this Friday, that    10:24

17  that would create difficulties for you.    10:24

18    JUROR 4:  That's correct.    10:24

19    THE COURT:  There is a possibility that that    10:24

20  will happen.  What is -- and that you would be    10:24

21  required to come back Tuesday and perhaps Wednesday    10:24

22  if deliberations haven't been completed by Friday.    10:24

23  What happens?    10:24

24    JUROR 4:  So I'm heading a United Way    10:24

25  campaign on Tuesday, and that's when I hand out    10:24

1   pledge forms and I receive pledge forms, and it's          10:24

2   like a luncheon that I'm hosting at my job.  I'm the       10:24

3   campaign coordinator, so I have to be there               10:24

4   preferably Monday too so I can set up.                    10:25

5          THE COURT:  Monday is a holiday.                   10:25

6          JUROR 4:  Well, not at my job.  We don't          10:25

7   consider Veteran's Day.                                   10:25

8          THE COURT:  It's a court holiday.                  10:25

9          JUROR 4:  Okay.  Well, that's cool.  But,         10:25

10  yeah, Tuesday I wouldn't be able to come.  And I had      10:25

11  talked about that prior too.  But that wasn't my MO       10:25

12  or whatever for mentioning my husband works at            10:25

13  Alstom.                                                   10:25

14         THE COURT:  I understand that.  I'm just           10:25

15  recalling the two things.                                 10:25

16         Counsel, any questions for Juror Number 4?         10:25

17         MR. NOVICK:  No, Your Honor.                       10:25

18         MR. MORVILLO:  No, Your Honor.                     10:25

19         THE COURT:  Would you wait just one moment.        10:25

20         Counsel, may I see you.                            10:25

21         (Sidebar commenced at 10:25 a.m.)                  10:25

22         THE COURT:  All right.  Counsel, although          10:26

23  there is no apparent cause reason to excuse her, the      10:26

24  fact that she cannot come in on Tuesday is a concern.     10:26

25  I do not know whether this jury is going to complete      10:26

1    their work by the end of Friday.  I do not -- knowing        10:26

2    that she cannot come in on Tuesday, I do not want to        10:26

3    have to start all over on Tuesday with a new juror        10:26

4    and thereby extend their obligations by at least an        10:26

5    equal amount of time into the next week.        10:26

6            Is there any opposition to my excusing her        10:26

7    and bringing in an alternate at this time?        10:26

8            MR. NOVICK:  Can I just have one moment to        10:26

9    talk to my colleagues, Your Honor?        10:26

10           My only request, Your Honor, is I don't know        10:26

11   that this juror understands that the consequence of        10:27

12   her saying now that she can't come in on Tuesday is        10:27

13   that all of the work she's been doing for the last        10:27

14   two weeks, she's just going to leave.  I don't        10:28

15   know -- I think United Way is a great organization,        10:28

16   does great work.  I don't know that there's not        10:28

17   somebody who can fill in for her.  And if she        10:28

18   decides -- she did tell us about this.  If she        10:28

19   decides that that's what she prefer to do, it's fine        10:28

20   with the government.  I don't have any -- I would not        10:28

21   object to excusing her.  If she understands the        10:28

22   consequence of saying this now and so we're going to        10:28

23   excuse her, then she may change her mind.  That is my        10:28

24   thought.        10:28

25           MR. MORVILLO:  We don't have any objection to        10:28

| | | |
|---|---|---|
| 1 | her being excused, Your Honor, but I also don't | 10:28 |
| 2 | disagree with what Mr. Novick said. | 10:28 |
| 3 | THE COURT:  Let me ask her to make that call. | 10:28 |
| 4 | Okay? | 10:28 |
| 5 | MR. NOVICK:  Thank you. | 10:28 |
| 6 | (Sidebar concluded, 10:28 a.m.) | 10:28 |
| 7 | THE COURT:  All right.  Juror Number 4, | 10:28 |
| 8 | Ms. Juror Number 4, if deliberations in this case in | 10:28 |
| 9 | fact continue past the end of this week and all the | 10:29 |
| 10 | jurors have to come back on Tuesday, is your | 10:29 |
| 11 | obligation at work such that you just couldn't come | 10:29 |
| 12 | back or it would be very problematic for you to come | 10:29 |
| 13 | back?  Or in anticipation that you might be needed on | 10:29 |
| 14 | Tuesday and thereafter, could you and do you wish to | 10:29 |
| 15 | stay as a juror in this case? | 10:29 |
| 16 | JUROR 4:  I'm going to say it would be | 10:29 |
| 17 | problematic at the time that I'm doing the campaign | 10:29 |
| 18 | and when the donations are due and such.  I'm already | 10:30 |
| 19 | cutting it pretty short.  I've had to do like | 10:30 |
| 20 | reschedules not for the campaign itself but just, you | 10:30 |
| 21 | know, between jury duty and other stuff at work | 10:30 |
| 22 | scheduling-wise.  I have to do it Tuesday.  It's | 10:30 |
| 23 | going to be nearly impossible to have someone else do | 10:30 |
| 24 | it.  This is kind of my job role and function.  Yeah, | 10:30 |
| 25 | it's going to be problematic. | 10:30 |

1      THE COURT:  So my question is:  Given that          10:30

2  potential and knowing that potential now, are you      10:30

3  asking to be excused?  Recognizing that all of this    10:30

4  time that you've spent listening to the evidence in    10:30

5  this case and the law will not be able to be put to    10:30

6  use?                                                   10:30

7      JUROR 4:  Unfortunately, yes.  I've already        10:30

8  made a lot of scheduling conflicts or had a lot of     10:30

9  schedule conflicts and rescheduled.  And I was         10:31

10  told -- I asked twice about making sure the case      10:31

11  would be done by Friday and I was told twice that it  10:31

12  was on track.  So unfortunately, I think, yes, I'd    10:31

13  request kindly to withdraw myself, unfortunately.     10:31

14      THE COURT:  So when we say is case is on          10:31

15  track, we mean that the evidence will be completed    10:31

16  timely.  We have no way to anticipate or predict how  10:31

17  long it will take jurors to do the conscientious      10:31

18  deliberative job that they have ahead of them.        10:31

19      JUROR 4:  I was not aware of that.                10:31

20      THE COURT:  I'm sorry.  Which were you           10:31

21  unaware of?  Oh, that when I said that -- although    10:31

22  there's no reason you would have keyed on this, I     10:31

23  said evidence would be completed before by Friday.    10:31

24      JUROR 4:  Okay.                                   10:32

25      THE COURT:  And that does not mean and we do      10:32

1    not want to hurry in any way the deliberative phase    10:32

2    of the case which is as critically as important as    10:32

3    anything.    10:32

4         JUROR 4:  Okay.  Yeah.  I'm sorry.  I    10:32

5    misunderstood the whole process apparently.    10:32

6         THE COURT:  Well, that is perhaps    10:32

7    understandable.  It is not a way that I can be    10:32

8    particularly clear.  And, in fact, we do have these    10:32

9    two days.  I just don't know whether or not, given    10:32

10   the fact that there are twelve counts to be    10:32

11   considered, et cetera, that the jurors will be able    10:32

12   to complete that work by Friday.  If they are not --    10:32

13   if you all are not able to complete it by the end of    10:32

14   Friday and you cannot return on Tuesday, I then need    10:32

15   to bring one of our alternates in to replace you.  If    10:33

16   I bring one of the alternates in to replace you, the    10:33

17   jurors then need to begin the deliberation anew with    10:33

18   that new alternate.  And so that's the consequence    10:33

19   from the case side of things.    10:33

20        You are welcome to stay.  You are welcome to    10:33

21   do your work, do your work diligently but not do your    10:33

22   work with your fellow jurors feeling the pressure to    10:33

23   get it done by Friday.  That's my concern is that    10:33

24   this is not something that we rush.    10:33

25        Do you think you would feel pressured to in    10:34

1    any way shortcut your own thought process or to          10:34

2    encourage others to speed up theirs so that you could    10:34

3    be finished by Friday?                                    10:34

4              JUROR 4:  Possibly.  I just am not going to     10:34

5    say I would rush it or influence others.  But I do        10:34

6    know I would ultimately have to excuse myself after       10:34

7    Friday which would then start deliberations all over      10:34

8    again for the alternate.  So it's kind of not only        10:34

9    going to like lose time for myself but kind of            10:34

10   disrespect the other fellow jurors knowing if we          10:34

11   didn't get it done, I would have to make them do it       10:35

12   all over again on my behalf.  So I just -- I'm sorry.     10:35

13   I can't -- this is very stressful, this like one on       10:35

14   one.  Did I answer that okay?                             10:35

15             THE COURT:  Yes, you did.                        10:35

16             JUROR 4:  Sorry.                                 10:35

17             THE COURT:  Any further questions for Juror      10:35

18   Number 4?                                                 10:35

19             MR. NOVICK:  No, Your Honor.                     10:35

20             MR. MORVILLO:  No, Your Honor.                   10:35

21             THE COURT:  All right.  I think it's best at     10:35

22   this point, as you say, to accept your request to be      10:35

23   excused so as not to put any undue or even any            10:35

24   subconscious pressure on shortcutting this process.       10:35

25             And so I'm going to excuse you as a juror in    10:35

1    recognition of your concern that if you don't finish    10:35
2    by Friday, you, as you say, disrespect your fellow      10:36
3    jurors by making them redo it.                          10:36
4         Does that sound satisfactory to you?              10:36
5         JUROR 4:  Yes.  Thank you, Your Honor.  I         10:36
6    appreciate it.                                          10:36
7         THE COURT:  All right.  Well, thank you very      10:36
8    much for your service.  And if you would leave your     10:36
9    notebooks and so forth in the jury room, you are        10:36
10   excused.                                                10:36
11        MR. MORVILLO:  Your Honor, may we approach         10:37
12   very briefly?                                           10:37
13        THE COURT:  Yes.  May I excuse Juror               10:37
14   Number 4?                                               10:37
15        MR. MORVILLO:  I just want to have a quick         10:37
16   chat, if we could.                                      10:37
17        THE COURT:  All right.                             10:37
18        (Sidebar commenced, 10:37 a.m.)                    10:37
19        MR. MORVILLO:  It's a rather unusual               10:37
20   circumstance for a juror to be present at the           10:37
21   beginning of deliberations and then to be excused.     10:37
22   And given that she says she spoke to one of the other  10:37
23   jurors about the relationship on the note that she     10:37
24   sent to you, I'm wondering whether it makes sense to   10:37
25   send some message back to the jury that they           10:37

1  shouldn't read anything into the fact that this juror          10:37

2  is excused or to direct this juror not to discuss it           10:37

3  any further with the jurors in the backroom.  It's             10:38

4  just a rather unusual event, and I'm wondering if the          10:38

5  other jurors will start to speculate about what                10:38

6  happened with her and given that she said to one of            10:38

7  the other jurors that her husband was associated with          10:38

8  Alstom, whether that juror will start to speculate             10:38

9  that there's something wrong with that.                        10:38

10          THE COURT:  I'm not sure she said that --             10:38

11          MR. NOVICK:  I don't think she did.                   10:38

12          THE COURT:  -- her husband was associated             10:38

13 with Alstom.                                                   10:38

14          MR. MORVILLO:  I thought that's what she had          10:38

15 indicated this morning.                                        10:38

16          MR. NOVICK:  She said last night on her way           10:38

17 out she was having a conversation, she was stressed            10:38

18 about her childcare issues and mentioned that he was           10:38

19 working in New York on a job.                                  10:38

20          THE COURT:  And today she said this note             10:38

21 doesn't have anything to do with anybody else here.            10:38

22          MR. MORVILLO:  I thought what she said, and I         10:38

23 may have misheard her, is she described to the juror           10:38

24 what she learned last night from her husband.                  10:38

25          MS. LARYEA:  No.  I think she just said it's          10:38

1    a small world, it's not nothing to do with anyone        10:39

2    here.                                                     10:39

3          THE COURT:  I will clarify.  I will also tell      10:39

4    the other jurors that she's unable to continue her        10:39

5    service --                                                10:39

6          MR. MORVILLO:  Thank you.                           10:39

7          THE COURT:  -- for personal reasons, and           10:39

8    we'll bring Number 8 in to take over and they'll just     10:39

9    begin anew.                                               10:39

10          Is there any objection to the course that I       10:39

11    have chosen here?                                        10:39

12          MR. NOVICK:  Not here.                             10:39

13          MR. MORVILLO:  Not from the defense.               10:39

14          (Sidebar concluded, 10:39 a.m.)                    10:39

15          THE COURT:  Can I clarify one thing?  When        10:39

16    you said that you discussed with at least one of the     10:40

17    other jurors this morning about the note that you        10:40

18    were going to give to the Court, refresh my              10:40

19    recollection on whether you told that juror that your    10:40

20    husband was working for or at an Alstom plant.           10:40

21          JUROR 4:  It would be at because --                10:40

22          THE COURT:  But you did mention that the          10:40

23    association between your husband and Alstom was the      10:40

24    subject matter of your note?                             10:40

25          JUROR 4:  Correct.  Well, actually, I don't       10:41

1    know if I like mentioned like word for word what was    10:41

2    on my note.  More so as --    10:41

3            THE COURT:  What I want to know is whether    10:41

4    the other jurors are aware that Alstom, whatever you    10:41

5    said about it, was the basis of your note, whether    10:41

6    the name "Alstom" was shared.    10:41

7            JUROR 4:  I'm going to say yes.    10:41

8            THE COURT:  Okay.  I need to address that    10:41

9    with them.  All right.    10:41

10           I will excuse you at your request, and you    10:41

11   may go and you may gather up your things.    10:41

12           And I will have the jurors brought in, and I    10:41

13   will have Juror Number -- Alternate Number 8 also    10:41

14   brought in.  Thank you.    10:41

15           JUROR 4:  Thank you, Your Honor.    10:41

16           (Pause from 10:41 a.m. to 10:44 a.m.)    10:43

17           MR. NOVICK:  Your Honor's proposed course has    10:44

18   not changed.  You're going ask the jurors or inform    10:44

19   the jurors that the juror has been excused for    10:44

20   personal reasons and not to speculate or let any of    10:44

21   that influence their deliberations but not    10:44

22   specifically voir dire anybody about what they heard    10:44

23   or Alstom or anything like that, correct?    10:44

24           THE COURT:  Yes.    10:44

25           MR. MORVILLO:  We agree with that, Your    10:44

| | | |
|---|---|---|
| 1 | Honor. | 10:44 |
| 2 | THE COURT:  Counsel, if you wish to be | 10:45 |
| 3 | seated, you may. | 10:45 |
| 4 | Are you bringing in also Number 8? | 10:45 |
| 5 | THE CLERK:  Yes. | 10:45 |
| 6 | THE COURT:  Thank you. | 10:45 |
| 7 | (Jury entered the proceedings, 10:46 a.m.) | 10:46 |
| 8 | THE COURT:  Good morning, ladies and | 10:46 |
| 9 | gentlemen.  Nice to see you again.  Please be seated. | 10:46 |
| 10 | I want to briefly tell you that personal | 10:46 |
| 11 | matters have arisen for Juror Number 4 and she has | 10:47 |
| 12 | asked to be excused.  Her reasons are fine and I have | 10:47 |
| 13 | excused her. | 10:47 |
| 14 | And thus Juror Number 8 comes back and joins | 10:47 |
| 15 | you.  That means, as you will recall, that you'll | 10:47 |
| 16 | need to start your deliberations over.  I don't know | 10:47 |
| 17 | how far you had already gotten.  But just start over. | 10:47 |
| 18 | Include him.  He is now one of your regular jurors. | 10:47 |
| 19 | And don't speculate about Juror Number 4's personal | 10:47 |
| 20 | reasons for requesting to be excused from the jury. | 10:47 |
| 21 | Okay? | 10:47 |
| 22 | And so if you would kindly carry on with your | 10:47 |
| 23 | deliberations. | 10:47 |
| 24 | You have asked or some of you have asked if | 10:47 |
| 25 | you could attend a naturalization which I think is a | 10:47 |

1  lovely sentiment.  I don't think you should do this                10:47
2  now.  I think you should commit your work to getting               10:48
3  finished on this.  I have the dates of other                       10:48
4  naturalizations that we will be having, and we would               10:48
5  welcome you and if you let me know you're coming,                  10:48
6  I'll make sure you get special seating.  November 21,              10:48
7  December 12 and December 27 at 9:30, 11:30 or 1:30.                10:48
8  And we would love to have you, but I think it would                10:48
9  be better to have you re -- orient your new juror and              10:48
10 carry on with your work.                                           10:48

11         All right?  Thank you very much.  You are                  10:48
12 excused.                                                           10:48

13         (Jury exited the proceedings, 10:48 a.m.)                  10:48

14         THE COURT:  All right.  Counsel, is there                  10:49
15 anything further?                                                  10:49

16         MR. NOVICK:  No, Your Honor.                               10:49

17         MR. MORVILLO:  No, Your Honor.                             10:49

18         THE COURT:  Then we are in recess.                         10:49

19         (Recess taken, 10:49 a.m. to 12:07 p.m.)                   10:49

20         THE COURT:  All right, Counsel.  You have a                12:07
21 copy of our latest jury note which will be marked as               12:07
22 Court B.  And you will see that we have a very                     12:07
23 careful jury who advises that the electronic version               12:07
24 of Government's 4 is not a hard copy of Exhibit 4.                 12:07
25 And their query is can they base their deliberations               12:08

1    using the paper copy, which of course the answer is    12:08

2    yes since those exhibits are the exhibits.    12:08

3        But what happened here?    12:08

4        MR. NOVICK:  Your Honor --    12:08

5        THE COURT:  You all may be seated.    12:08

6        MR. NOVICK:  So -- I will stand.  So the -- I    12:08

7    think what I would ask is if we can take back the    12:08

8    paper and make sure that that is accurate.  What    12:08

9    happened here, Your Honor, is that per -- well, two    12:08

10    things happened here.  One is I think from the time    12:08

11    we initially submitted exhibits until present, there    12:08

12    had been a renumbering of 1 through 7, the charts.    12:08

13    So that may be what's in play.    12:09

14        And then also per discussion with the Court,    12:09

15    the summary charts were edited slightly to reflect    12:09

16    the change in the indictment paragraph numbers.    12:09

17        But what appears to me to be happening here    12:09

18    is that what is in JERS as Exhibit 4 is actually    12:09

19    Exhibit 5 as it was admitted during the course of the    12:09

20    trial, because Exhibit 1 should have been the summary    12:09

21    chart of Indonesian officials.    12:09

22        Exhibit 4 that I was handed just now as a    12:09

23    printout from JERS I believe to be -- which is a    12:09

24    summary of Alstom Power, Inc. payments for PT    12:09

25    Gajendra, I believe should have been admitted or was    12:09

1  admitted as Exhibit 5.  They are the same documents                12:09

2  with the same information.                                         12:09

3         THE COURT:  So does that suggest that there's               12:10

4  no Exhibit 5 in JERS?                                              12:10

5         MR. NOVICK:  What it appears is they're the                 12:10

6  same, at least based on the note that I'm reading                  12:10

7  here.                                                              12:10

8         THE COURT:  I'm sorry.  What's the same?                    12:10

9         MR. NOVICK:  That what -- right now -- yes,                 12:10

10  Your Honor.  What I would surmise from this -- well,              12:10

11  I haven't seen -- did we get a copy of what is 5?                 12:10

12         MS. LARYEA:  No.  That's 4.  They're both 4.               12:10

13         THE COURT:  Do you want mine?                              12:10

14         MR. NOVICK:  Yes, Your Honor.                              12:10

15         So what Your Honor has is correct, the paper              12:10

16  copy.  What I'm looking at right now is the printout             12:10

17  from JERS.                                                        12:10

18         THE COURT:  That is Exhibit No. 5.                         12:10

19         MR. NOVICK:  This Exhibit 5 is accurate, has              12:10

20  the correct -- the edited --                                     12:10

21         THE COURT:  My question is:  Is there a JERS              12:10

22  Number 4 that's correct?                                         12:11

23         MR. NOVICK:  So what I saw from JERS Number 4            12:11

24  which I think is what the clerk just sent to me --              12:11

25         THE COURT:  Yes.                                           12:11

1    MR. NOVICK:  -- is not accurate.  Four is the    12:11

2  summary of Pacific Resources.    12:11

3    THE COURT:  Right.  It's 5.  It's what paper    12:11

4  5 is.    12:11

5    MR. NOVICK:  Correct, Your Honor.    12:11

6    THE COURT:  So my question is:  What are they    12:11

7  missing?    12:11

8    MR. NOVICK:  I think they are missing 4, the    12:11

9  actual 4.    12:11

10    THE CLERK:  Attorney Novick, may the Judge    12:12

11  have those.  Thank you.    12:12

12    (Pause, 12:12 p.m. to 12:17 p.m.)    12:17

13    THE COURT:  So if I were to write them a note    12:17

14  telling them that they should disregard electronic 4,    12:17

15  that paper 4 is Exhibit 4 and attach to that note    12:17

16  Government Exhibit 4 and --    12:17

17    MR. NOVICK:  Can we edit -- I mean, not edit.    12:18

18  Can we fix the issue in JERS so that --    12:18

19    THE COURT:  I'm not sure.  We're going to    12:18

20  find out.  If we were to fix it, we would be taking    12:18

21  JERS current 4 out of it and we would be putting    12:18

22  Government 4 in, correct?    12:18

23    MR. NOVICK:  Yes, Your Honor.  Is it    12:18

24  possible, only because I think I speak for both    12:18

25  sides, given this, if we can just look at what's in    12:18

1   JERS for 1 through 7 to make sure?                    12:18

2        THE COURT:  How would you do that?              12:18

3        MR. NOVICK:  Is the only way to look at JERS    12:18

4   in there or --                                        12:18

5        THE COURT:  Oh, you can look at it in the        12:18

6   computer here.                                        12:18

7        MR. NOVICK:  I have here the e-mail that we      12:19

8   sent with the updated version so I can see, I         12:19

9   believe, what they should be and just make sure that  12:19

10  1 through 7, aside from Number 4, everything else is   12:19

11  accurate.  And then --                                12:19

12       THE COURT:  And then the larger question is      12:19

13  how do we substitute an electronic 4 that's accurate  12:19

14  and corresponds to the paper 4?                        12:19

15       MR. NOVICK:  Right.  And then I think the         12:19

16  answer is -- I guess my question is can we do that at  12:19

17  this point?  I mean, I think we should if we can        12:19

18  technologically so that they can put it on the board.  12:19

19       THE COURT:  So what did you want to check?       12:19

20       MR. NOVICK:  So if we can come up and take a     12:19

21  look at the screen to make sure 1 through 7, other    12:19

22  than Number 4, are all accurate, I think that would   12:19

23  clarify that this is the only issue.                  12:20

24       THE COURT:  We're going to print you 1           12:20

25  through 7.                                            12:20

| | | |
|---|---|---|
| 1 | MR. NOVICK:  Okay. | 12:20 |
| 2 | (Pause, 12:20 p.m. to 12:27 p.m.) | 12:27 |
| 3 | MR. NOVICK:  All right.  Three of them are | 12:27 |
| 4 | wrong, Your Honor. | 12:27 |
| 5 | THE COURT:  Right. | 12:27 |
| 6 | MR. NOVICK:  Number one is wrong.  When I say | 12:27 |
| 7 | "wrong," does not match the paper version.  Number 4 | 12:27 |
| 8 | obviously is wrong and number 7 is wrong. | 12:28 |
| 9 | The versions in the government's e-mail -- | 12:28 |
| 10 | THE COURT:  Well, let's get them responded | 12:28 |
| 11 | to.  Let's tell them to use paper 1 through 7 for | 12:28 |
| 12 | now.  And if we can reload JERS for 1 through 7, they | 12:28 |
| 13 | can use that. | 12:28 |
| 14 | MR. NOVICK:  Understood, Your Honor. | 12:28 |
| 15 | MR. MORVILLO:  That's fine. | 12:28 |
| 16 | THE COURT:  I will write that on a note.  We | 12:28 |
| 17 | don't need to have them back here. | 12:28 |
| 18 | MR. NOVICK:  Your Honor, one other thought. | 12:30 |
| 19 | Although we are reasonably certain that the paper is | 12:30 |
| 20 | right, is there any wisdom in looking at it, making | 12:30 |
| 21 | sure that it's right before we tell them to rely on | 12:31 |
| 22 | it? | 12:31 |
| 23 | THE COURT:  Well, it's what you produced | 12:31 |
| 24 | as 5. | 12:31 |
| 25 | MR. NOVICK:  Your binder, Your Honor, is | 12:31 |

1    correct.  So if it matches that, it's correct.  I                     12:31

2    just -- I am assuming it's correct.  I just --                        12:31

3         THE COURT:  When you say "it," what do you                       12:31

4    mean?                                                                 12:31

5         MR. NOVICK:  The paper, the jury's paper.                        12:31

6         THE COURT:  The "it" paper of 4 or all of                        12:31

7    them?                                                                 12:31

8         MR. NOVICK:  One through 7.                                      12:31

9         THE COURT:  I will give them attached to this                    12:31

10   note 1 through 7.  Then we know that what they have                   12:31

11   is correct.                                                           12:31

12        MR. NOVICK:  May I approach, Your Honor, just                     12:32

13   to talk to Donna?                                                     12:32

14        THE COURT:  Yes.                                                 12:32

15        Okay.  This is what I propose, I have written                    12:32

16   on their note.  "Thank you for noting this                            12:32

17   discrepancy.  Please use paper Exhibits 1 through 7                   12:32

18   for now, attached, and we will try to reload the                     12:32

19   correct electronic Exhibits 1 through 7.  We will                    12:32

20   advise you when that adjustment is made.  Thank you."                 12:32

21        MR. NOVICK:  That's fine with the government,                    12:32

22   Your Honor.                                                           12:32

23        MR. MORVILLO:  And the defense, Your Honor.                      12:32

24        MR. NOVICK:  Yes, Your Honor.  These are                         12:39

25   correct.                                                              12:39

```
 1          THE COURT:  All right.  Then we will have       12:39
 2   Ms. Barry take the corrected slides, exhibits, paper   12:39
 3   exhibits into the jury room with the Court's note      12:39
 4   which we're marking as Court B.                        12:39
 5          And I'd like to share with the alternates the   12:39
 6   copy of the correspondence.  All right.  Could you do  12:39
 7   that?  Okay.  So that goes to the jury, and that will  12:39
 8   go to the alternates.                                  12:40
 9          Is there anything further?                      12:40
10          MR. NOVICK:  No, Your Honor.                    12:40
11          MR. MORVILLO:  No, Your Honor.                  12:40
12          THE COURT:  You need to work with Ms. Barry     12:40
13   on the genius of JERS.                                 12:40
14          Ms. Barry suggests that she take back their     12:40
15   paper 1 through 7.                                     12:40
16          MR. MORVILLO:  Yes.                             12:40
17          MR. NOVICK:  Yes.                               12:40
18          THE COURT:  Unless there's some other           12:40
19   concern, let's do that.  That's a good idea.           12:40
20          MR. NOVICK:  We are reasonably certain, Your    12:41
21   Honor, that the 1 through 7 they have is accurate,     12:41
22   but I have no problem with making sure.                12:41
23          THE COURT:  We're going to go for certainty,    12:41
24   not reasonable certainty.                              12:41
25          MR. NOVICK:  I like certainty, Your Honor.      12:41
```

1    THE COURT:  All right.  Is there anything                12:41

2  further?                                                    12:42

3    MR. NOVICK:  No, Your Honor.                              12:42

4    MR. MORVILLO:  No.                                        12:42

5    THE COURT:  Stand in recess.                             12:42

6    (Recess taken, 12:42 p.m. to 4:24 p.m.)                  12:42

7    THE COURT:  All right, Counsel.  You have a             16:25

8  copy of the jurors' next note asking whether venue is      16:25

9  a requirement for the Pinkerton theory of liability        16:25

10 on the money laundering counts.                            16:25

11   May I hear you?  You may be seated too.                 16:25

12   MR. NOVICK:  Your Honor, we would ask for a            16:25

13 few minutes to look into it.  We presume the answer        16:25

14 is probably yes.                                           16:25

15   THE COURT:  That's fine.                                16:25

16   MR. NOVICK:  But I have no direct knowledge            16:25

17 of that.  So we'd request a few minutes to look into       16:25

18 it, or we could get back to them in the morning since      16:25

19 they're sitting for another half hour.                     16:25

20   THE COURT:  Does defense have a position?              16:25

21   MR. MORVILLO:  We think the answer is yes for         16:25

22 sure but are happy to take a few minutes to look at        16:25

23 it.                                                         16:25

24   THE COURT:  Well, to let the government be             16:25

25 anticipating what your reason is, what is your             16:26

1       reason?  I mean, it's an element.                          16:26

2               MR. MORVILLO:  It's an element, exactly.          16:26

3               THE COURT:  And so I don't see why if --          16:26

4               MR. MORVILLO:  I don't see how you can get --     16:26

5               THE COURT:  -- the instruction says the crime     16:26

6       charges in Count Nine, Ten, Eleven, Twelve was            16:26

7       committed as Element Number 1, that doesn't include       16:26

8       venue.                                                     16:26

9               MR. NOVICK:  And, again, as I said, that is       16:26

10      likely the answer.  But, I mean, venue is obviously       16:26

11      not an element but it is a requirement to be proven       16:26

12      as to the substantive offenses, but it's not an          16:26

13      element of the crime which is the only reason why the    16:26

14      government thought we would just look it up.  If          16:26

15      there's an answer, great.  If not, we'll report back.    16:26

16              THE COURT:  Can you do it right now?             16:27

17              MR. NOVICK:  Yes.  I have a computer in the       16:27

18      room next door, the conference room.                      16:27

19              THE COURT:  All right.  How long do you think     16:27

20      you will need?                                             16:27

21              MR. NOVICK:  Give us 15, 20 minutes, 15          16:27

22      minutes, ten minutes.  I mean, I'll --                    16:27

23              THE COURT:  Would you tell the jurors that        16:27

24      we'll get back to them with an answer in ten to 15       16:27

25      minutes and that if they can go on otherwise, they       16:27

```
 1   should.                                                    16:27
 2         THE CLERK:  And should they leave at 5 or            16:27
 3   wait for us to let them know?                              16:27
 4         THE COURT:  We'll let them know before they          16:27
 5   leave at 5.                                                16:27
 6         THE CLERK:  Okay.                                    16:27
 7         THE COURT:  Okay.  Anything further?                 16:27
 8         MR. NOVICK:  No, Your Honor.                         16:27
 9         THE COURT:  We stand in recess.                      16:27
10         (Recess taken, 4:27 p.m. to 4:49 p.m.)               16:27
11         THE COURT:  Please be seated, Counsel.               16:49
12         Would the government like to state its               16:49
13   position?                                                  16:49
14         MR. NOVICK:  Your Honor, we're doing our best        16:49
15   to get an answer.  There seems to be some cases on         16:49
16   this.  In 15 minutes I pulled some, but it's far from      16:49
17   what I would represent to be comprehensive.  It            16:49
18   appears in one instance a Fifth Circuit case says          16:49
19   that crimes based on a Pinkerton theory may be tried       16:50
20   where the coconspirator committed the crime.  That's       16:50
21   Parrish, P-a-r-r-i-s-h, 736 F.2d 152, pincite 258 and      16:50
22   also in the Fifth Circuit M-a-c-e-o 947 F.2d 1191.         16:50
23         We've found a number of cases discussing             16:51
24   venue, Pinkerton venue in the context of 924(c) which      16:51
25   on a first reading, I have not figured out whether it      16:51
```

1    would apply here and -- I'm sorry, Your Honor.    16:51

2         MR. MORVILLO:  Your Honor, while the    16:52

3    government is looking, can I give the Court a cite to    16:52

4    consider as well?    16:52

5         THE COURT:  Yes.  I wanted to understand the    16:52

6    distinction that -- or lack of distinction that the    16:52

7    government thinks exists between where the crime    16:52

8    occurred and where coconspirators acted because    16:53

9    what's relevant here for venue for Pinkerton    16:53

10   liability for money laundering would be where it    16:53

11   occurred.    16:53

12        MR. NOVICK:  So, Your Honor, understanding    16:53

13   that -- there are two different possible views here.    16:53

14   One would be that it is where the individual offense    16:53

15   occurred, the individual substantive offense, or it's    16:53

16   where venue lies for the conspiracy that is the basis    16:53

17   for the Pinkerton application which would obviously    16:53

18   be different than venue for the substantive offense.    16:53

19   A venue for a conspiracy is obviously just where one    16:53

20   overt act was committed in furtherance thereof.  So I    16:53

21   think that's --    16:54

22        THE COURT:  Do you think there is an analogy    16:54

23   to be drawn with aiding and abetting theories of    16:54

24   liability?    16:54

25        MR. NOVICK:  There may very well be, Your    16:54

1   Honor.  That's -- we're trying to ...                    16:54

2        THE COURT:  So you might want to look at *U.S.*      16:54

3   *v. Whittingham*, 346 Fed. Appx. 683 finding that where  16:54

4   liability of the substantive offense is premised on      16:54

5   an aiding and abetting theory as in this case, venue     16:54

6   is proper where the defendant's accessorial acts were    16:54

7   committed or where the underlying crime occurred and     16:54

8   then citing to *U.S. v. Smith*, 198 F.3d 377.            16:54

9        Let me get the defendant's offerings here.          16:55

10        MR. MORVILLO:  Thank you, Your Honor.               16:55

11        Just some quick research.  There is a Ninth         16:55

12   Circuit case called *U.S. v. Corona*, 34 F.3d 876,      16:55

13   pincite is 879.  And I can just read a brief quote       16:55

14   from the case.                                           16:55

15        "The question we must answer, however, is           16:55

16   whether Nevada was the proper venue for the              16:55

17   substantive crimes arising from the conspiracy,          16:55

18   distribution of cocaine, Counts 2 and 3, and use of a    16:55

19   firearm during a drug trafficking count, Count 4,        16:55

20   which occurred entirely in California.  The              16:55

21   government claims that the Pinkerton principle, the      16:55

22   principle that conspirators can be responsible for       16:55

23   the substantive offenses of their coconspirators, is     16:55

24   a sufficient basis for venue in Nevada citing            16:55

25   Pinkerton.  This principle, however, does not appear     16:55

1  to control the question before us.  What the                    16:55

2  government is essentially arguing for is a rule                 16:56

3  allowing venue over a substantive crime committed in            16:56

4  furtherance of a conspiracy in any district where               16:56

5  venue is proper for the conspiracy charged.  While              16:56

6  such a rule might make sense from a policy                      16:56

7  standpoint, it runs counter to the venue principles             16:56

8  established by the Constitution, the Federal Rules of           16:56

9  Criminal Procedure and the federal courts."                     16:56

10            THE COURT:  Thank you.                                16:56

11            All right.  I think we need to tell the               16:56

12  jurors that we will have an answer for them at 9:30             16:56

13  tomorrow morning and that if they wish to leave now,           16:56

14  that they can do so.                                            16:56

15            Shall I have them in to tell them that?               16:56

16            MR. MORVILLO:  I think that would be a good           16:56

17  idea.                                                           16:56

18            (Jury entered the proceedings, 4:59 p.m.)             16:59

19            THE COURT:  Please be seated, ladies and              16:59

20  gentlemen.  Your former colleagues, the alternates             16:59

21  will be in in just a moment.  Oh, they're here.                16:59

22  You're here.                                                    16:59

23            I wanted to compliment you on your close              16:59

24  reading of the instructions.  I want to compliment             16:59

25  you on your precision.  I cannot give you an answer            16:59

```
 1    tonight.  At 9:30 tomorrow morning we'll have it          16:59

 2    figured all out and we will bring you back -- either      16:59

 3    back into the courtroom if a longer explanation is        17:00

 4    needed.  If the answer is a simple yes or no, I'll        17:00

 5    send you another note.                                    17:00

 6          So I thank you very much, and we will be sure       17:00

 7    to bring your question up with the next law school        17:00

 8    class we teach.                                           17:00

 9          All right.  Enjoy your evening.  I hope you         17:00

10    enjoyed your lunch and we'll see you tomorrow at          17:00

11    9:30.                                                     17:00

12          (Jury exited the proceedings, 5:00 p.m.)            17:00

13          THE COURT:  All right.  How would you like to       17:01

14    formulate your position, Mr. Novick, in a way that I      17:01

15    will be able to consider what direction should be         17:01

16    given to the jury at 9:30 tomorrow morning?               17:01

17          MR. NOVICK:  We'll try to put something             17:01

18    together within the next few hours, Your Honor.           17:01

19          THE COURT:  And does the defendant want to do       17:01

20    anything further than your referring to your Ninth        17:01

21    Circuit case?                                             17:01

22          MR. MORVILLO:  We certainly would like to           17:01

23    take a closer look as well but -- and so we're happy      17:01

24    to submit simultaneously if that would be help to         17:01

25    feel the Court.                                           17:01
```

```
1            THE COURT:  Fine.  All right.                      17:01

2            Then if there's nothing further, thank you        17:01

3    very much.  We stand in recess.                           17:02

4            (Proceedings adjourned, 5:02 p.m.)                 17:02

5

6              C E R T I F I C A T E

7

8    RE: UNITED STATES OF AMERICA v. LAWRENCE HOSKINS
               No. 3:12-CR-238 (JBA)
9

10           I, Melissa J. Cianciullo, RMR, CRR, CRC,

11   Official Court Reporter for the United States

12   District Court for the District of Connecticut, do

13   hereby certify that the foregoing pages 1468 through

14   1509 are a true and accurate transcription of my

15   shorthand notes taken in the aforementioned matter to

16   the best of my skill and ability.

17

18

19

20

21           /s/ Melissa J. Cianciullo_____

22        MELISSA J. CIANCIULLO, RMR, CRR
                Official Court Reporter
23           United States District Court
             141 Church Street, Room 147
24           New Haven, Connecticut  06510
                   (203) 606-1794
25
```

**/**

**/s/_Melissa** [1] - 1509:21

**0**

**06510** [2] - 1469:4, 1509:24
**06890** [1] - 1469:19

**1**

**1** [14] - 1495:12, 1495:20, 1498:1, 1498:10, 1498:21, 1498:24, 1499:11, 1499:12, 1500:10, 1500:17, 1500:19, 1501:15, 1501:21, 1503:7
**10019-6131** [1] - 1469:14
**10:01** [1] - 1468:6
**10:17** [1] - 1478:8
**10:25** [1] - 1483:21
**10:28** [1] - 1485:6
**10:37** [1] - 1489:18
**10:39** [1] - 1491:14
**10:41** [1] - 1492:16
**10:44** [1] - 1492:16
**10:46** [1] - 1493:7
**10:48** [1] - 1494:13
**10:49** [1] - 1494:19
**11** [2] - 1475:8, 1476:11
**11308** [1] - 1469:9
**1191** [1] - 1504:22
**11:30** [1] - 1494:7
**12** [1] - 1494:7
**1227** [1] - 1509:13
**12:07** [1] - 1494:19
**12:12** [1] - 1497:12
**12:17** [1] - 1497:12
**12:20** [1] - 1499:2
**12:27** [1] - 1499:2
**12:42** [1] - 1502:6
**1400** [1] - 1469:8
**141** [2] - 1468:7, 1509:23
**1467** [1] - 1509:14
**147** [1] - 1509:23
**15** [4] - 1503:21, 1503:24, 1504:16
**152** [1] - 1504:21
**157** [1] - 1469:4
**198** [1] - 1506:8
**1:30** [1] - 1494:7

**2**

**2** [2] - 1478:7, 1506:18
**20** [1] - 1503:21
**20005** [1] - 1469:9
**2019** [1] - 1468:5
**203** [5] - 1468:25, 1469:5, 1469:18, 1469:19, 1509:24
**21** [1] - 1494:6
**212** [1] - 1469:15
**23rd** [1] - 1469:4
**2425** [1] - 1469:18
**258** [1] - 1504:21
**27** [1] - 1494:7
**292-9766** [1] - 1469:19

**3**

**3** [1] - 1506:18
**34** [1] - 1506:12
**346** [1] - 1506:3
**377** [1] - 1506:8
**3:12-CR-238** [2] - 1468:4, 1509:8

**4**

**4** [60] - 1470:3, 1477:7, 1477:11, 1478:8, 1478:9, 1478:11, 1478:15, 1478:21, 1479:20, 1480:3, 1480:17, 1480:25, 1481:3, 1481:14, 1482:1, 1482:18, 1482:24, 1483:6, 1483:9, 1483:16, 1485:7, 1485:8, 1485:16, 1486:7, 1486:19, 1486:24, 1487:4, 1488:4, 1488:16, 1488:18, 1489:5, 1489:14, 1491:21, 1491:25, 1492:7, 1492:15, 1493:11, 1494:24, 1495:18, 1495:22, 1496:12, 1496:22, 1496:23, 1497:8, 1497:9, 1497:14, 1497:15, 1497:16, 1497:21, 1497:22, 1498:10, 1498:13, 1498:14, 1498:22, 1499:7, 1500:6, 1506:19
**4's** [2] - 1470:5, 1493:19
**40** [1] - 1475:15,

1475:21
**4:24** [1] - 1502:6
**4:27** [1] - 1504:10
**4:49** [1] - 1504:10
**4:59** [1] - 1507:18

**5**

**5** [11] - 1495:19, 1496:1, 1496:4, 1496:11, 1496:18, 1496:19, 1497:3, 1497:4, 1499:24, 1504:2, 1504:5
**5:00** [1] - 1508:12
**5:02** [1] - 1509:4

**6**

**606-1794** [2] - 1468:25, 1509:24
**683** [1] - 1506:3

**7**

**7** [15] - 1468:5, 1495:12, 1498:1, 1498:10, 1498:21, 1498:25, 1499:8, 1499:11, 1499:12, 1500:8, 1500:10, 1500:17, 1500:19, 1501:15, 1501:21
**736** [1] - 1504:21

**8**

**8** [4] - 1491:8, 1492:13, 1493:4, 1493:14
**821-3700** [1] - 1469:5
**876** [1] - 1506:12
**878-8000** [1] - 1469:15
**879** [1] - 1506:13

**9**

**924(c** [1] - 1504:24
**947** [1] - 1504:22
**9:30** [5] - 1494:7, 1507:12, 1508:1, 1508:11, 1508:16
**9:40** [1] - 1470:1

**A**

**a.m** [12] - 1468:6, 1470:1, 1478:8, 1483:21, 1485:6, 1489:18, 1491:14, 1492:16, 1493:7,

1494:13, 1494:19
**abetting** [2] - 1505:23, 1506:5
**ability** [3] - 1470:23, 1472:1, 1509:16
**able** [7] - 1473:10, 1477:12, 1483:10, 1486:5, 1487:11, 1487:13, 1508:15
**absolutely** [1] - 1472:18
**accept** [1] - 1488:22
**accessorial** [1] - 1506:6
**accurate** [8] - 1495:8, 1496:19, 1497:1, 1498:11, 1498:13, 1498:22, 1501:21, 1509:14
**accused** [1] - 1474:14
**act** [1] - 1505:20
**acted** [1] - 1505:8
**acts** [1] - 1506:6
**actual** [1] - 1497:9
**address** [1] - 1492:8
**adieu** [1] - 1471:21
**adjourned** [1] - 1509:4
**adjustment** [1] - 1500:20
**admitted** [3] - 1495:19, 1495:25, 1496:1
**advise** [1] - 1500:20
**advises** [1] - 1494:23
**affect** [3] - 1470:22, 1474:1, 1480:10
**affected** [1] - 1474:23
**aforementioned** [1] - 1509:15
**afternoon** [1] - 1476:23
**Agent** [1] - 1474:18
**ago** [2] - 1471:12, 1479:14
**agree** [1] - 1492:25
**ahead** [1] - 1486:18
**aiding** [2] - 1505:23, 1506:5
**albeit** [1] - 1479:23
**allowing** [1] - 1507:3
**almost** [1] - 1471:12
**Alstom** [34] - 1470:6, 1470:11, 1470:19, 1470:20, 1470:22, 1471:4, 1471:6, 1471:7, 1472:7, 1472:11, 1472:16, 1472:21, 1474:18, 1474:24, 1478:14, 1478:19, 1479:3,

1479:18, 1479:23, 1480:2, 1480:16, 1480:24, 1481:13, 1481:16, 1481:19, 1483:13, 1490:8, 1490:13, 1491:20, 1491:23, 1492:4, 1492:6, 1492:23, 1495:24
**Alternate** [1] - 1492:13
**alternate** [8] - 1471:21, 1473:12, 1473:20, 1477:20, 1477:22, 1484:7, 1487:18, 1488:8
**alternates** [5] - 1487:15, 1487:16, 1501:5, 1501:8, 1507:20
**AMERICA** [2] - 1468:4, 1509:8
**amount** [1] - 1484:5
**analogy** [1] - 1505:22
**AND** [1] - 1468:18
**anew** [2] - 1487:17, 1491:9
**answer** [14] - 1480:10, 1488:14, 1495:1, 1498:16, 1502:13, 1502:21, 1503:10, 1503:15, 1503:24, 1504:15, 1506:15, 1507:12, 1507:25, 1508:4
**anticipate** [1] - 1486:16
**anticipating** [1] - 1502:25
**anticipation** [1] - 1485:13
**anyways** [2] - 1479:11, 1480:7
**API** [1] - 1479:23
**apparent** [1] - 1483:23
**appear** [1] - 1506:25
**application** [1] - 1505:17
**apply** [1] - 1505:1
**appreciate** [1] - 1489:6
**approach** [2] - 1489:11, 1500:12
**Appx** [1] - 1506:3
**arguing** [1] - 1507:2
**arisen** [1] - 1493:11
**arising** [1] - 1506:17
**ARTERTON** [1] - 1468:18
**aside** [1] - 1498:10
**assess** [1] - 1480:12

**associated** [2] - 1490:7, 1490:12
**association** [1] - 1491:23
**assuming** [1] - 1500:2
**atmospheres** [1] - 1480:18
**attach** [1] - 1497:15
**attached** [2] - 1500:9, 1500:18
**attend** [3] - 1475:7, 1476:17, 1493:25
**attention** [4] - 1471:17, 1478:17, 1478:20, 1479:19
**Attorney** [1] - 1497:10
**Attorney's** [1] - 1469:3
**AUSA** [1] - 1469:3
**Avenue** [1] - 1469:8
**aware** [2] - 1486:19, 1492:4

**B**

**backroom** [1] - 1490:3
**bad** [2] - 1471:22, 1472:21
**Barry** [3] - 1501:2, 1501:12, 1501:14
**base** [1] - 1494:25
**based** [2] - 1496:6, 1504:19
**basis** [3] - 1492:5, 1505:16, 1506:24
**bearing** [1] - 1472:6
**begin** [2] - 1487:17, 1491:9
**beginning** [2] - 1477:20, 1489:21
**begins** [1] - 1470:1
**behalf** [1] - 1488:12
**BENJAMIN** [1] - 1469:13
**benjamin.peacock@ cliffordchance.com** [1] - 1469:16
**best** [3] - 1488:21, 1504:14, 1509:16
**better** [1] - 1494:9
**between** [3] - 1485:21, 1491:23, 1505:7
**beyond** [1] - 1474:7
**binder** [1] - 1499:25
**bit** [1] - 1475:19
**board** [1] - 1498:18
**BOND** [1] - 1468:18
**box** [1] - 1475:10
**BRIAN** [1] - 1469:7
**brief** [1] - 1506:13
**briefly** [2] - 1489:12,

1493:10
**bring** [7] - 1471:20, 1473:12, 1487:15, 1487:16, 1491:8, 1508:2, 1508:7
**bringing** [2] - 1484:7, 1493:4
**brought** [3] - 1478:17, 1492:12, 1492:14
**bspears@ spearsmanning. com** [1] - 1469:20
**business** [1] - 1472:8
**busy** [2] - 1480:6

**C**

**California** [1] - 1506:20
**campaign** [4] - 1482:25, 1483:3, 1485:17, 1485:20
**cannot** [5] - 1473:9, 1483:24, 1484:2, 1487:14, 1507:25
**care** [1] - 1482:9
**careful** [1] - 1494:23
**carry** [2] - 1493:22, 1494:10
**case** [24] - 1471:6, 1471:14, 1472:7, 1472:10, 1473:1, 1474:2, 1474:15, 1474:24, 1475:1, 1477:25, 1480:2, 1480:9, 1485:8, 1485:15, 1486:5, 1486:10, 1486:14, 1487:2, 1487:19, 1504:18, 1506:5, 1506:12, 1506:14, 1508:21
**cases** [2] - 1504:15, 1504:23
**caught** [2] - 1479:19, 1481:6
**certain** [2] - 1499:19, 1501:20
**certainly** [9] - 1471:6, 1471:16, 1472:22, 1472:24, 1472:25, 1474:2, 1475:17, 1475:24, 1508:22
**certainty** [3] - 1501:23, 1501:24, 1501:25
**certify** [1] - 1509:13
**cetera** [1] - 1487:11
**Chance** [1] - 1469:14
**chance** [1] - 1479:24

**change** [2] - 1484:23, 1495:16
**changed** [1] - 1492:18
**charged** [1] - 1507:5
**charges** [1] - 1503:6
**chart** [1] - 1495:21
**charts** [2] - 1495:12, 1495:15
**chat** [1] - 1489:16
**check** [1] - 1498:19
**childcare** [2] - 1482:5, 1490:18
**chosen** [1] - 1491:11
**CHRISTOPHER** [1] - 1469:12
**christopher.morvillo @cliffordchance. com** [1] - 1469:15
**chunk** [1] - 1476:7
**Church** [3] - 1468:7, 1469:4, 1509:23
**CIANCIULLO** [1] - 1509:22
**Cianciullo** [3] - 1468:24, 1509:10, 1509:21
**Circuit** [4] - 1504:18, 1504:22, 1506:12, 1508:21
**circumstance** [1] - 1489:20
**cite** [1] - 1505:3
**citing** [2] - 1506:8, 1506:24
**City** [1] - 1470:6
**claims** [1] - 1506:21
**clarify** [3] - 1491:3, 1491:15, 1498:23
**class** [1] - 1508:8
**clear** [3] - 1472:14, 1474:10, 1487:8
**clerk** [1] - 1496:24
**CLERK** [4] - 1493:5, 1497:10, 1504:2, 1504:6
**Clifford** [1] - 1469:14
**close** [1] - 1507:23
**closer** [1] - 1508:23
**cocaine** [1] - 1506:18
**coconspirator** [1] - 1504:20
**coconspirators** [2] - 1505:8, 1506:23
**Coleman** [1] - 1474:18
**colleague** [1] - 1472:11
**colleagues** [2] - 1484:9, 1507:20
**coming** [2] - 1472:3, 1494:5

**commenced** [2] - 1483:21, 1489:18
**commit** [1] - 1494:2
**committed** [5] - 1503:7, 1504:20, 1505:20, 1506:7, 1507:3
**communication** [1] - 1477:4
**company** [7] - 1474:11, 1474:21, 1478:24, 1479:2, 1481:15, 1481:18, 1481:21
**complete** [4] - 1473:10, 1483:25, 1487:12, 1487:13
**completed** [3] - 1482:22, 1486:15, 1486:23
**compliment** [2] - 1507:23, 1507:24
**comprehensive** [1] - 1504:17
**computer** [2] - 1498:6, 1503:17
**concept** [1] - 1475:24
**concern** [4] - 1483:24, 1487:23, 1489:1, 1501:19
**concluded** [2] - 1485:6, 1491:14
**conduct** [1] - 1474:13
**conference** [1] - 1503:18
**conflict** [1] - 1472:5
**conflicts** [2] - 1486:8, 1486:9
**conjunction** [1] - 1480:24
**CONNECTICUT** [1] - 1468:1
**Connecticut** [3] - 1468:8, 1509:12, 1509:24
**conscientious** [1] - 1486:17
**consequence** [3] - 1484:11, 1484:22, 1487:18
**consider** [3] - 1483:7, 1505:4, 1508:15
**considered** [1] - 1487:11
**conspiracy** [5] - 1505:16, 1505:19, 1506:17, 1507:4, 1507:5
**conspirators** [1] - 1506:22

**Constitution** [1] - 1507:8
**context** [1] - 1504:24
**continue** [3] - 1482:16, 1485:9, 1491:4
**continues** [1] - 1474:8
**contrary** [1] - 1472:15
**control** [1] - 1507:1
**conversation** [2] - 1478:4, 1490:17
**cool** [1] - 1483:9
**coordinator** [1] - 1483:3
**copy** [7] - 1494:21, 1494:24, 1495:1, 1496:11, 1496:16, 1501:6, 1502:8
**Corona** [1] - 1506:12
**correct** [15] - 1478:15, 1482:18, 1491:25, 1492:23, 1496:15, 1496:20, 1496:22, 1497:5, 1497:22, 1500:1, 1500:2, 1500:11, 1500:19, 1500:25
**corrected** [1] - 1501:2
**correspondence** [1] - 1501:6
**corresponds** [1] - 1498:14
**counsel** [9] - 1470:2, 1483:16, 1483:20, 1483:22, 1493:2, 1494:14, 1494:20, 1502:7, 1504:11
**Count** [1] - 1506:19
**count** [2] - 1503:6, 1506:19
**counter** [1] - 1507:7
**counts** [3] - 1487:10, 1502:10, 1506:18
**couple** [1] - 1472:6
**course** [4] - 1491:10, 1492:17, 1495:1, 1495:19
**court** [4] - 1476:3, 1476:16, 1483:8, 1494:22
**COURT** [116] - 1468:1, 1470:2, 1470:15, 1471:16, 1472:14, 1472:19, 1473:7, 1473:17, 1473:19, 1475:2, 1475:15, 1476:4, 1476:12, 1476:16, 1476:22, 1477:1, 1477:6, 1477:18, 1478:6,

1478:9, 1478:12, 1478:16, 1479:17, 1479:21, 1480:11, 1480:21, 1481:2, 1481:12, 1481:22, 1482:12, 1482:19, 1483:5, 1483:8, 1483:14, 1483:19, 1483:22, 1485:3, 1485:7, 1486:1, 1486:14, 1486:20, 1486:25, 1487:6, 1488:15, 1488:17, 1488:21, 1489:7, 1489:13, 1489:17, 1490:10, 1490:12, 1490:20, 1491:3, 1491:7, 1491:15, 1491:22, 1492:3, 1492:8, 1492:24, 1493:2, 1493:6, 1493:8, 1494:14, 1494:18, 1494:20, 1495:5, 1496:3, 1496:8, 1496:13, 1496:18, 1496:21, 1496:25, 1497:3, 1497:6, 1497:13, 1497:19, 1498:2, 1498:5, 1498:12, 1498:19, 1498:24, 1499:5, 1499:10, 1499:16, 1499:23, 1500:3, 1500:6, 1500:9, 1500:14, 1501:1, 1501:12, 1501:18, 1501:23, 1502:1, 1502:5, 1502:7, 1502:15, 1502:20, 1502:24, 1503:3, 1503:5, 1503:16, 1503:19, 1503:23, 1504:4, 1504:7, 1504:9, 1504:11, 1505:5, 1505:22, 1506:2, 1507:10, 1507:19, 1508:13, 1508:19, 1509:1
**Court** [13] - 1468:24, 1472:3, 1476:8, 1478:13, 1491:18, 1495:14, 1501:4, 1505:3, 1508:25, 1509:11, 1509:12, 1509:22, 1509:23
**Court's** [2] - 1478:17, 1501:3
**courtroom** [3] - 1470:3, 1480:7, 1508:3

**Courtroom** [1] - 1478:7
**courts** [1] - 1507:9
**CRC** [2] - 1468:24, 1509:10
**create** [1] - 1482:17
**credibility** [2] - 1474:22, 1480:12
**crime** [6] - 1503:5, 1503:13, 1504:20, 1505:7, 1506:7, 1507:3
**crimes** [2] - 1504:19, 1506:17
**Criminal** [2] - 1469:8, 1507:9
**critically** [1] - 1487:2
**CRR** [3] - 1468:24, 1509:10, 1509:22
**CT** [2] - 1469:4, 1469:19
**current** [1] - 1497:21
**cutting** [1] - 1485:19

## D

**D.C** [1] - 1469:9
**DANIEL** [2] - 1469:6, 1469:13
**daniel.kahn@usdoj. gov** [1] - 1469:18
**daniel.silver@ cliffordchance.com** [1] - 1469:16
**dates** [1] - 1494:3
**DAVID** [1] - 1469:3
**david.novick@usdoj .gov** [1] - 1469:5
**days** [2] - 1473:21, 1487:9
**dealing** [1] - 1471:8
**December** [2] - 1494:7
**decides** [2] - 1484:18, 1484:19
**defendant** [1] - 1508:19
**Defendant** [2] - 1468:9, 1469:11
**defendant's** [2] - 1506:6, 1506:9
**defense** [3] - 1491:13, 1500:23, 1502:20
**defer** [1] - 1476:7
**deliberating** [2] - 1470:1, 1471:20
**deliberation** [3] - 1473:21, 1477:12, 1487:17
**deliberations** [15] - 1473:20, 1474:7,

1475:4, 1477:17, 1477:21, 1478:1, 1482:16, 1482:22, 1485:8, 1488:7, 1489:21, 1492:21, 1493:16, 1493:23, 1494:25
**deliberative** [2] - 1486:18, 1487:1
**Department** [1] - 1469:7
**deprive** [1] - 1475:18
**deputy** [1] - 1470:3
**described** [2] - 1482:15, 1490:23
**different** [6] - 1471:7, 1478:23, 1480:18, 1482:13, 1505:13, 1505:18
**difficult** [2] - 1477:16, 1477:19
**difficulties** [1] - 1482:17
**diligently** [1] - 1487:21
**dire** [5] - 1471:25, 1473:23, 1475:2, 1475:4, 1492:22
**direct** [2] - 1490:2, 1502:16
**direction** [1] - 1508:15
**dired** [2] - 1470:17, 1470:20
**disagree** [1] - 1485:2
**disagreeing** [1] - 1471:24
**discrepancy** [1] - 1500:17
**discuss** [1] - 1490:2
**discussed** [1] - 1491:16
**discussing** [2] - 1471:14, 1504:23
**discussion** [1] - 1495:14
**displayed** [2] - 1472:23, 1474:12
**disregard** [1] - 1497:14
**disrespect** [2] - 1488:10, 1489:2
**distinction** [1] - 1505:6
**distraction** [1] - 1475:20
**distribution** [1] - 1506:18
**DISTRICT** [2] - 1468:1, 1468:1
**District** [3] - 1509:12,

1509:23
**district** [1] - 1507:4
**division** [1] - 1471:7
**Division** [1] - 1469:8
**documents** [3] - 1480:1, 1480:14, 1496:1
**donations** [1] - 1485:18
**done** [4] - 1480:9, 1486:11, 1487:23, 1488:11
**Donna** [1] - 1500:13
**door** [1] - 1503:18
**draw** [1] - 1480:14
**drawn** [1] - 1505:23
**drug** [1] - 1506:19
**due** [1] - 1485:18
**during** [8] - 1470:9, 1495:19, 1506:19
**duty** [1] - 1485:21

## E

**E-mail** [3] - 1469:5, 1469:15, 1469:20
**e-mail** [2] - 1498:7, 1499:9
**e-mails** [1] - 1480:14
**easily** [1] - 1471:25
**edit** [2] - 1497:17
**edited** [2] - 1495:15, 1496:20
**either** [2] - 1471:2, 1508:2
**electronic** [4] - 1494:23, 1497:14, 1498:13, 1500:19
**element** [4] - 1503:1, 1503:2, 1503:11, 1503:13
**Element** [1] - 1503:7
**Eleven** [1] - 1503:6
**Email** [1] - 1469:10
**emphasize** [1] - 1477:24
**employed** [2] - 1471:4, 1474:17
**encourage** [1] - 1488:2
**end** [3] - 1484:1, 1485:9, 1487:13
**engineered** [1] - 1481:15
**enjoy** [1] - 1508:9
**enjoyed** [1] - 1508:10
**entered** [3] - 1478:8, 1493:7, 1507:18
**entirely** [2] - 1476:7, 1506:20

1509:23
**district** [1] - 1507:4
**equal** [1] - 1484:5
**especially** [1] - 1479:12
**ESQ** [6] - 1469:6, 1469:7, 1469:12, 1469:13, 1469:13, 1469:17
**essentially** [1] - 1507:2
**established** [1] - 1507:8
**et** [1] - 1487:11
**evaluation** [1] - 1474:2
**evening** [1] - 1508:9
**event** [1] - 1490:4
**everywhere** [1] - 1479:4
**evidence** [4] - 1480:15, 1486:4, 1486:15, 1486:23
**exactly** [1] - 1503:2
**except** [1] - 1474:18
**excuse** [8] - 1472:21, 1477:19, 1483:23, 1484:23, 1488:6, 1488:25, 1489:13, 1492:10
**excused** [12] - 1470:11, 1485:1, 1486:3, 1488:23, 1489:10, 1489:21, 1490:2, 1492:19, 1493:12, 1493:13, 1493:20, 1494:12
**excusing** [2] - 1484:6, 1484:21
**Exhibit** [12] - 1478:13, 1494:24, 1495:18, 1495:19, 1495:20, 1495:22, 1496:1, 1496:4, 1496:18, 1496:19, 1497:15, 1497:16
**Exhibits** [2] - 1500:17, 1500:19
**exhibits** [5] - 1495:2, 1495:11, 1501:2, 1501:3
**exist** [1] - 1472:16
**exists** [1] - 1505:7
**exited** [2] - 1494:13, 1508:12
**explanation** [1] - 1508:3
**expressed** [1] - 1472:15
**extend** [1] - 1484:4

## F

F.2d [2] - 1504:21, 1504:22
F.3d [2] - 1506:8, 1506:12
FaceTime [2] - 1479:5
fact [10] - 1472:21, 1474:20, 1474:23, 1478:18, 1480:15, 1483:24, 1485:9, 1487:8, 1487:10, 1490:1
facts [1] - 1472:7
fair [4] - 1470:23, 1472:1, 1472:13, 1473:25
far [2] - 1493:17, 1504:16
fathom [3] - 1472:9, 1472:11, 1474:25
Fed [1] - 1506:3
Federal [1] - 1507:8
federal [1] - 1507:9
fellow [4] - 1480:22, 1487:22, 1488:10, 1489:2
few [5] - 1479:7, 1502:13, 1502:17, 1502:22, 1508:18
field [1] - 1480:20
Fifth [2] - 1504:18, 1504:22
figure [1] - 1473:5
figured [2] - 1504:25, 1508:2
fill [1] - 1484:17
fine [6] - 1484:19, 1493:12, 1499:15, 1500:21, 1502:15, 1509:1
Finger [1] - 1478:22
finish [1] - 1489:1
finished [2] - 1488:3, 1494:3
firearm [1] - 1506:19
fireman [3] - 1470:5, 1470:21, 1471:1
first [3] - 1473:1, 1475:11, 1504:25
fix [2] - 1497:18, 1497:20
fixed [1] - 1481:15
Floor [1] - 1469:4
forego [1] - 1477:3
foregoing [1] - 1509:13
foreman [7] - 1470:25, 1471:1, 1471:2, 1471:3, 1471:11,

1478:22, 1479:23
former [1] - 1507:20
forms [1] - 1483:1
formulate [1] - 1508:14
forth [2] - 1480:14, 1489:9
four [1] - 1497:1
Fraud [1] - 1469:8
Friday [14] - 1473:9, 1473:11, 1476:23, 1482:16, 1482:22, 1484:1, 1486:11, 1486:23, 1487:12, 1487:14, 1487:23, 1488:3, 1488:7, 1489:2
function [1] - 1485:24
furtherance [2] - 1505:20, 1507:4

## G

Gajendra [1] - 1495:25
gather [1] - 1492:11
genius [1] - 1501:13
gentlemen [2] - 1493:9, 1507:20
given [8] - 1470:3, 1470:17, 1486:1, 1487:9, 1489:22, 1490:6, 1497:25, 1508:16
Government [3] - 1469:2, 1497:16, 1497:22
government [10] - 1476:19, 1480:20, 1500:21, 1502:24, 1503:14, 1504:12, 1505:3, 1505:7, 1506:21, 1507:2
government's [2] - 1494:24, 1499:9
great [4] - 1476:15, 1484:15, 1484:16, 1503:15
guess [3] - 1480:6, 1480:10, 1498:16

## H

half [1] - 1502:19
hand [2] - 1476:13, 1482:25
handed [1] - 1495:22
happy [2] - 1502:22, 1508:23
hard [2] - 1473:4, 1494:24

Haven [3] - 1468:8, 1469:4, 1509:24
heading [1] - 1482:24
hear [2] - 1478:6, 1502:11
heard [3] - 1476:24, 1477:1, 1492:22
help [1] - 1508:24
hereby [1] - 1509:13
holiday [2] - 1483:5, 1483:8
Honor [54] - 1470:17, 1471:23, 1473:13, 1473:22, 1474:9, 1474:25, 1475:12, 1475:18, 1475:24, 1476:19, 1477:15, 1477:23, 1483:17, 1483:18, 1484:9, 1484:10, 1485:1, 1488:19, 1488:20, 1489:5, 1489:11, 1492:15, 1493:1, 1494:16, 1494:17, 1495:4, 1495:9, 1496:10, 1496:14, 1496:15, 1497:5, 1497:23, 1499:4, 1499:14, 1499:18, 1499:25, 1500:12, 1500:22, 1500:23, 1500:24, 1501:10, 1501:11, 1501:21, 1501:25, 1502:3, 1502:12, 1504:8, 1504:14, 1505:1, 1505:2, 1505:12, 1506:1, 1506:10, 1508:18
Honor's [1] - 1492:17
HONORABLE [1] - 1468:18
hope [1] - 1508:9
hopefully [1] - 1476:20
Hoskins [1] - 1474:13
HOSKINS [2] - 1468:8, 1509:8
hosting [1] - 1483:2
hour [1] - 1502:19
hours [1] - 1508:18
hurry [1] - 1487:1
husband [21] - 1470:5, 1470:10, 1471:15, 1471:18, 1474:10, 1474:20, 1474:23, 1478:5, 1478:14, 1478:19, 1479:22, 1480:23, 1481:9, 1481:13, 1482:7,

1483:12, 1490:7, 1490:12, 1490:24, 1491:20, 1491:23
husband's [3] - 1470:21, 1480:16, 1482:4

## I

idea [5] - 1471:22, 1472:21, 1476:15, 1501:19, 1507:17
identified [1] - 1470:10
identifying [1] - 1470:4
impact [3] - 1472:1, 1472:10, 1472:12
impartial [4] - 1470:23, 1472:2, 1472:13, 1474:1
important [4] - 1475:21, 1477:3, 1477:24, 1487:2
impossible [1] - 1485:23
Inc [1] - 1495:24
include [2] - 1493:18, 1503:7
indicate [1] - 1474:3
indicated [2] - 1472:11, 1490:15
indication [1] - 1478:3
indictment [1] - 1495:16
individual [2] - 1505:14, 1505:15
Indonesian [1] - 1495:21
inferences [1] - 1480:13
influence [3] - 1479:25, 1488:5, 1492:21
influenced [1] - 1480:15
inform [1] - 1492:18
information [1] - 1496:2
inquired [1] - 1473:6
instance [2] - 1474:1, 1504:18
instruction [1] - 1503:5
instructions [1] - 1507:24
interest [1] - 1471:17
involves [1] - 1480:2
issue [3] - 1473:15, 1497:18, 1498:23

issues [1] - 1490:18
itself [1] - 1485:20

## J

JANET [1] - 1468:18
JBA [2] - 1468:4, 1509:8
JERS [12] - 1495:18, 1495:23, 1496:4, 1496:17, 1496:21, 1496:23, 1497:18, 1497:21, 1498:1, 1498:3, 1499:12, 1501:13
job [14] - 1470:6, 1470:10, 1470:19, 1470:22, 1471:3, 1471:11, 1472:25, 1478:14, 1479:24, 1483:2, 1483:6, 1485:24, 1486:18, 1490:19
joins [1] - 1493:14
Judge [1] - 1497:10
judge [1] - 1470:14
judgment [1] - 1474:22
Juror [15] - 1470:3, 1470:4, 1477:6, 1477:11, 1478:8, 1478:9, 1483:16, 1485:7, 1485:8, 1488:17, 1489:13, 1492:13, 1493:11, 1493:14, 1493:19
juror [17] - 1472:2, 1473:8, 1473:15, 1476:24, 1477:24, 1484:3, 1484:1, 1485:15, 1488:25, 1489:20, 1490:1, 1490:2, 1490:8, 1490:23, 1491:19, 1492:19, 1494:9
JUROR [26] - 1478:11, 1478:15, 1478:21, 1479:20, 1480:3, 1480:17, 1480:25, 1481:3, 1481:14, 1482:1, 1482:18, 1482:24, 1483:6, 1483:9, 1485:16, 1486:7, 1486:19, 1486:24, 1487:4, 1488:4, 1488:16, 1489:5, 1491:21, 1491:25, 1492:7, 1492:15
jurors [27] - 1472:19,

1473:10, 1475:6, 1477:7, 1480:22, 1481:9, 1481:24, 1485:10, 1486:17, 1487:11, 1487:17, 1487:22, 1488:10, 1489:3, 1489:23, 1490:3, 1490:5, 1490:7, 1491:4, 1491:17, 1492:4, 1492:12, 1492:18, 1492:19, 1493:18, 1503:23, 1507:12
**jurors'** [1] - 1502:8
**JURY** [2] - 1468:12, 1468:18
**Jury** [5] - 1470:1, 1493:7, 1494:13, 1507:18, 1508:12
**jury** [15] - 1470:9, 1471:11, 1472:13, 1475:10, 1482:14, 1483:25, 1485:21, 1489:9, 1489:25, 1493:20, 1494:21, 1494:23, 1501:3, 1501:7, 1508:16
**jury's** [1] - 1500:5
**Justice** [1] - 1469:7

## K

**KAHN** [2] - 1469:6, 1471:5
**keep** [2] - 1477:8, 1479:13
**keyed** [1] - 1486:22
**kind** [11] - 1480:5, 1480:17, 1481:4, 1482:1, 1482:5, 1482:6, 1482:10, 1485:24, 1488:8, 1488:9
**kindly** [1] - 1486:13, 1493:22
**knowing** [4] - 1479:22, 1484:1, 1486:2, 1488:10
**knowledge** [1] - 1502:16
**known** [1] - 1473:3

## L

**lack** [1] - 1505:6
**ladies** [2] - 1493:8, 1507:19
**Lakes** [1] - 1478:22
**larger** [1] - 1498:12
**LARYEA** [4] - 1469:7,

1471:9, 1490:25, 1496:12
**last** [10] - 1479:1, 1480:4, 1481:9, 1481:16, 1481:21, 1481:23, 1482:2, 1484:13, 1490:16, 1490:24
**late** [1] - 1472:3
**latest** [1] - 1494:21
**laundering** [2] - 1502:10, 1505:10
**law** [2] - 1486:5, 1508:7
**LAWRENCE** [2] - 1468:8, 1509:8
**learned** [2] - 1478:16, 1490:24
**least** [3] - 1484:4, 1491:16, 1496:6
**leave** [5] - 1484:14, 1489:8, 1504:2, 1504:5, 1507:13
**leaving** [1] - 1481:23
**lest** [1] - 1472:21
**letting** [1] - 1474:5
**liability** [4] - 1502:9, 1505:10, 1505:24, 1506:4
**lies** [1] - 1505:16
**life** [1] - 1472:17
**light** [1] - 1473:24
**likely** [3] - 1470:11, 1470:13, 1503:10
**listening** [1] - 1486:4
**LLC** [1] - 1469:18
**LLP** [1] - 1469:14
**logo** [1] - 1479:8
**look** [10] - 1497:25, 1498:3, 1498:5, 1498:21, 1502:13, 1502:17, 1502:22, 1503:14, 1506:2, 1508:23
**looked** [1] - 1479:8
**looking** [3] - 1496:16, 1499:20, 1505:3
**LORINDA** [1] - 1469:7
**lorinda.laryea@ usdoj.gov** [1] - 1469:10
**lose** [1] - 1488:9
**love** [1] - 1494:8
**lovely** [1] - 1494:1
**lunch** [1] - 1508:10
**luncheon** [1] - 1483:2

## M

**MACEO** [1] - 1504:22

**mail** [5] - 1469:5, 1469:15, 1469:20, 1498:7, 1499:9
**mails** [1] - 1480:14
**Manning** [1] - 1469:18
**mark** [1] - 1487:13
**marked** [1] - 1494:21
**marking** [1] - 1501:4
**Martini** [1] - 1469:18
**match** [1] - 1499:7
**matches** [1] - 1500:1
**matter** [3] - 1471:8, 1491:24, 1509:15
**matters** [2] - 1474:24, 1493:11
**mean** [13] - 1471:5, 1471:19, 1472:15, 1480:3, 1480:4, 1486:15, 1486:25, 1497:17, 1498:17, 1500:4, 1503:1, 1503:10, 1503:22
**means** [1] - 1493:15
**Melissa** [2] - 1468:24, 1509:10
**MELISSA** [1] - 1509:22
**mention** [2] - 1480:22, 1491:22
**mentioned** [5] - 1479:2, 1480:25, 1481:17, 1490:18, 1492:1
**mentioning** [1] - 1483:12
**message** [1] - 1489:25
**might** [4] - 1480:13, 1485:13, 1506:2, 1507:6
**mind** [1] - 1484:23
**mine** [1] - 1496:13
**minutes** [10] - 1475:15, 1475:21, 1502:13, 1502:17, 1502:22, 1503:21, 1503:22, 1503:25, 1504:16
**misheard** [1] - 1490:23
**missing** [2] - 1497:7, 1497:8
**misunderstood** [2] - 1481:22, 1487:5
**MO** [1] - 1483:11
**mom** [1] - 1482:7
**moment** [3] - 1483:19, 1484:8, 1507:21
**Monday** [2] - 1483:4, 1483:5
**money** [2] - 1502:10,

1505:10
**month** [1] - 1471:12
**morning** [11] - 1478:10, 1478:11, 1480:21, 1482:2, 1490:15, 1491:17, 1493:8, 1502:18, 1507:13, 1508:1, 1508:16
**MORVILLO** [35] - 1469:12, 1470:13, 1471:13, 1474:9, 1475:13, 1475:17, 1476:9, 1476:15, 1476:20, 1476:25, 1477:23, 1483:18, 1484:25, 1488:20, 1489:11, 1489:15, 1489:19, 1490:14, 1490:22, 1491:6, 1491:13, 1492:25, 1494:17, 1499:15, 1500:23, 1501:11, 1501:16, 1502:4, 1502:21, 1503:2, 1503:4, 1505:2, 1506:10, 1507:16, 1508:22
**MS** [3] - 1471:9, 1490:25, 1496:12
**must** [1] - 1506:15

## N

**N.W** [1] - 1469:8
**name** [2] - 1481:17, 1492:6
**naturalization** [6] - 1475:7, 1475:9, 1475:14, 1476:11, 1477:9, 1493:25
**naturalizations** [2] - 1476:14, 1494:4
**naturalized** [1] - 1476:21
**nearly** [1] - 1485:23
**necessarily** [1] - 1472:5
**need** [8] - 1487:14, 1487:17, 1492:8, 1493:16, 1499:17, 1501:12, 1503:20, 1507:11
**needed** [2] - 1485:13, 1508:4
**nervous** [1] - 1482:10
**Nevada** [2] - 1506:16, 1506:24
**never** [2] - 1478:23, 1479:15
**new** [3] - 1484:3, 1487:18, 1494:9
**New** [11] - 1468:8, 1469:4, 1469:8, 1469:14, 1470:6,

1505:10

1497:8, 1497:17, 1497:23, 1498:3, 1498:7, 1498:15, 1498:20, 1499:1, 1499:3, 1499:6, 1499:14, 1499:15, 1499:18, 1499:25, 1500:5, 1500:8, 1500:12, 1500:21, 1500:23, 1500:24, 1501:10, 1501:11, 1501:16, 1501:17, 1501:20, 1501:25, 1502:3, 1502:4, 1502:12, 1502:16, 1502:21, 1503:2, 1503:4, 1503:9, 1503:17, 1503:21, 1504:8, 1504:14, 1505:2, 1505:12, 1505:25, 1506:10, 1507:16, 1508:17, 1508:22

1478:22, 1479:15, 1481:14, 1482:4, 1490:19, 1509:24
**next** [9] - 1476:14, 1477:13, 1477:17, 1480:25, 1484:5, 1502:8, 1503:18, 1508:7, 1508:18
**NH** [1] - 1469:3
**nice** [1] - 1493:9
**night** [9] - 1479:1, 1480:4, 1481:9, 1481:16, 1481:21, 1481:23, 1482:2, 1490:16, 1490:24
**Nine** [1] - 1503:6
**Ninth** [2] - 1506:11, 1508:20
**note** [28] - 1470:2, 1470:18, 1471:13, 1472:4, 1474:3, 1474:10, 1478:3, 1478:12, 1481:1, 1481:3, 1481:5, 1481:11, 1489:23, 1490:20, 1491:17, 1491:24, 1492:2, 1492:5, 1494:21, 1496:6, 1497:13, 1497:15, 1499:16, 1500:10, 1500:16, 1501:3, 1502:8, 1508:5
**notebooks** [1] - 1489:9
**notes** [1] - 1509:15
**nothing** [2] - 1491:1, 1509:2
**notified** [1] - 1470:8
**noting** [1] - 1500:16
**November** [2] - 1468:5, 1494:6
**Novick** [3] - 1485:2, 1497:10, 1508:14
**NOVICK** [69] - 1469:3, 1470:16, 1471:2, 1471:23, 1472:18, 1472:24, 1473:13, 1473:18, 1473:22, 1474:25, 1475:11, 1475:16, 1475:23, 1476:6, 1476:18, 1477:5, 1477:14, 1478:2, 1483:17, 1484:8, 1485:5, 1488:19, 1490:11, 1490:16, 1492:17, 1494:16, 1495:4, 1495:6, 1496:5, 1496:9,

1496:14, 1496:19, 1496:23, 1497:1, 1497:5, 1497:8, 1497:17, 1497:23, 1498:3, 1498:7, 1498:15, 1498:20, 1499:1, 1499:3, 1499:6, 1499:14, 1499:18, 1499:25, 1500:5, 1500:8, 1500:12, 1500:21, 1500:24, 1501:10, 1501:17, 1501:20, 1501:25, 1502:3, 1502:12, 1502:16, 1503:9, 1503:17, 1503:21, 1504:8, 1504:14, 1505:12, 1505:25, 1508:17
**Number** [22] - 1470:3, 1470:5, 1477:7, 1477:11, 1478:9, 1483:16, 1485:7, 1485:8, 1488:18, 1489:14, 1491:8, 1492:13, 1493:4, 1493:11, 1493:14, 1493:19, 1496:22, 1496:23, 1498:10, 1498:22, 1503:7
**number** [6] - 1473:24, 1474:16, 1499:6, 1499:7, 1499:8, 1504:23
**numbers** [1] - 1495:16
**NY** [2] - 1469:14, 1469:14

## O

**object** [1] - 1484:21
**objection** [4] - 1475:22, 1475:24, 1484:25, 1491:10
**obligation** [1] - 1485:11
**obligations** [1] - 1484:4
**obviously** [8] - 1473:2, 1474:15, 1479:18, 1480:2, 1499:8, 1503:10, 1505:17, 1505:19
**occurred** [5] - 1505:8, 1505:11, 1505:15, 1506:7, 1506:20
**OF** [3] - 1468:1, 1468:4, 1509:8
**offense** [4] - 1505:14, 1505:15, 1505:18,

1506:4
**offenses** [2] - 1503:12, 1506:23
**offerings** [1] - 1506:9
**Office** [1] - 1469:3
**Official** [3] - 1468:24, 1509:11, 1509:22
**officials** [1] - 1495:21
**one** [25] - 1473:14, 1473:18, 1473:24, 1475:7, 1476:22, 1481:8, 1481:24, 1483:19, 1484:8, 1487:15, 1487:16, 1488:13, 1488:14, 1489:22, 1490:6, 1491:15, 1491:16, 1493:18, 1495:10, 1499:6, 1499:18, 1500:8, 1504:18, 1505:14, 1505:19
**opened** [1] - 1470:4
**opportunity** [1] - 1475:18
**opposition** [1] - 1484:6
**organization** [1] - 1484:15
**orient** [1] - 1494:9
**otherwise** [2] - 1472:12, 1503:25
**outset** [1] - 1475:20
**outside** [2] - 1477:25, 1480:7
**overt** [1] - 1505:20
**own** [1] - 1488:1

## P

**p.m** [12] - 1494:19, 1497:12, 1499:2, 1502:6, 1504:10, 1507:18, 1508:12, 1509:4
**Pacific** [1] - 1497:2
**pages** [1] - 1509:13
**paper** [15] - 1495:1, 1495:8, 1496:15, 1497:3, 1497:15, 1498:14, 1499:7, 1499:11, 1499:19, 1500:5, 1500:6, 1500:17, 1501:2, 1501:15
**paragraph** [1] - 1495:16
**Paris** [1] - 1479:4
**Parrish** [1] - 1504:21
**PARRISH** [1] - 1504:21

**part** [1] - 1471:18
**particular** [1] - 1471:17
**particularly** [2] - 1475:5, 1487:8
**party** [1] - 1472:22
**past** [3] - 1473:9, 1482:16, 1485:9
**Pause** [3] - 1492:16, 1497:12, 1499:2
**payments** [1] - 1495:24
**PEACOCK** [1] - 1469:13
**per** [2] - 1495:9, 1495:14
**perhaps** [3] - 1481:22, 1482:21, 1487:6
**permit** [1] - 1481:24
**person** [1] - 1480:25
**personal** [4] - 1491:7, 1492:20, 1493:10, 1493:19
**phase** [1] - 1487:1
**phone** [2] - 1479:6, 1481:17
**pincite** [2] - 1504:21, 1506:13
**Pinkerton** [7] - 1502:9, 1504:19, 1504:24, 1505:9, 1505:17, 1506:21, 1506:25
**place** [1] - 1481:19
**places** [2] - 1478:23, 1479:4
**plaintiff** [1] - 1468:5
**plan** [1] - 1476:3
**plant** [3] - 1478:24, 1482:8, 1491:20
**plants** [1] - 1478:23
**play** [1] - 1495:13
**playing** [1] - 1495:13
**pledge** [2] - 1483:1
**plenty** [1] - 1472:19
**point** [4] - 1471:12, 1472:20, 1488:22, 1498:17
**policy** [1] - 1507:6
**portrayed** [1] - 1474:13
**position** [3] - 1502:20, 1504:13, 1508:14
**possibility** [1] - 1482:19
**possible** [2] - 1497:24, 1505:13
**possibly** [1] - 1488:4
**Post** [1] - 1469:18
**potential** [2] - 1486:2

**potentially** [1] - 1476:23
**power** [1] - 1472:8
**Power** [1] - 1495:24
**prayers** [2] - 1476:25, 1477:4
**precision** [1] - 1507:25
**predict** [1] - 1486:16
**prefer** [2] - 1477:8, 1484:19
**preferably** [1] - 1483:4
**premised** [1] - 1506:4
**present** [2] - 1489:20, 1495:11
**pressure** [2] - 1487:22, 1488:24
**pressured** [1] - 1487:25
**presumably** [1] - 1470:20
**presume** [1] - 1502:13
**pretty** [2] - 1479:10, 1485:19
**previously** [1] - 1474:17
**principle** [3] - 1506:21, 1506:22, 1506:25
**principles** [1] - 1507:7
**print** [1] - 1498:24
**printout** [2] - 1495:23, 1496:16
**problem** [4] - 1474:8, 1475:3, 1476:23, 1501:22
**problematic** [3] - 1485:12, 1485:17, 1485:25
**Procedure** [1] - 1507:9
**Proceedings** [2] - 1478:7, 1509:4
**proceedings** [5] - 1478:8, 1493:7, 1494:13, 1507:18, 1508:12
**process** [3] - 1487:5, 1488:1, 1488:24
**produced** [1] - 1499:23
**program** [1] - 1476:13
**prominently** [2] - 1472:22, 1474:12
**proper** [3] - 1506:6, 1506:16, 1507:5
**properly** [1] - 1478:17
**propose** [1] - 1500:15
**proposed** [1] - 1492:17

**proven** [1] - 1503:11
**PT** [1] - 1495:24
**pulled** [1] - 1504:16
**pulling** [1] - 1475:3
**put** [6] - 1475:10, 1480:13, 1486:5, 1488:23, 1498:18, 1508:17
**putting** [1] - 1497:21

## Q

**query** [1] - 1494:25
**questioned** [1] - 1479:6
**questions** [3] - 1473:23, 1483:16, 1488:17
**quick** [2] - 1489:15, 1506:11
**quite** [1] - 1478:24
**quote** [1] - 1506:13

## R

**rather** [2] - 1489:19, 1490:4
**re** [2] - 1477:24, 1494:9
**RE** [1] - 1509:8
**re-emphasize** [1] - 1477:24
**read** [3] - 1470:7, 1490:1, 1506:13
**reading** [4] - 1470:18, 1496:6, 1504:25, 1507:24
**really** [1] - 1477:7
**reason** [5] - 1483:23, 1486:22, 1502:25, 1503:1, 1503:13
**reasonable** [2] - 1477:14, 1501:24
**reasonably** [2] - 1499:19, 1501:20
**reasons** [4] - 1491:7, 1492:20, 1493:12, 1493:20
**recalling** [1] - 1483:15
**receive** [1] - 1483:1
**received** [1] - 1478:12
**recess** [7] - 1494:18, 1494:19, 1502:5, 1502:6, 1504:9, 1504:10, 1509:3
**recognition** [1] - 1489:1
**recognize** [1] - 1472:2
**recognizing** [1] - 1486:3

**recollection** [2] - 1482:15, 1491:19
**redo** [2] - 1477:21, 1489:3
**referring** [1] - 1508:20
**reflect** [1] - 1495:15
**reflecting** [1] - 1478:13
**refresh** [1] - 1491:18
**regard** [1] - 1475:5
**regular** [2] - 1479:6, 1493:18
**reiterate** [1] - 1473:25
**relate** [1] - 1471:7
**related** [1] - 1472:25
**relating** [1] - 1474:24
**relationship** [2] - 1480:16, 1489:23
**relatively** [1] - 1476:6
**relevant** [1] - 1505:9
**reload** [2] - 1499:12, 1500:18
**rely** [1] - 1499:21
**remind** [1] - 1473:7
**removed** [1] - 1472:6
**renumbering** [1] - 1495:12
**replace** [2] - 1487:15, 1487:16
**report** [1] - 1503:15
**Reporter** [3] - 1468:24, 1509:11, 1509:22
**represent** [1] - 1504:17
**request** [6] - 1473:22, 1484:10, 1486:13, 1488:22, 1492:10, 1502:17
**requested** [1] - 1470:14
**requesting** [1] - 1493:20
**required** [1] - 1482:21
**requirement** [2] - 1502:9, 1503:11
**rescheduled** [1] - 1486:9
**reschedules** [1] - 1485:20
**research** [1] - 1506:11
**resolved** [1] - 1474:15
**Resources** [1] - 1497:2
**respect** [2] - 1470:7, 1477:2
**respectfully** [1] - 1471:24
**responded** [1] - 1499:10

**response** [1] - 1479:11
**responsible** [1] - 1506:22
**rest** [1] - 1470:7
**return** [2] - 1479:1, 1487:14
**risk** [3] - 1471:23, 1474:19, 1479:21
**RMR** [3] - 1468:24, 1509:10, 1509:22
**road** [2] - 1479:12, 1480:5
**Road** [1] - 1469:18
**role** [1] - 1485:24
**room** [4] - 1489:9, 1501:3, 1503:18
**Room** [2] - 1469:9, 1509:23
**rule** [2] - 1507:2, 1507:6
**Rules** [1] - 1507:8
**run** [1] - 1477:17
**runs** [2] - 1477:12, 1507:7
**rush** [2] - 1487:24, 1488:5

## S

**satisfactory** [1] - 1489:4
**saw** [1] - 1496:23
**schedule** [2] - 1477:10, 1486:9
**scheduling** [3] - 1475:5, 1485:22, 1486:8
**scheduling-wise** [1] - 1485:22
**school** [2] - 1481:5, 1508:7
**screen** [1] - 1498:21
**seated** [6] - 1493:3, 1493:9, 1495:5, 1502:11, 1504:11, 1507:19
**seating** [1] - 1494:6
**second** [1] - 1479:5
**Section** [1] - 1469:8
**see** [11] - 1472:4, 1475:4, 1477:11, 1477:16, 1483:20, 1493:9, 1494:22, 1498:8, 1503:3, 1503:4, 1508:10
**selection** [4] - 1470:9, 1471:11, 1472:13, 1482:14
**send** [1] - 1489:25,

1508:5
**sense** [2] - 1489:24, 1507:6
**sent** [3] - 1489:24, 1496:24, 1498:8
**sentiment** [1] - 1494:1
**service** [2] - 1489:8, 1491:5
**set** [1] - 1483:4
**setting** [1] - 1475:19
**shall** [1] - 1507:15
**share** [1] - 1501:5
**shared** [1] - 1492:6
**short** [1] - 1485:19
**shortcut** [1] - 1488:1
**shortcutting** [1] - 1488:24
**shorthand** [1] - 1509:15
**side** [2] - 1475:3, 1487:19
**Sidebar** [4] - 1483:21, 1485:6, 1489:18, 1491:14
**sides** [1] - 1497:25
**sign** [1] - 1481:18
**SILVER** [2] - 1469:13, 1470:25
**simple** [1] - 1508:4
**simultaneously** [1] - 1508:24
**single** [1] - 1482:7
**sitting** [1] - 1502:19
**skill** [1] - 1509:16
**slides** [1] - 1501:2
**slightly** [1] - 1495:15
**small** [3] - 1481:10, 1481:25, 1491:1
**Smith** [1] - 1506:8
**someone** [1] - 1485:23
**son** [1] - 1480:5
**sorry** [6] - 1486:20, 1487:4, 1488:12, 1488:16, 1496:8, 1505:1
**sort** [1] - 1479:22
**sound** [1] - 1489:4
**Southport** [1] - 1469:19
**speaking** [2] - 1476:7, 1481:8
**SPEARS** [1] - 1469:17
**Spears** [1] - 1469:18
**special** [1] - 1494:6
**specifically** [1] - 1492:22
**speculate** [4] - 1490:5, 1490:8, 1492:20, 1493:19

**speed** [1] - 1488:2
**spell** [1] - 1479:7
**spending** [1] - 1476:3
**spent** [1] - 1486:4
**stand** [4] - 1495:6, 1502:5, 1504:9, 1509:3
**standpoint** [1] - 1507:7
**start** [7] - 1473:19, 1484:3, 1488:7, 1490:5, 1490:8, 1493:16, 1493:17
**started** [2] - 1471:10, 1471:20
**state** [1] - 1504:12
**STATES** [3] - 1468:1, 1468:4, 1509:8
**States** [2] - 1509:11, 1509:23
**stay** [4] - 1473:9, 1477:12, 1485:15, 1487:20
**steps** [1] - 1472:6
**stick** [1] - 1476:12
**stop** [1] - 1479:9
**Street** [3] - 1468:7, 1469:4, 1509:23
**stressed** [2] - 1482:3, 1490:17
**stressful** [1] - 1488:13
**stuff** [3] - 1479:11, 1482:6, 1485:21
**subconscious** [1] - 1488:24
**subcontracting** [2] - 1470:22, 1479:24
**subcontractor** [6] - 1470:19, 1471:3, 1471:19, 1474:11, 1478:14, 1478:19
**subject** [3] - 1471:8, 1482:13, 1491:24
**submit** [1] - 1508:24
**submitted** [1] - 1495:11
**substantive** [7] - 1503:12, 1505:15, 1505:18, 1506:4, 1506:17, 1506:23, 1507:3
**substitute** [1] - 1498:13
**sufficient** [1] - 1506:24
**sufficiently** [1] - 1477:3
**suggest** [2] - 1472:5, 1496:3
**suggests** [1] -

1501:14
**Suite** [1] - 1469:18
**summary** [4] -
    1495:15, 1495:20,
    1495:24, 1497:2
**suppose** [1] - 1475:23
**surmise** [1] - 1496:10
**swayed** [1] - 1474:20

## T

**teach** [1] - 1508:8
**teacher** [1] - 1481:6
**technologically** [1] -
    1498:18
**Ten** [1] - 1503:6
**ten** [2] - 1503:22,
    1503:24
**tentative** [1] - 1479:1
**terms** [1] - 1476:2
**testified** [1] - 1474:17
**testimony** [1] - 1480:1
**THE** [120] - 1468:18,
    1470:2, 1470:15,
    1471:16, 1472:14,
    1472:19, 1473:7,
    1473:17, 1473:19,
    1475:2, 1475:15,
    1476:4, 1476:12,
    1476:16, 1476:22,
    1477:1, 1477:6,
    1477:18, 1478:6,
    1478:9, 1478:12,
    1478:16, 1479:17,
    1479:21, 1480:11,
    1480:21, 1481:2,
    1481:12, 1481:22,
    1482:12, 1482:19,
    1483:5, 1483:8,
    1483:14, 1483:19,
    1483:22, 1485:3,
    1485:7, 1486:1,
    1486:14, 1486:20,
    1486:25, 1487:6,
    1488:15, 1488:17,
    1488:21, 1489:7,
    1489:13, 1489:17,
    1490:10, 1490:12,
    1490:20, 1491:3,
    1491:7, 1491:15,
    1491:22, 1492:3,
    1492:8, 1492:24,
    1493:2, 1493:5,
    1493:6, 1493:8,
    1494:14, 1494:18,
    1494:20, 1495:5,
    1496:3, 1496:8,
    1496:13, 1496:18,
    1496:21, 1496:25,
    1497:3, 1497:6,

1497:10, 1497:13,
    1497:19, 1498:2,
    1498:5, 1498:12,
    1498:19, 1498:24,
    1499:5, 1499:10,
    1499:16, 1499:23,
    1500:3, 1500:6,
    1500:9, 1500:14,
    1501:1, 1501:12,
    1501:18, 1501:23,
    1502:1, 1502:5,
    1502:7, 1502:15,
    1502:20, 1502:24,
    1503:3, 1503:5,
    1503:16, 1503:19,
    1503:23, 1504:2,
    1504:4, 1504:6,
    1504:7, 1504:9,
    1504:11, 1505:5,
    1505:22, 1506:2,
    1507:10, 1507:19,
    1508:13, 1508:19,
    1509:1
**theirs** [1] - 1488:2
**theories** [1] - 1505:23
**theory** [3] - 1502:9,
    1504:19, 1506:5
**thereafter** [1] -
    1485:14
**thereby** [1] - 1484:4
**thereof** [1] - 1505:20
**they've** [1] - 1474:14
**thinking** [1] - 1479:25
**thinks** [2] - 1477:2,
    1505:7
**three** [2] - 1471:9,
    1499:3
**throughout** [2] -
    1472:23, 1474:12
**Thursday** [1] -
    1475:25
**timely** [1] - 1486:16
**today** [2] - 1479:2,
    1490:20
**together** [1] - 1508:18
**tomorrow** [4] -
    1507:13, 1508:1,
    1508:10, 1508:16
**tonight** [1] - 1508:1
**took** [1] - 1479:4
**track** [2] - 1486:12,
    1486:15
**trafficking** [1] -
    1506:19
**train** [1] - 1482:8
**trains** [2] - 1481:15,
    1482:9
**transcription** [1] -
    1509:14
**transferred** [1] -

1475:8
**transportation** [1] -
    1472:9
**TRIAL** [1] - 1468:12
**trial** [3] - 1472:23,
    1480:18, 1495:20
**tried** [2] - 1479:9,
    1504:19
**true** [1] - 1509:14
**try** [2] - 1500:18,
    1508:17
**trying** [2] - 1482:10,
    1506:1
**Tuesday** [11] -
    1482:21, 1482:25,
    1483:10, 1483:24,
    1484:2, 1484:3,
    1484:12, 1485:10,
    1485:14, 1485:22,
    1487:14
**twelve** [1] - 1487:10
**Twelve** [1] - 1503:6
**twice** [2] - 1486:10,
    1486:11
**two** [7] - 1473:21,
    1480:18, 1483:15,
    1484:14, 1487:9,
    1495:9, 1505:13

## U

**U.S** [5] - 1469:3,
    1469:7, 1506:2,
    1506:8, 1506:12
**U.S.D.J** [1] - 1468:18
**ultimately** [2] -
    1475:21, 1488:6
**unable** [1] - 1491:4
**unaware** [1] - 1486:21
**underlying** [1] -
    1506:7
**understandable** [1] -
    1487:7
**understood** [2] -
    1477:5, 1499:14
**undue** [1] - 1488:23
**unfortunately** [3] -
    1486:7, 1486:12,
    1486:13
**UNITED** [3] - 1468:1,
    1468:4, 1509:8
**United** [4] - 1482:24,
    1484:15, 1509:11,
    1509:23
**unless** [1] - 1501:18
**unusual** [2] - 1489:19,
    1490:4
**up** [7] - 1473:11,
    1483:4, 1488:2,
    1492:11, 1498:20,

1503:14, 1508:7
**updated** [1] - 1498:8
**upper** [1] - 1470:6
**US** [1] - 1469:14
**utilize** [1] - 1472:20

## V

**vague** [1] - 1479:10
**venue** [15] - 1502:8,
    1503:8, 1503:10,
    1504:24, 1505:9,
    1505:16, 1505:18,
    1505:19, 1506:5,
    1506:16, 1506:24,
    1507:3, 1507:5,
    1507:7
**version** [3] - 1494:23,
    1498:8, 1499:7
**versions** [1] - 1499:9
**Veteran's** [1] - 1483:7
**victim** [1] - 1474:13
**view** [5] - 1472:12,
    1472:14, 1472:15,
    1476:12, 1480:12
**views** [2] - 1475:9,
    1505:13
**VIII** [1] - 1468:13
**voir** [7] - 1470:17,
    1470:20, 1471:25,
    1473:23, 1475:2,
    1475:4, 1492:22
**VOLUME** [1] - 1468:13
**voted** [2] - 1476:2,
    1476:5

## W

**wait** [3] - 1477:16,
    1483:19, 1504:3
**waiting** [1] - 1477:4
**Washington** [1] -
    1469:9
**watch** [1] - 1475:18
**Wednesday** [1] -
    1482:21
**week** [6] - 1474:7,
    1477:13, 1477:17,
    1482:7, 1484:5,
    1485:9
**weekend** [1] - 1476:1
**weeks** [3] - 1471:9,
    1479:14, 1484:14
**welcome** [4] -
    1476:17, 1487:20,
    1494:5
**Whittingham** [1] -
    1506:3
**whole** [1] - 1487:5
**wisdom** [1] - 1499:20

**wise** [1] - 1485:22
**wish** [3] - 1485:14,
    1493:2, 1507:13
**withdraw** [1] -
    1486:13
**witnesses** [3] -
    1474:16, 1480:1,
    1480:13
**wondering** [2] -
    1489:24, 1490:4
**word** [2] - 1492:1
**works** [2] - 1478:22,
    1483:12
**world** [3] - 1481:10,
    1481:25, 1491:1
**worry** [2] - 1473:13,
    1475:25
**write** [2] - 1497:13,
    1499:16
**written** [1] - 1500:15

## Y

**yesterday** [1] -
    1481:12
**York** [8] - 1469:8,
    1469:14, 1470:6,
    1478:22, 1479:16,
    1481:14, 1482:4,
    1490:19